UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

METAL PROCESSING TECHNOLOGY LTC,
    Plaintiff,

v.

ICG USA, LLC; EMILIA ARUTYUNOVA
aka Emiliya Aroutiounov; and ARTOUR
AROUTIOUNOV aka Artour Arutyunova,
    Defendants.

Case No.: 3:26-cv-02762-DMS-SBC

DEFENDANTS' PRE-MOTION
STATUS LETTER AND NOTICE OF
THRESHOLD JURISDICTIONAL
AND FACTUAL DEFECTS

Hon. Dana M. Sabraw



FILED

JUN 0 4 2026

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _(2S_ DEPUTY

May 28, 2026

**VIA ECF TO THE COURT**

The Honorable Dana M. Sabraw
Chief United States District Judge
United States District Court for the Southern District of California
333 West Broadway, San Diego, CA 92101

Dear Chief Judge Sabraw:

We represent Defendants ICG USA, LLC, Emilia Arutyunova, and Artour Aroutiounov in the above-captioned matter, which was removed to this Court on April 30, 2026. Pursuant to the Court's Civil Local Rules and your Honor's Standing Orders, we respectfully submit this pre-motion letter to notify the Court of several threshold, fatal jurisdictional and factual defects in Plaintiff's Verified Complaint in the main case. These fatal defects demonstrate that this action represents an abuse of the judicial system and is subject to immediate dismissal with prejudice.

The 21 factual defenses, corporate filings, and contemporaneous electronic communications involving Plaintiff's principal, Akmal Kadirov, and Defendants' former officers (such as Serge Zaikin and Arthur Arutyunov) conclusively demonstrate that Plaintiff's claim is legally dead, brought against an empty shell, and omits the primary operating officer responsible for any alleged contractual failures.

## I. Threshold Jurisdictional Defect: Pre-Filing Dissolution of the Target Entity

- **Prior Dissolution (Points 1, 2, 3 & 22):** As a matter of public record, the target entity, ICG USA, LLC, was legally dissolved in Colorado on February 26, 2025 (Secretary of State ID: 20238068367, Document: 20251238093, filed by Serge Zaikin). Plaintiff's Verified Complaint was filed on October 2, 2025—nearly eight months after ICG USA, LLC legally ceased to exist. ICG USA, LLC was forced to close due to the catastrophic financial ruin directly inflicted by Plaintiff's material contract breaches. Today, it stands as an asset-deficient, entirely empty shell with zero active assets or operations, rendering it completely judgment-proof.

- **Impossibility of Veil Piercing (Point 4):** There are absolutely no grounds under Colorado or California law to pierce the corporate veil. Any liability remains strictly bounded by the corporate form of the defunct LLC.

## II. Ministerial Status and Lack of Authority of Emilia Arutyunova

- **Ministerial Registered Agent Only (Point 5 & 16):** Emilia (Amelia) Arutyunova had zero

operational authority, involvement, or decision-making power within ICG USA, LLC. Her sole and strictly limited role was acting as the ministerial registered agent to cause the creation of the LLC. Bringing claims against her personally constitutes bad-faith harassment and a sanctionable abuse of the legal process.

## III. Failure to Join an Indispensable Party Under Rule 19

- **Akmal Kadirov as President and Primary Actor (Points 6 & 9):** Plaintiff has failed to join Akmal Kadirov, who was the President of the joint venture ICG USA, LLC, as well as its primary director. Akmal acted as a dual-agent, representing both the exporter in Uzbekistan and the importer in the United States, creating an egregious conflict of interest. Akmal was the sole individual responsible for managing logistics, arranging product delivery, and securing certifications. Crucially, Akmal continuously missed shipping deadlines and repeatedly failed to make required logistical payments to the freight forwarders (such as American Global Freights), creating the very logistics delays Plaintiff now attempts to pin on ministerial third parties. Akmal is an indispensable party under FRCP 19, and his omission is fatal to this suit.

## IV. Breach of Exclusivity, Broken Promises, and Non-Conforming Product

- **Broken Warehouse Stock Promises (Point 7 & 8):** Akmal personally promised the Defendants that ICG USA, LLC would continuously hold a physical stock of at least three (3) containers in its warehouse to maintain steady commercial operations. Akmal and the Plaintiff completely defaulted on this operational promise.

- **Illegal, Non-Certified Product (Points 10 & 11):** The refined copper pipes shipped by Plaintiff completely lacked mandatory **NSF (National Sanitation Foundation) certifications**. This made the product entirely illegal for standard commercial or residential plumbing use in the United States, rendering the cargo unmarketable dead stock.

- **Refusal to Replace Bad Stock (Point 5 [Part B] & 12):** When notified of the non-conforming, unmarketable nature of the cargo, Plaintiff and Akmal flatly refused to replace the bad product or remediate the breach, leaving three containers of defective copper pipes sitting permanently in the warehouse.

## V. Compensable Reliance and Expectation Damages Incurred by Defendants

- **Ongoing Warehouse Storage Overhead (Point 13):** Because Plaintiff refused to reclaim or replace the illegal cargo, Defendants have been forced to continuously store this dead stock, incurring ongoing warehouse fees of $5,000.00 per month, which continue to accumulate.

- **Defendants' Paid Out-of-Pocket Cash (Points 14 & 15):** Defendants already paid Plaintiff $85,000.00 upfront as a deposit and spent an additional $15,000.00 in customs duties and import tariffs on behalf of the transaction.

- **Unreimbursed Operational Expenses (Points 16 [Part B] & 17):** Defendants invested $14,000.00 in marketing, hotel, transport, and booth space rentals for promotional Expo/Show events, and paid significant transportation costs, none of which have been reimbursed.

- **Loss of the $130M annual pipeline (Points 18 & 19):** The exclusive trade agreement established a high-volume import pipeline valued at up to **$130,000,000.00 per year** ($10.83M per month). By bypassing the exclusivity and abandoning the venture, Plaintiff destroyed this trade project, causing Defendants to lose active commercial distribution contracts valued at $200,000.00 per month.

## VI. Pretextual Visa Scheme and Tortious Conduct

2

- **Akmal's Pretextual Visa Scheme (Point 20):** The written record demonstrates that Akmal's sole true motive in inducing the Defendants to spend 1.5 years setting up this infrastructure was to secure a U.S. investor visa. Immediately upon being denied a U.S. visa, Akmal lost interest, abandoned the venture, and refused to perform under the contract.

- **Coercive Threats and Resulting Bodily Injury (Point 21):** When Defendants demanded re-mediation, Plaintiff's agents resorted to severe, illegal, and coercive threats to force payment for the illegal copper, triggering a severe, stress-induced **heart attack** in a key member of the Defendant group.

**VII. Mandatory Forum Selection and Venue Clauses** Your Honor, Plaintiff's suit completely ignores the mandatory dispute resolution and venue clauses contained in its own attached exhibits:

- **U.S. Chamber of Commerce / Denver Arbitration (Exhibit 2, Section 10.2):** Explicitly specifies that if the respondent is located in the USA, any and all disputes must be referred to the International Commercial Arbitration Court of the US Chamber of Commerce or the Economic Court of Denver, Colorado.

- **Valencia, Spain Forum Clause (Exhibit 1, Section 9.1 & 9.2):** Explicitly specifies that logistics and freight disputes must be settled by the Court in the city of Valencia according to the rules of law of Spain.

**VIII. Egregious Pleading Defects and Copy-Paste Template Errors** Finally, a threshold review of Plaintiff's Verified Complaint in the main case reveals a reckless failure to conduct a reasonable pre-filing inquiry, relying on copy-paste templates from unrelated actions:

- On Page 10, Paragraph 46, Plaintiff alleges interference with the property of **"Aridis Pharmaceuticals Inc."** (unrelated to any party here).

- On Page 14, Paragraph 80, Plaintiff alleges harm caused to an entity named **"Gates"**.

- On Page 10, Paragraph 47, Plaintiff alleges a conversion of funds pursuant to a **"rental agreement"**.

- Plaintiff asserts criminal counts (Price Gouging and Hoax) in a civil complaint, which are legally demurrable as civil litigants have no standing to prosecute federal or state criminal statutes.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court schedule a pre-motion conference or grant leave to file a formal Motion to Dismiss with Prejudice and Motion to Compel Arbitration based on the threshold, fatal jurisdictional defects, improper venue, and failure to join an indispensable party under FRCP 19.

Respectfully submitted,

*/s/ Defense Counsel for the Defendants*

# EXHIBIT D

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
10/2/2025 6:44:57 PM
Clerk of the Superior Court
By P. Neal          ,Deputy Clerk

**Ruochen Liu   SBN 350852**
7 Day Attorneys, APC
100 N. Barranca St., #7060
West Covina, CA 91791   Phone: (314)285-5165
Email: RuochenLiu.Esq@gmail.com
Attorney for Plaintiff Metal Processing Technology LTC

SUPERIOR COURT OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

|  |  |
|---|---|
| **Metal Processing Technology LTC,**<br><br>    **Plaintiff,**<br><br>**vs.**<br><br>**ICG USA, LLC; Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova; AMERICAN GLOBAL FREIGHTS [A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.; MAERSK LOGISTICS & SERVICES USA INC.; U.S. BANCORP; Ararat Baghdasaryn [aka alter ego of American Global Freights ]** and DOES 1 – 5, Inclusive,<br><br>    Defendants. | Case No.:   25CU053232C<br><br>**VERIFIED COMPLAINT FOR DAMAGES FOR:**<br>1. **FRAUD BY INTENTIONAL MISREPRESENTATION;**<br><br>2. FRAUD BY FALSE PROMISE **[PROMISSORY FRAUD]**;<br><br>3. CONVERSION;<br><br>4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;<br><br>5. **VIOLATION OF RICO ACT;**<br><br>6. CONSPIRACY TO VIOLATE RICO ACT;<br><br>7. CIVIL CONSPIRACY;<br><br>8. **NEGLIGENCE Respondeat Superior;**<br><br>9. Breach of Written Contract<br><br>10. Negligence;<br><br>   and Demand for Jury Trial |

**COMES** METAL PROCESSING TECHNOLOGY LTC., herein referred to as "plaintiff" in support of this Complaint for Damages hereby complains, alleges and states as follows:

The amount of damages sought in this case is more than **$35,000.**

The address for each party to this action is as follows-

1. Defendant Emilia Arutyunova aka Emiliya Aroutiounov at all times herein mentioned maintained her **address** of 2878 Beech St., **San Diego, California 92102**

1. **ICG USA LLC's** principal address is 2878 BEECH ST SAN DIEGO, CA 92102. Their agent for service of process is Emiliya Arutyunova at the address of 2878 Beech St., San Diego, California 92102.

2. **American Global Freights** is located at 910 Lorinda Dr., Glendale, California 91206. The agent for service of process is: Ararat Baghdasaryan whose address is 910 Lorinda Dr., Glendale, CA 91206. American Global Freights **owed a duty to Plaintiff to ascertain that Plaintiff was paid** for the cargo delivered to a California port, but neglected to perform its duties owed to Plaintiff.

3. **Maersk Customs Services USA Inc.** is located at 180 Park Avenue, Florham Park, **New Jersey** 07932. Maersk Customs Services USA Inc. **owed a duty to Plaintiff to ascertain that Plaintiff was paid for the cargo delivered** to a California port, but neglected to perform its duties owed to Plaintiff. The agent for service of process is CT Corporation.

4. **Maersk Logistics & Services USA Inc.** is located at 180 Park Avenue, Florham Park, **New Jersey** 07932.

The agent for service of process is CT Corporation. Maersk Logistics & Services USA Inc.

Complaint for damages 08/21/2025

owed a duty to Plaintiff to ascertain that Plaintiff was paid for the cargo delivered

To a California port, but neglected to perform its duties owed to Plaintiff.

5. **U.S. Bancorp** is located at 800 Nicollet Mall, Minneapolis, **Minnesota** 55402.

The agent for service of process is CT Corporation.

*The damages exceed $400,000 based on the value of the goods which were converted*

*from Plaintiff's possession without being paid for.*

Plaintiff further alleges that some of the Defendants may have committed or conspired in

committing the following crimes,

CRIMES COMMITTED BY DEFENDANTS - FOR REFERENCE ONLY

1. Theft by False Pretenses;
2. Price Gouging [Cal. Penal Code § 396-F]
3. False Information and HOAX [Federal Crime];
4. Violation of RICO Act
5. Conspiracy to Violate RICO Act;
7. Grand Theft/Grand Larceny;

COUNT CRIMINAL COUNT 1 [49 Counts of **Theft by False Pretense**]
Penal Code § 532. (a) Every person who knowingly and designedly, by any false or fraudulent representation or pretense, defrauds any other person of money, labor, or property, whether real or personal, or who causes or procures others to report falsely of his or her wealth or mercantile character, and by thus imposing upon any person obtains credit, and thereb fraudulently gets possession of money or property,

**CRIMINAL COUNT 2**
[**Price Gouging during** a state of National Disaster or Emergency
Or DURING THE **COVID 19 TIMEFRAME**

Cal. Penal Code § 396 [f]
(f) It is unlawful for a person, business, or other entity to evict any residential tenant of residential housing after the proclamation of a state of emergency declared by the President of the United States or the Governor, or upon the declaration of a local emergency by an official, board, or other governing body vested with authority to make that declaration in any city, county, or city and county, and for a period of 30 days following that proclamation or declaration, or any period that the

proclamation or declaration is extended by the applicable authority and rent or offer to rent to another person at a rental price greater than the evicted tenant could be charged under this section. It shall not be a violation of this subdivision for a person, business, or other entity to continue an eviction process that was lawfully begun prior to the proclamation or declaration of emergency.

COUNT 3 [FALSE INFORMATION & HOAX]

**18 U.S. Code§ 1038** -False information and hoaxes [A FEDERAL CRIME]
(a)Criminal Violation.-
Whoever engages in any conduct with intent **to convey false or misleading information under circumstances where such information** may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title, section 236 of the Atomic Energy Act of 1954 ( **42 U.S.C. 2284**), or section 46502,

Parties to the action

DOES 1 – 20 made additional contacts with Plaintiff through a civil conspiracy,

and also participated and conspired in defrauding Plaintiff, converting Plaintiff's

money to their own and participated in fraud on Plaintiff.

Plaintiff **will amend the complaint when they discover the names of the two trusts** which are

currently sued as DOES.

11. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-20,

inclusive, and therefore sues these defendants by such fictitious names.

12. Plaintiff is informed and believes and thereon alleges that each of the fictitiously

named defendants is negligently responsible in some manner for the occurrences herein alleged, and

that plaintiff's losses as herein alleged were proximately caused by such acts and omissions.

13. Plaintiff will amend the complaint to allege their true names and capacities when ascertained.

14. Plaintiff seeks Punitive damages based because Defendants engaged in malicious, oppressive,

fraudulent, wanton and outrageous conduct.

PUNTIVE DAMAGES ARE WARRANTED.

15. The malice, oppression, or fraud was conduct of one or more officers, directors, or managing

4
Complaint for damages 08/21/2025

agents of the business entity defendants named, who acted on behalf of the business entity named defendants.     ·

16. An officer, a director, or a managing agent of the business entity-named defendants had advanced knowledge of the unfitness of the individually named defendants and employed those defendants with a knowing disregard of the rights or safety of others.

17. The conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of the business entity-named defendants.

18. One or more officers, directors, or managing agents of the business entity-named defendants knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

/////////////////

## FIRST CAUSE OF ACTION for FRAUD by Intentional Misrepresentation
against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC; U.S. BANCORP;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

19. The plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-18, inclusive of the complaint.

20. On or about April 8, 2024, Ararat Baghdasaryan on behalf of American Global Freights Entered into a written agreement with Nodirkhonov A.N. on behalf of Metal Processing

Complaint for damages 08/21/2025

Technology.

21. American Global Freights was to act as the freight forwarder involving the shipment of 405 packages of pipes of refined copper, which weighed 2,991.289 KGs.

22. Per the agreement, the port of discharge would be in Los Angeles, California.

23. On or about April 8, 2023 Metal Processing Technology entered into a written agreement with ICG USA LLC. Whereas ICG USA LLC agreed to purchase 405 packages of copper.

24. Therefore, the Promise made by defendants and their company was deemed Broken, and is now being referenced as a "false Promise" constituting **fraud.**

25. An agent or employee Defendant entity made a false representation that harmed Plaintiff Metal Processing Technology LTC..

Also, CACI #1907

26. Plaintiff is informed and believes that defendants all acted, conspired and participated in a HOAX, implemented by fraud, to trick plaintiff out of his money.

**See California Civil Jury Instructions (CACI)**
**CACI # 1900. Essential Elements for an Action for Intentional Misrepresentation**

Also, CACI #1907

27. However, the freight forwarder, co-defendants and DOES 1-10 intentionally misrepresented that they would ensure that Plaintiff would receive payment for the goods shipped after delivery.

28. WHEREFORE, plaintiff prays for judgment in their favor against defendants and DOES 1 to 20 for general damages in the amount of $<u>According to Proof</u> of at least $35,000, or in the amount of $425,000 if judgement is to be entered by Default.

## SECOND CAUSE OF ACTION FOR
## PROMISSORY FRAUD
### against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC; U.S. BANCORP;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

**29.** The plaintiff refers to and incorporates, as though fully set forth herein,

Paragraphs 1-29, inclusive of the complaint.

See **CACI #1902**.False Promise

30.  On or about April 8, 2024, Ararat Baghdasaryan on behalf of American Global Freights

Entered into a written agreement with Nodirkhonov A.N. on behalf of Metal Processing

Technology.

31. American Global Freights was to act as the freight forwarder involving the shipment

of 405 packages of pipes of refined copper, which weighed 2,991.289 KGs.

32. Per the agreement, the port of discharge would be in Los Angeles, California.

33. On or about April 8, 2023 Metal Processing Technology entered into a written agreement

with ICG USA LLC. Whereas ICG USA LLC agreed to purchase 405 packages of copper.

34. Therefore, the Promise made by defendants and their company

was deemed Broken, and is now being referenced as a "false Promise" constituting **fraud.**

35. An agent or employee Defendant entity made a false representation

that harmed Plaintiff Metal Processing Technology LTC..

36. Defendants and DOES intended that Plaintiff Metal Processing Technology LTC. rely

on this promise.

Plaintiff reasonably relied on Defendants' and DOES' Defendant's promise.

37. Defendants and DOES did not perform the promised act.

Plaintiff Metal Processing Technology LTC. was harmed.

38. Plaintiff Metal Processing Technology LTC.'s reliance on DOE Defendant's promise was a

39. substantial factor in causing their harm.

40. **re.  ICG USA, LLC**

Around August 5, 2024, Metal Processing Technology LTC. received a letter from

• Deceit. Civil Code section 1710.
• " ' "Promissory fraud" is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.' " (Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 973-974 [64 Cal.Rptr.2d 843, 938 P.2d 903], internal citations omitted.)

Also, CACI #1907

Plaintiff relied on DOE Defendant's false promise

41. Plaintiff is informed and believes that defendants all acted, conspired and participated in a HOAX, implemented by fraud, to trick plaintiff out of his money.

42. WHEREFORE, plaintiff prays to the court for relief for general damages in the amount $ According to Proof of at least $75,001 or in the amount of

$425,000 if judgment is to be taken by default.

<div align="center">

**THIRD CAUSE OF ACTION**

**FOR CONVERSION**

against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC; U.S. BANCORP;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego

</div>

Complaint for damages 08/21/2025

of American Global Freights ] and DOES 1 – 20

43. The plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-37, inclusive of the complaint.

See CACI # 2100

44. Plaintiff Metal Processing Technology LTC. claims that Defendants and DOES 1-20 wrongfully exercised control over their money **in excess of $450,000.**

45. Plaintiff Metal Processing Technology LTC. had the right to possess the money that was in his bank.

46. Defendants and DOES 1-20 substantially interfered with Plaintiff Aridis Pharmaceuticals Inc.'s property by knowingly or intentionally taking possession of over $450,000 [Two Hundred and Fifty Thousand Dollars] in money by False Pretenses, by Trick and by Hoax *using duress and false statements* as the means to defraud Plaintiff and extort money from plaintiff Metal Processing Technology LTC.

47. Plaintiff did not consent to giving Defendant $450,000 **in excess of the agreed rent** that had been agreed pursuant to a prior rental agreement.

48. Plaintiff Metal Processing Technology LTC. was harmed.

49. Defendant and DOES 1-20's conduct was a substantial factor in causing plaintiff's harm.

50. Defendant and DOES 1-20'S wrongful acts and omissions were a substantial factor in causing Plaintiff's harm.

51. WHEREFORE, plaintiff prays to the court for relief for general damages in the amount According to proof of at least $75,001, <u>if judgment is to be taken by default, then the</u> <u>Judgment demand would be $825,000,</u> **or in the alternative for return of the merchandise** <u>Plus reasonable damages for diminished value, wear and damage to merchandise</u>

Complaint for damages 08/21/2025.

## FOURTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC; U.S. BANCORP;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

52. The plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-51, inclusive of the complaint.

53. On or about the above-mentioned dates, defendants, and each of them, did each of their acts to intentionally inflict emotional distress upon the corporate officers of Metal Processing Technology LTC..

54. Wherefore, plaintiff did or does seek medical attention to sooth the anguish and mental suffering caused by defendants.

[See CACI # 1600 ]

55. Defendants and DOES 1-20's conduct was outrageous.

56. Defendants and DOES 1-20 intended to cause Plaintiff emotional distress.

57. Defendants and DOES 1-20 acted with reckless disregard of the probability that

58. Plaintiff would suffer emotional distress, knowing that Plaintiff Metal Processing Technology LTC. was present when the conduct occurred.

59. Plaintiff Metal Processing Technology LTC.'s corporate officers suffered severe emotional distress

60. Defendants and DOES 1-20's conduct was a substantial factor in causing Plaintiff severe emotional distress.

[Also, See CACI #1602]

10
Complaint for damages 08/21/2025

Plaintiff seeks declaratory adjudication as to the following questions of fact:

(a) Whether defendants abused a position of authority or a relationship that

gave them real or apparent power to affect plaintiff's interests;

(b) Whether defendants knew that plaintiff was particularly vulnerable

to emotional distress; and

(c) Whether defendants knew that their conduct would likely

result in harm due to mental distress.

61. WHEREFORE, plaintiff prays to the court for relief for general damages in the amount

According to proof of at least $75,001, if judgment is to be taken by default, then the

Judgment demand would be $825,000

## FIFTH CAUSE OF ACTION FOR
## VIOLATION OF RICO ACT
against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC; U.S. BANCORP;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

62. Plaintiff refers to and incorporates by this reference each allegation set forth in

Paragraphs 1 through 61 thereof, inclusive, as if alleged herein in full.

63. **A plaintiff may bring a private civil action for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO**). See *18 U.S.C. § 1964(c)*. The RICO statute prohibits four types of activities: (1) investing in, (2) acquiring, or (3) conducting or participating in an enterprise with income derived from a pattern of racketeering activity or collection of an unlawful debt, or (4) conspiring to commit any of the first three types of activity. 18 U.S.C. § 1962(a)–(d). RICO was "intended

to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005). However, the statute is to "be liberally construed to effectuate its remedial purposes." *Odom v. Microsoft Corp.*, 486 F.3d 541, 546 (9th Cir. 2007).

64. Defendants and DOES 1-20 are officers of managing partners for Corporations and LLCs ,that engage in facilitating their entities in Violating the Rico Act.

65. Defendants and DOES 1-20 and Co-defendants operate in several states within the U.S.A., and engage in a pattern of fraud, deceptive practices, collusive practices, and unethical practice constituting crimes on a daily basis.

66. Defendant **CORPORATION and LLC entities** operate in several states within the United States.

67. Plaintiff is informed and believes that the individuals and entities have a pattern of engaging in criminal activity, resulting in harm to the general public, and does so in several states within the United States.

68. All named Defendants may have committed crimes during the course of their correspondence with Plaintiff.

69. A plaintiff may bring a private civil action for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). See 18 U.S.C. § 1964(c). The RICO statute prohibits four types of activities: (1) investing in, (2) acquiring, or (3) conducting or participating in an enterprise with income derived from a pattern of racketeering activity or collection of an unlawful debt, or (4) conspiring to commit any of the first three types of activity. 18 U.S.C. § 1962(a)–(d). RICO was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." Oscar v. Univ. Students Coop. Ass'n, 965 F.2d 783, 786 (9th Cir. 1992), abrogated on other grounds by Diaz v. Gates, 420 F.3d 897 (9th Cir. 2005). However, the statute is to "be liberally construed to effectuate its remedial purposes." Odom v. Microsoft Corp., 486 F.3d 541, 546 (9th Cir. 2007).

## ESSENTIAL ELEMENTS

70. Plaintiff alleges and intends to prove that defendants and DOES 1-10 engaged in the following conduct, based on an enterprise, collusive of a pattern of activity designed to defraud others as to the:

(1) conduct,

(2) of an enterprise,

(3) through a pattern,

(4) of racketeering activity (known as "predicate acts"),

(5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation. See Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005).

71. **Conduct:** The conduct element of § 1962(c) requires that the defendant have some part in directing the affairs of the enterprise. Liability is not limited to those with primary responsibility for the enterprise's affairs, nor is a formal position within the enterprise required.

72. As to the element of causation, a plaintiff must prove that the defendant's unlawful conduct was the proximate cause of the plaintiff's injury. Harmoni International Spice, Inc. v. Hume, 914 F.3d 648, 651 (9th Cir. 2019)

73.        **Enterprise:** An "enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The "definition is not very demanding." Odom, 486 F.3d at 548. RICO does not require that either the racketeering enterprise or the predicate acts of racketeering be motivated by an economic purpose. Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 262 (1994).

74. Wherefore, Plaintiff prays for judgment against each defendant in an amount according to proof of at least $75,000 as general damages or in an amount according to proof

**SIXTH CAUSE OF ACTION FOR**

13
Complaint for damages 08/21/2025

## CONSPIRACY TO VIOLATE RICO ACT
against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC; U.S. BANCORP;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

75. Plaintiff refers to and incorporates by this reference each allegation set forth in **Paragraphs 1 through 74** hereof, inclusive, as if alleged herein in full.

76. Defendants and DOES 1-20 committed each wrong act and omission that harmed Plaintiff.

77. Defendants are business entities and owners of **entities who do business in multiple states which are exemplary of crime, including hoax,** wire fraud, grand larceny and related federal crimes, which **they do for a profit.**

78. Each Defendants and DOES 1-20 was aware that the co-defendants planned to Commit each act and omission described in the complaint with intent to harm Plaintiff.

79. Each Defendant and DOES 1-20 agreed with the coconspirator and intended that each wrongful act and omission alleged herein be committed against Plaintiff to cause Plaintiff harm [As described in CACI #3600].

80. During the course of Defendants' harm toward Gates, defendants committed Crimes involving violations of California B&P Codes, and Title 18 U.S.C. § 241.

81. DEFENDANTS, DOES 1-20 and CO-DEFENDANTS **acted in Concert** to commit fraud, and engage in abuse of process in effort to harm Plaintiff.

82. Wherefore, Plaintiff prays for judgment against each defendant in an amount according to proof of at least $75,001 **or in the amount of $3,000,000** if the judgment is to be entered by default.

### SEVENTH CAUSE OF ACTION FOR
### CIVIL CONSPIRACY

against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC; U.S. BANCORP;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

83. Plaintiff refers to and incorporates by this reference each allegation set forth in **Paragraphs 1 through 82** thereof, inclusive, as if alleged herein in full.

84. On or about the above-stated dates, Plaintiff was harmed emotionally, based on defendants' conspiracy to act, conspire and participate "in concert" as to each Allegation contained in the causes of action alleged in this complaint.

85. Defendants and DOES 1-20 are responsible for the harm because they were part of a conspiracy to commit each act and omission alleged in this complaint.

86. A conspiracy is an agreement by two or more persons to commit a wrongful act.

87. Such an agreement may be made orally or in writing or may be implied by the conduct of the parties.

88. Defendants and DOES 1-20 committed each wrong act and omission that harmed Plaintiff.

89. Each Defendant was aware that the co-defendants planned to Commit each act and omission described in the complaint with intent to Harm Plaintiff.

90. Each Defendant agreed with the coconspirator and intended that each wrongful act and omission alleged herein be committed against Plaintiff to cause Plaintiff harm [As described in **CACI #3600**].

### EIGHTH CAUSE OF ACTION FOR
### NEGLIGENCE-RESPONDEAT SUPERIOR [VICARIOUS LIABILITY]
against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;

MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC; U.S. BANCORP; Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova; Ararat Baghdasaryn [aka alter ego of American Global Freights ] and DOES 1 – 20

91. Plaintiff refers to and incorporates by this reference each allegation set forth in **Paragraphs 1 through 90** thereof, inclusive, as if alleged herein in full.

92. AS TO CONTRACT WITH AMERICAN GLOBAL FREIGHT

93. On or about the date of February 6, 2024, Plaintiff Metal Processing Technology LLC and American Global Freights entered into a contract;

The terms and conditions of the said written contract, in general were as follows

Plaintiff agreed to pay for Freight Forwarding as to a shipment of approximately $500,000 in precious metals

94. In return for plaintiff's performance, defendants American Global Freights agreed

Collect the money owed by purchaser, ICG USA LLC,

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.

87. Plaintiff did all, or substantially all, of the significant things that the contract required by them.

88. All conditions required by the contract for Defendants American Global Freights performance were not complied with.

89. The condition requiring Defendants to make payment for the Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova

90. AS TO CONTRACT WITH ICG USA LLC,

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.

91. On or about the date of February 6, 2024, Plaintiff Metal Processing Technology LLC ICG USA LLC, Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova entered into a contract;

Complaint for damages 08/21/2025

92. The terms and conditions of the said written contract, in general were as follows

93. Plaintiff agreed to have around $500,000 in precious metals delivered to the customer ICG USA LLC, in exchange for ICG USA LLC issuing payment.

94. However, ICG USA LLC pickup the merchandise without making the required payment to plaintiff re. around $500,000 in precious metals

95. In return for plaintiff's performance, defendants American Global Freights agreed collect the money owed by purchaser, ICG USA LLC, Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova.

96. Plaintiff did all, or substantially all, of the significant things that the contract required by them.

97. All conditions required by the contract for Defendants American Global Freights and ICG USA LLC performance were not complied with.

98. The condition requiring Defendants to make payment for the goods After receiving the goods did not occur and were not excused.

99. Defendants failed to do something that the contract required them to do.

re. CONTRACT WITH MAERSK

100. On or about June 27, 2024, Plaintiff METAL PROCESSING TECHNOLOGY LLC and MAERSK entered into agreement, whereas MAERSK would collect the required payment from the Client ICG USA LLC American Global Freight.

101. On or about June 27, ,2024, MAERSK received the merchandise shipped to ICG USA LLC from Metal Processing Technology LLC, but failed to ensure that Metal Processing Technology LLC would receive the money owed to them MAERSK negligently released the goods without collecting payment from the receiving Party, which was over $500,000 in merchandise.

102. Specifically, defendants failed to make the required payment for the goods received after they received the goods.

103. Plaintiff was harmed.

Complaint for damages 08/21/2025

104. Defendants' breach of contract was a substantial factor in causing Plaintiff's harm.

105. The Defendant **BUSINESS ENTITIES named** were negligent in supervising, managing and overseeing the functions of their agents and employees DOES 1-5 **who are employed by**

A. AMERICAN GLOBAL FREIGHTS [A California Corporation];

B. MAERSK CUSTOMS SERVICES USA INC.;

C. MAERSK LOGISTICS & SERVICES USA INC.;

D. ICG USA, LLC;

E. U.S. BANCORP

106. An employee or agent is always responsible for harm caused by his, her or its own wrongful conduct, whether or not the employer is also liable.

**107. DEFENDANTS, DOES 1-20 AND CO-DEFENDANTS acted in Concert** to commit fraud, and engage in abuse of process in effort to harm Plaintiff.

108. Defendants planned, plotted, and conspired with the other named defendants and conspired and carried out by defendants was intentional.

109. Each **co-conspirators committed fraud, planned** and plotted to

110. Each defendant and DOE conspirator is responsible because conspirators were aware that the named defendants planned their scheme.

Each defendant and coconspirators agreed with the other defendants

and intended that the fraud, property damage and

intentional infliction of emotional distress be committed. [See CACI #3600]

**111.** As a result, Plaintiff was damaged by defendants' **wrongful conduct** in an amount of at least $75,001.

<div align="center">

**NINTH CAUSE OF ACTION FOR**

**BREACH OF WRITTEN CONTRACT**
against AMERICAN GLOBAL FREIGHTS

</div>

Complaint for damages 08/21/2025

[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.; MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC; U.S. BANCORP; Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova; Ararat Baghdasaryn [aka alter ego of American Global Freights ] and DOES 1 – 20

112. Plaintiff refers to and incorporates by this reference each allegation set forth in Paragraphs 1 through 111 thereof, inclusive, as if alleged herein in full.

### AS TO CONTRACT WITH AMERICAN GLOBAL FREIGHT

**113.** On or about the date of February 6, 2024, Plaintiff **Metal Processing Technology LLC and American Global Freights** entered into a contract;

The terms and conditions of the said written contract, in general were as follows

114. Plaintiff agreed to pay for Freight Forwarding as to a shipment of approximately $500,000 in precious metals

115. In return for plaintiff's performance, defendants American Global Freights agreed

Collect the money owed by purchaser, ICG USA LLC,

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.

116. Plaintiff did all, or substantially all, of the significant things that the contract required by them.

117. All conditions required by the contract for Defendants American Global Freights performance were not complied with.

118. The condition requiring Defendants to make payment for the Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova

### AS TO CONTRACT WITH ICG USA LLC,

### Emilia Arutyunova aka Emiliya Aroutiounov;

### and Artour Aroutiounov aka Artour Arutyunova.

119. On or about the date of February 6, 2024, Plaintiff **Metal Processing Technology LLC ICG USA LLC, Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova** entered into a contract;

Complaint for damages 08/21/2025

120. The terms and conditions of the said written contract, in general were as follows

121. Plaintiff agreed to have around $500,000 in precious metals delivered to the customer ICG USA LLC, in exchange for ICG USA LLC issuing payment.

122. However, ICG USA LLC pickup the merchandise without making the required payment to plaintiff re. $500,000 in precious metals.

123. In return for plaintiff's performance, defendants American Global Freights agreed collect the money owed by purchaser, ICG USA LLC, Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova.

124. Plaintiff did all, or substantially all, of the significant things that the contract required by them.

125. All conditions required by the contract for Defendants American Global Freights and ICG USA LLC performance were not complied with.

126. The condition requiring Defendants to make payment for the goods After receiving the goods did not occur and were not excused.

127. Defendants failed to do something that the contract required them to do.

### re. CONTRACT WITH MAERSK

128. On or about June 27, 2024, Plaintiff METAL PROCESSING TECHNOLOGY LLC and MAERSK entered into agreement, whereas MAERSK would collect the required payment from the Client ICG USA LLC American Global Freight.

129. On or about June 27, ,2024, MAERSK received the merchandise shipped to ICG USA LLC from Metal Processing Technology LLC, but failed to ensure that Metal Processing Technology LLC would receive the money owed to them MAERSK negligently released the goods without collecting payment from the receiving Party, which was over $500,000 in merchandise.

130. Specifically, defendants failed to make the required payment for the goods received after they received the goods.

131. Plaintiff was harmed.

132. Defendants' breach of contract was a substantial factor in causing Plaintiff's harm.

## TENTH CAUSE OF ACTION FOR NEGLIGENCE

### Against all defendants and DOES 1-10

133. Plaintiff refers to and incorporates by this reference each allegation set forth in Paragraphs 1 through 84 thereof, inclusive, as if alleged herein in full.

134. Each named Defendant and DOES 1-10 was negligent. Defendants and DOES 1-10 owed a duty to Plaintiff to ascertain that the money owed to Plaintiff was paid upon the delivery of the goods shipped to Defendants ICG USA and LLC Emelia Arutyunova.

135. However, **defendants and DOES 1-10 breached their duty owed to plaintiff by failing to ensure that Plaintiff was paid for the goods delivered upon delivery**. Therefore, Defendants and DOES 1-10 were negligent.

NEGLIGENCE against AMERICAN GLOBAL FREIGHTS

[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;

MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC;

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova;

Ararat Baghdasaryn [aka alter ego

of American Global Freights ] and DOES 1 – 20

85.     Plaintiff refers to and incorporates by this reference each allegation set forth in Paragraphs 1 through 84 thereof, inclusive, as if alleged herein in full.

86.     AS TO CONTRACT WITH AMERICAN GLOBAL FREIGHT

87.     On or about the date of February 6, 2024, Plaintiff Metal Processing Technology LLC and American Global Freights  entered into a contract;

The terms and conditions of the said written contract, in general were as follows

21
Complaint for damages 08/21/2025

Plaintiff agreed to pay for Freight Forwarding as to a shipment of approximately $500,000 in precious metals

88.    In return for plaintiff's performance, defendants American Global Freights agreed

Collect the money owed by purchaser, ICG USA LLC,

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.

87. Plaintiff did all, or substantially all, of the significant things that the contract required by them.

88. All conditions required by the contract for Defendants American Global Freights performance were not complied with.

89.  The condition requiring Defendants to make payment for the Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova

90. AS TO CONTRACT WITH  ICG USA LLC,

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.

91. On or about the date of February 6, 2024, Plaintiff Metal Processing Technology LLC  ICG USA LLC, Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova entered into a contract;

92. The terms and conditions of the said written contract, in general were as follows

93. Plaintiff agreed to have around $500,000 in precious metals delivered to the customer ICG USA LLC, in exchange for ICG USA LLC issuing payment.

94.  However, ICG USA LLC pickup the merchandise without making the required payment to plaintiff re. around $500,000 in precious metals

95. In return for plaintiff's performance, defendants American Global Freights agreed

collect the money owed by purchaser, ICG USA LLC,

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.

Complaint for damages 08/21/2025

96. Plaintiff did all, or substantially all, of the significant things that the contract required by them.

97. All conditions required by the contract for Defendants American Global Freights and ICG USA LLC performance were not complied with.

PRAYER FOR JUDGMENT

133. Wherefore, Plaintiff prays for judgment against each defendant **in an amount according to proof** of at least $75,001 **or in the amount of $3,000,000** if the judgment is to be entered by default.

### DEMAND FOR JURY TRIAL

134. Plaintiff demands a trial by jury of all claims so triable as a matter of right and law.

### PRAYER FOR JUDGMENT AND RELIEF

135. WHEREFORE, Plaintiff prays for judgment and order against the Defendants, and each of them, as follows:

### FOR ALL CAUSES OF ACTION

1. General Damages in a **monetary amount "according to proof" of at least $35,001 or in the amount of $7,000,000 if judgment is entered by default; or Return of the unpaid merchandise plus reasonable damages for diminished value;**

2. For Punitive Damages in the amount of $10,000,000;

3. For such other relief as the Court deems just and proper.

**Dated: September 18, 2025**

Respectfully submitted,

By *Ruochen Liu*

Attorney for Metal Processing Technology LTC.,

See attached verification and Exhibits

Complaint for damages 08/21/2025

**VERIFICATION BY ULUGBEK TADJIEV**
**Corporate officer for METAL PROCESSING TECHNOLOGY LTC.**

I, ULUGBEK TADJIEV, declare:

I am a corporate officer for plaintiff Metal Processing Technology LTC.

I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 21, 2025

By: X _____

ULUGBEK TADJIEV (Corporate Officer of Metal Processing Technology LTC )

Complaint for damages 08/21/2025

# INDEX OF EXHIBITS

## EXHIBIT #1

**Contract with American Global Freight**

## EXHIBIT #2

**Contract with ICG USA LLC**

## EXHIBIT #3

**Contract with MAERSK**

## EXHIBIT #4

**California Secretary of State's Statement of Information as to Defendant ICG USA LLC**

# EXHIBIT #1
## Contract with AMERICAN GLOBAL FREIGHT

| | |
|---|---|
| **Contract No 01**<br>**Transport expedition** | **ДОГОВОР № 01**<br>**Транспортной экспедиции** |

| | |
|---|---|
| April 8, 2024 | 8 Апреля 2024г. |

| | |
|---|---|
| **"American Global Freight"** hereinafter referred to as the «Forwarder» represented by the General Manager of the company **Ararat Baghdasaryan** on the one hand and LLC **"Metal Processing Technology"**, hereinafter referred to as the «Customer», represented by the director of the company **Nodirkhonov A.N.**, acting in compliance with the Regulations on the other hand have signed the present Contract to the following terms: | **"American Global Freight"**, именуемое в дальнейшем «Экспедитор», в лице Генерального Директора Арарата Багдасаряна, с одной стороны, и LLC **"Metal Processing Technology"**, именуемый в дальнейшем «Клиент», в лице директора **Nodirkhonov A.N.**, действующего на основании Устава, с другой стороны, заключили настоящий Контракт о нижеследующем: |

| | |
|---|---|
| **1. Subject of the contract**<br>1.1. According to the present Contract "The Forwarder" is obliged to arrange and provide freight forwarding services, concerned with the Cargoes of "the Customer". "The Customer" is obliged to pay for forwarding services rendered. | **1. Предмет договора.**<br>1.1. По настоящему Договору Экспедитор обязуется выполнять или организовывать выполнение определенных Договором транспортно-экспедиторских услуг, связанных с грузами Клиента, а Клиент обязуется оплатить оказанные ему транспортно-экспедиционные услуги. |
| 1.2. While performance of duties according to the present Contract "the Forwarder" acts on its own behalf and at the expenses of "the Customer", or on behalf and at the expenses of "the Customer" | 1.2. В ходе выполнения обязанностей по настоящему договору Экспедитор действует от собственного имени и за счёт Клиента, либо от имени и за счет Клиента. |
| **2.The rights and responsibilities of "the Forwarder"** | **2. Права и обязанности Экспедитора.** |
| 2.1 "The Forwarder" fulfills the certain services in accordance with forwarding instructions of "the Customer" (applications to the present Contract). The specific list of services rendered by "the Forwarder" is coordinated with the Parties in every specific forwarding instructions. In particularly, "the Forwarder": | 2.1 Экспедитор выполняет или организовывает выполнение определенных услуг в соответствии с экспедиторскими поручениями Клиента (Приложения к настоящему Договору). Конкретный список услуг, оказываемых Экспедитором, согласовывается Сторонами в каждом конкретном экспедиторском поручении. В частности, Экспедитор: |
| - arranges transportation of "the Client's" cargoes by motor, railway, sea, air types of transport, makes the payment of cargo Carriers; | - организует перевозку автомобильным, железнодорожным, морским, воздушным транспортном грузов Клиента, осуществляет оплату услуг Перевозчиков; |
| - arranges and makes payment of terminal operations (handling, storage, inspection etc.) for "the Customer's" expenses; | - организует и производит за счет Клиента оплату терминальных операций (погрузочно-разгрузочные работы, хранение, досмотр и пр.); |
| - makes repacking, relabeling, package repair, cargo weighing, goods quality definition | - выполняет работы по переупаковке, перемаркировке, ремонту тары, взвешиванию груза, определению качества товара; |
| - enlists experts from survey organizations for making examination certificates for definihg quality and quantity of cargoes; | - привлекает экспертов сюрвейерских организаций для составления актов экспертизы по определению количества и качества груза; |
| - carries cargo insurance at expenses and in the interests of "the Customer"; | - осуществляет страхование груза за счет и в интересах Клиента; |
| - provides consulting and information services on the issues connected with performance of obligations under this contract; | |
| - informs "the Customer" about cargo location according to "the Customer's" demand; | - информирует Клиента о движении груза по его запросу; |
| - provides other services according to "the Customer's" forwarding instructions; | |

1

2.2. "The Forwarder" makes necessary payments for third parties services on its own behalf, but at expense and in the interests of "the Customer";

2.3. "The Forwarder" fulfills accepted orders on most favorable for "the Customer" conditions in accordance with instructions, in the absence of instructions – in accordance with business intercourse rules or other common requirements;

2.4. "The Forwarder" provides the documents list to "the Customer", which are necessary for transportation and forwarding of cargo. In case of additional requirements for set of documents, which is necessary for cargo documenting, from customs, veterinary or other state structures, "the Forwarder" informs "the Customer" about the list of additional documents.

**2.5. "The Forwarder" has the right:**

    2.5.1    to attract the third parties for duty performance

**3. Liabilities of "The Customer"**

3.1 To issue the letter of attorney for "the Forwarder" for the right to fulfill fright forwarder operations;

3.2 To send forwarding order to "the Forwarder" in accordance with the terms of the present Contract;

3.3 To supply "the Forwarder" with full pack of relevant documents, which are necessary for duty performance according to the present Contract, in proper time;

3.4 To supply "the Forwarder" with special instructions for cargo processing, which are not established;

3.5 To supply "the Forwarder" with cargo in accordance with forwarding order and to coordinate with date and place of cargo transfer with "the Forwarder" preliminary;

3.6 To sign the Statement of execute works and send it to "the Forwarder" within 3 days from the moment of receiving the Statement. "The Forwarder" sends the Statement of execute works by fax or by e-mail to foreign Customers, "the Customer" should send the signed copy by fax within 3 days, after receiving which "the Forwarder" sends the original of Statement of execute works to "the Customer" by registered

-    оказывает консультационные и информационно-справочные услуги по вопросам, связанным с выполнением обязательств по данному договору.

-    иные услуги на основании экспедиторских поручений Клиента.

2.2 Экспедитор от своего имени, но за счет и в интересах Клиента производит необходимые платежи за услуги третьих лиц.

2.3 Принятое поручение Экспедитор стремится исполнить на наиболее выгодных для Клиента условиях в соответствии с его указаниями, а при их отсутствии - в соответствии с обычаями делового оборота или иными обычно предъявляемыми требованиями.

2.4 Экспедитор предоставляет Клиенту список документов, необходимых для организации перевозки и экспедирования груза. Если таможенными, ветеринарными или иными государственными органами будут предъявлены дополнительные требования к пакету документов, необходимому для документального оформления груза, то Экспедитор немедленно сообщает Клиенту список дополнительно затребованных документов.

**2.5 Экспедитор имеет право:**

2.5.1 Привлекать для исполнения обязанностей по настоящему Договору третьих лиц.

**3. Обязанности клиента.**

3.1.    Выдать доверенность Экспедитору на право совершения транспортно-экспедиторских операций.

3.2.    Направлять экспедиторское поручение Экспедитору в соответствии с условиями настоящего Договора.

3.3. Своевременно предоставлять Экспедитору полный комплект надлежащим образом оформленных документов, необходимых Экспедитору для выполнения обязанностей по настоящему Договору.

3.4.    Обеспечивать Экспедитора специальными инструкциями по обработке грузов, в отношении которых не установлены транспортные правила.

3.5. Предоставить Экспедитору груз, в соответствии с экспедиторским поручением, предварительно согласовав с Экспедитором дату и место передачи груза.

3.6.    Подписать Акт выполненных работ и направить его Экспедитору в течении 3 (трех) дней с момента получения акта. Для иногородних Клиентов Экспедитор направляет акт выполненных работ с помощью факсимильной связи, либо электронной почты, а Клиент в течении 3 (трех) дней должен переслать подписанный экземпляр акта по факсу, после получения которого Экспедитор отправляет оригинал акта выполненных работ Клиенту заказным письмом. В случае, если в течение указанных

2

letter. In case the "the Customer" doesn't sign the statement within given time and doesn't send reasonable objections to "the Forwarder", the Statement of execute works is considered to be accepted and the cost of provided services is confirmed;

3.7 To pay an account billed by "the Forwarder" in proper time in accordance with the terms of present Contract.

сроков Клиент не подписывает Акт и к Экспедитору не поступает мотивированных возражений Клиента, Акт выполненных работ считается принятым, а стоимость оказанных Экспедитором услуг утвержденной.

3.7. Своевременно, в соответствии с условиями настоящего Договора оплачивать выставленные Экспедитором счета.

### 4. The content and approval procedure of applications.

4.1. The Forwarder" provides services to "the Customer" within the limits of forwarding orders;

4.2. The Forwarding order is a written instruction from "the Customer" to "the Forwarder" about providing freight forwarding services in accordance with the present Contract. The forwarding order must include the necessary information enough for providing services such as: information about types of provided services, cargoes, its quantity, packing, dimensions of cargo packages, dates of cargo readiness in stocks, the delivery address of cargo, terms of delivery and other necessary information. The certain Forwarding order can change or cancel some clauses of the present Contract.

4.3. "The Customer" gives or sends the Forwarding order in written form (by fax, e-mail) and also the set of documents, which are necessary for "the Customer's" cargo expedition, within 2 working days till the beginning of providing the services mentioned in order;

4.4. The Forwarding order is considered to be confirmed and comes into legal force for Parties of the present Contract from the moment of Forwarding order signing by both Parties, receiving the consent of "the Forwarder" for providing services and begging of providing services to "the Customer" in accordance with the Forwarding order.

4.5. "The Customer" is obliged to inform "the Forwarder" immediately in written form in case of any changes in the Forwarding orders of "the Customer" or any changes in cargo delivery schedule, its volume, cargo delivery address, terms of delivery, and also in case if any other circumstances that can influence on the Parties duty performance of the present Contract.

### 4. Содержание и порядок согласования заявок.

4.1. Экспедитор оказывает услуги Клиенту в рамках согласованных экспедиторских поручений.

4.2. Экспедиторским поручением является письменное указание Клиента Экспедитору о предоставлении транспортно-экспедиционных услуг в соответствии с настоящим Договором. Экспедиторское поручение должно содержать необходимую информацию, достаточную для выполнения Экспедитором услуг, в частности: информацию о видах оказываемых услуг, грузах, их количестве, упаковке, размерах грузовых мест, сроках готовности груза на складах отправителей, адрес доставки груза, условия поставки и другую, необходимую информацию. Конкретное Экспедиторское поручение может изменять и отменять отдельные положения настоящего Договора.

4.3. Клиент вручает Экспедитору или направляет в письменном виде (по факсу, по электронной почте) экспедиторское поручение, а также пакет документов, необходимых для экспедирования груза Клиента, не позднее, чем за 2 (два) рабочих дня до начала оказания указанных в заявке услуг.

4.4. Экспедиторское поручение считается согласованным и приобретает юридическую силу для Сторон настоящего Договора с момента подписания Экспедиторского поручения обеими Сторонами, получения Клиентом согласия Экспедитора на оказание услуг или начала оказания Экспедитором услуг в соответствии с экспедиторским поручением Клиента.

4.5. В случае возникновения любых изменений в экспедиторских поручениях Клиента, выдаваемых в соответствии с настоящим Договором, либо возникновения изменений в графике завоза груза, его объеме, номенклатуре, при изменении адреса доставки груза, условий поставки, а также при возникновении любых других обстоятельств, которые могут повлиять на ход исполнения Сторонами своих обязательств по настоящему Договору, Клиент обязан немедленно сообщить об этом Экспедитору в письменной форме.

3

**5. Payment procedure.**

5.1. "The Customer" makes the payment of "the Forwarder's" services, on the basis of the invoices, issued as per Rates, agreed by the Parties on the moment of receiving an order.

5.2. The payments of "the Forwarder" invoices is made within 5(five) banking days from the date of issuing and sending the invoice to "the Customer";

5.3. The coordinated cost of "the Forwarder's" services includes commission and costs, born by "the Forwarder" in the interests of "the Customer". The commission of "the Forwarder" equals the difference between overall cost of "the Forwarder's" services and the sum of the costs born "the Forwarder".

**6. Liabilities of the parties**

6.1. "The Forwarder" is responsible for damage of "the Customer's'" cargo, and also for delay in providing serviced in accordance with the legislation about transport forwarding activity;

6.2. In case of invoice payment delay "the Customer" pays penalty at a rate of 0.1% from the total sum for each day of delay;

6.3. "The Forwarder" hiring the third party for execution of the obligations is liable for their actions as for its own.

**6.4. "The Forwarder" is not responsible for:**

• Quality and accordance of received cargo to the documents identifying its assortment, type etc., that is the distinctive feature of the cargo and can be defined only by expertise or analysis, or quality certificate. All problems with customs, that can arise because of "the Customer's" mistakes in documents, are solved by "the Customer" without participation of "the Forwarder" or according to coordination of the Parties.

- The quantity of cargo packages and weight are not correspondent with the ones mentioned in transport documents;
- Inside shortage contents freight place, accepted trig packing.

• Not keeping the schedule of cargoes transporting in case of inadequate execution of obligations, stipulated in the present Contract, and also for all the losses connected with these violations;

• Possible additional expenses and losses, occurred in result of claiming additional requirements for legalization by customs, veterinary or other authorized state structures.

**5. Расчеты между сторонами.**

5.1. Клиент осуществляет оплату услуг Экспедитора согласно выставленным счетам поставкам, существующим у Экспедитора на момент подачи Клиентом заявки.

5.2. Оплата счетов Экспедитора производится Клиентов в течение 5 (Пяти) банковских дней с момента выставления и направления Экспедитором Клиенту соответствующего счета.

5.3. Согласованная стоимость услуг Экспедитора включает в себя вознаграждение и расходы, которые несет Экспедитор в интересах Клиента. При этом вознаграждение Экспедитора определяется как разница между общей стоимостью услуг Экспедитора и суммой понесенных им расходов.

**6. Ответственность сторон.**

6.1. Экспедитор несет ответственность за порчу и повреждение грузов Клиента, а также за просрочку в оказании услуг в соответствии с законодательством о транспортно- экспедиционной деятельности.

6.2. В случае несвоевременной оплаты Клиентом счетов Экспедитора, последний имеет право начислить пени в размере 0,1% от суммы неоплаченной суммы за каждый день просрочки.

6.3. В случае если Экспедитор привлекает для исполнения поручений Клиента третьих лиц, он твечает за их действия как за свои собственные.

**6.4. Экспедитор не несет ответственности за:**

- Качество и соответствие принятого к перевозке груза документам, удостоверяющим их ассортимент, тип, марку и т.п., что является неотличимой особенностью груза и может быть определено исключительно путем экспертизы или анализа, либо сертификата качества или соответствия. Все споры с таможенными органами, которые могут возникнуть из-за ненадлежащего оформления Клиентом документов либо из-за других упущений Клиента, разрешаются Клиентом без участия Экспедитора, либо по согласованию между Сторонами совместно.

- Несоответствие количества мест и весов, заявленных в транспортных документах, фактическому количеству мест и весу груза.
- Внутритарную недостачу содержимого грузовых мест, принятых/переданных в исправной таре.

- Несоблюдение сроков перевозки грузов при ненадлежащем выполнении Клиентом условий настоящего Договора, а также за все убытки, связанные с этими нарушениями.

- Возможные дополнительные расходы и убытки, возникшие в результате предъявления таможенными, ветеринарными или иными уполномоченными государственными органами дополнительных требований к оформлению груза.

4

**7. Force Majeure**

7.1. Any of the parties will be released from their responsibility for partial or complete non-execution of their liabilities under the present Contract should this non-execution be caused by the circumstances of force majeure, occurred after signing the present Contract, which the Party can not foresee. The force majeure includes fire, flood, earthquake and other natural calamities, extreme weather and climatic conditions, embargoes, war or state of emergency, temporary closed motorways, national or local strikes, military coup d'etat, accidents with no fault of driver and other force majeure circumstances.

7.2. In case of force majeure circumstances, the time of execution of the obligations is to be extended for a period equal to that during which such circumstances will remain in force;

7.3. The Party, which becomes unable to fulfill its duties because of force majeure circumstances, is to inform another Party within 6 (six) hours in written form. Otherwise, the Party can't not refer to force majeure circumstances as the basis of declining the responsibility;

7.4. In case the period exceeds 3 (three) months, the Parties shall jointly consider the further expedience of the Contract or revise the terms;

7.5. The Party, which refers to force majeure circumstances, is to provide a certificate from the Chamber of Commerce and Industry or other authorized state structure.

**8. Terms of validity**

8.1. This Contract becomes effective from the moment of its signing by the Parties and is valid till 31 of December 2024. The currency of the Contract is automatically prolonged for the next calendar year if, 30 days before the expiration, neither Party notifies of its desire to terminate the present Contract.

8.2. In violation of 8.1. particularly about notifying the Party about desire to terminate the Contract, the Party, that didn't notify about its desire in proper time,

**7. Форс-мажор.**

7.1. Стороны освобождаются от ответственности за неисполнение или частичное неисполнение обязательств по настоящему договору, в случаях, когда оно является прямым следствием обстоятельств непреодолимой силы, возникших после заключения настоящего договора, которые сторона не могла разумно предвидеть или предотвратить. К обстоятельствам непреодолимой силы относятся: пожары, наводнения, землетрясения и другие стихийные бедствия, экстремальные погодно-климатических условия, запрет экспорта или импорта определенных товаров, объявление чрезвычайного или военного положения, фактические военные действия, временное закрытие для движения отдельных автомобильных дорог по распоряжению компетентных властей, общенациональные или локальные забастовки, военные перевороты, дорожно-транспортные происшествия не по вине водителя, издание нормативных актов, государственный запрет на совершение действий, составляющих содержание обязательств, и другие обстоятельства непреодолимой силы.

7.2. Срок исполнения обязательства при наступлении обстоятельств непреодолимой силы увеличивается на срок действия этих обстоятельств.

7.3. Сторона, которая не может исполнить свои обязательства по настоящему договору в связи с наступлением обстоятельств непреодолимой силы, обязана в течение 6 (шести) часов в письменной форме уведомить другую сторону о наступлении этих обстоятельств и о предполагаемом сроке их действия. В противном случае сторона не может ссылаться на обстоятельства непреодолимой силы как на основание освобождения от ответственности.

7.4. Если этот срок превышает 3 месяца, стороны договариваются о досрочном расторжении договора или пересмотре его условий.

7.5. Сторона, ссылающаяся на обстоятельства непреодолимой силы, обязана предоставить подтверждающую это справку из соответствующей торгово-промышленной палаты или иного уполномоченного государственного органа.

**8. Действие договора.**

8.1. Настоящий Договор вступает в законную силу с момента подписания его полномочными представителями Сторон и действует до 31 декабря 2024 г. Срок действия договора автоматически продлевается на следующий календарный год, если ни одна из сторон за 30 дней до истечения срока действия договора не известит другую сторону о своем намерении расторгнуть настоящий договор.

8.2. При нарушении п. 8.1. в части извещения Стороны о намерении расторгнуть договор Сторона, своевременно не известившая о своем намерении, возмещает другой Стороне убытки, вызванные таким

5

recovers losses to other Party, caused by this termination.

8.3. In case of the Contract termination the Parties are to fulfill their obligations under contract made prior thereof.

9. Other conditions.
9.1. All disputes in connection with this Contract shall be settled by negotiations. If the Parties are unable to settle any disputes by negotiations, such disputes shall be settled by the Court in the city of Valencia according to the rules of law of Spain.

9.2. All terms that are not regulated by the present Contract, are regulated according to rules of law Spain.

9.3. All the documents concerning the present Contract can be made and sent by fax or telex. The Parties recognize these documents to be legal and original.

9.4. In the event any of the clauses or/and conditions of the present Contract is recognized invalid, such recognition does not influence the validity of any other clauses and conditions of the present Contract. The invalid clause is to be replaced by other similar clause which is workable in legal terms.

9.5. This Contract is drawn up in two copies, each copy for each Party, both copies have equal legal force.

## 10. ADDRESSES AND DETAILS OF THE PARTIES

Forwarder/Экспедитор
**American Global Freights**

Address:
601 E Acacia ave, Unit I
Glendale, CA 91205
USA

Bank Information
Beneficiary Account: 325168169007
Bank: Bank of America, N.A.
Swift Code: BOFAUS6IXXX
Bank Address: 555 CALIFORNIA STREET, SAN FRANCISCO, CA 94104

Ararat Baghdasaryan _____

расторжением

8.3. В случае прекращения действия настоящего договора, Стороны обязаны исполнить все возникшие до этого момента обязательства.

9. Прочие условия.
9.1. Все споры, возникающие в связи с настоящим договором, стороны будут стремиться урегулировать путем переговоров. При не урегулировании споров путем переговоров, они передаются на рассмотрение в Суд г. Валенсии согласно нормам права Испании.

9.2. Все, что не урегулировано настоящим договором, регулируется в соответствии с нормами права Испании.

9.3. Любые документы, касающиеся настоящего договора, могут быть изготовлены и переданы посредством электронно-вычислительной техники, факсимильной и телексной связи, при этом стороны признают, что данные документы будут иметь силу оригинала.

9.4. Если в результате изменения действующего законодательства какое-либо положение настоящего Договора становится недействительным, это не должно затрагивать другие положения настоящего Договора. Недействительное положение заменяется положением, близким по смыслу с заменяемым, и допустимым в правовом отношении.

9.5. Настоящий договор составлен в 2-х экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон.

## 10. АДРЕСА И РЕКВИЗИТЫ СТОРОН

Customer/ Клиент
**LLC Metal Processing Technology**

Address:
22 Astrabad street,
Chilanzar district, Tashkent city 100149
Republic of Uzbekistan

Bank Information
Account: 2020 8840 8007 0166 5003
Bank: PJSB "TRUSTBANK"
SWIFT: TRSAUZ22XXX
Tax ID: 304498020
Bank Address: Tashkent, Navoi str., 7, 100011

Nodirkhonov A.N.

6

# EXHIBIT #2
Contract with ICG USA LLC

КОНТРАКТ № 97/2023-EX

Contract # 97/2023-EX

г. Ташкент                    «01» ноябрь 2023г.

Tashkent                    «01» November 2023y.

Компания ООО «METAL PROCESSING TECHNOLOGY» (Республика Узбекистан) в лице директора Модирхонов А.Н., действующего на основании Устава, именуемая в дальнейшем "Продавец", с одной стороны, и Компания ICC USA LLC в лице CEO Артур Аронтоунов, действующего на основании устава, именуемое в дальнейшем Покупатель, с другой стороны, заключили настоящий контракт о нижеследующем:

Company LLC «METAL PROCESSING TECHNOLOGY» (Republic of Uzbekistan) represented by Director Modirkhonov A.N., acting on the basis of the Charter, hereinafter referred to as the "Seller", on one side and Company ICC USA LLC represented by CEO Artour Aroutiounov, acting on the basis of the company, hereinafter referred to as the "Buyer", on the other side, have concluded the present Contract as follows:

## 1. ПРЕДМЕТ КОНТРАКТА

1.1. Продавец продает, а Покупатель покупает на условиях DAP, DDP (Инкотермс 2010г.) Рафинированную медную продукцию (далее по тексту «Товар»).
1.2. Товар, поставляемый по настоящему контракту, является новым.
1.3. Страна происхождения Товара: Республика Узбекистан.
1.4. Производителем Товара является компания ООО «Metal Processing Technology».
1.5. Отправителем Товара является компания ООО «Metal Processing Technology».
1.6. Код ТН ВЭД товара: 7411109000, 7411101000,
1.7. Страна назначения Товара – США.
1.8. Грузополучателем Товара является компания ICC USA LLC.

## 1. SUBJECT OF THE CONTRACT

1.1. The Seller sells, and the Buyer buys on DAP, DDP terms (Incoterms 2010), Refined copper products (hereinafter referred as goods).
1.2. The goods delivered according to the present contract is new.
1.3. The country of origin of the Goods is the Republic of Uzbekistan.
1.4. The manufacturer of the product is the company «Metal Processing Technology» LLC.
1.5. The sender of the Goods is «Metal Processing Technology» LLC.
1.6. HS code of goods: 7411109000, 7411101000,
1.7. The country of destination of USA.
1.8. The consignee of the Goods is the company ICC USA LLC.

## 2. УСЛОВИЯ ПОСТАВКИ

2.1. Базисные условия поставки указываются в спецификациях настоящего Контракта и может быть: DAP, DDP (Инкотермс – 2010).
2.2. Поставка товара производится в течение 60-80 дней.
2.3. Поставки производятся в автотранспортном средстве на условиях DAP, DDP.
2.4. Дата поставки – в соответствии с условиями Инкотермс 2010.
2.5. Продавец обязан отправить Покупателю товаро-транспортную накладную, сертификат качества, сертификат происхождения (оригинал), счет-фактуру (оригинал).
2.6. Продавец обязан известить Покупателя письменно, по факсу и электронной почте о готовности товара к отгрузке в течение 2-х рабочих дней до момента отгрузки.
2.7. Продавец обязан известить Покупателю письменно, по факсу о произведенной отгрузке с указанием даты отгрузки, номер накладной, наименование товара и его количество, а также вес брутто и нетто в течение 2-х рабочих дней со дня отправки товара.

## 2. DELIVERY TERMS

2.1. The basic terms of delivery are specified in the specifications of the Contract and may be: DAP, DDP (Incoterms 2010).
2.2. Delivery is made within 60-80 days.
2.3. The delivery is made in vehicle transportation under the terms of DAP, DDP.
2.4 Delivery date - in accordance with the terms of Incoterms 2010.
2.5. The Seller is obliged to send the transport bill, certificate of quality, certificate of origin(original), invoice.
2.6. The Seller is obliged to inform the Buyer in written form by fax and via email about the readiness of shipment within two working days before the shipment.
2.7. The Seller is obliged to inform the Buyer in written form by fax about the fact of shipment within two working days after the shipment. The following information shall be included: the date, the number of the travel bill, the name of the goods and that's quantity, the net and gross weight.

## 3. КАЧЕСТВО И КОЛИЧЕСТВО ТОВАРА

3.1. Качество поставляемого товара должно соответствовать техническим нормативно-технической документации предприятия-изготовителя и подтверждается сертификатом качества и происхождения (оригинал).
3.2. Количество товара определяется согласно спецификации, прилагаемой к настоящему контракту и являющейся его неотъемлемой частью.

## 3. THE GOODS QUALITY AND QUANTITY

3.1. Quality of the Goods shall be in full conformity with the standards and the technical conditions of the Manufacturer and shall be confirmed by Certificate of Quality of the Goods issued by the Manufacturer and the Certificate of origin (original).
3.2. The quantity of the Goods shall be in conformity with the attached Specification, which is integral part of the present contract.

## 4. ЦЕНА И ОБЩАЯ СУММА КОНТРАКТА

4.1. Цена Товара поставляемого по настоящему Контракту согласно Инкотермс 2010 указывается в спецификациях настоящего Контракта и может быть: DAP, DDP, а также стоимости работ и услуг в соответствии с базисом поставки.
4.2. Цена за 1 (одну) тонну медной продукции рассчитывается по формуле:
Цена = LME* + обработка меди в долл. США/тн где,
*LME – котировка металла на Лондонской Бирже Металлов LME «Cash Settlement», усредненная за пять последовательных биржевых дней, предшествующих дате уведомления Продавцом о готовности к выработке партии товара и дате выставления проформы инвойса.

## 4. THE COST AND TOTAL CONTRACTUAL AMOUNT

4.1. The price of the Goods delivered under this Contract according to Incoterms 2010 is specified in the specifications of this Contract and may be: DAP, DDP, as well as the cost of works and services in accordance with the basis of delivery.
4.2. The price for 1 (one) ton of copper product is calculated by the formula:
Price = LME* + processing of copper USD/t where,
*LME is the copper quotation on the London Metals Exchange LME "Cash Settlement", averaged over five consecutive stock days preceding the date of the notice by the Seller about readiness to work out a batch of goods and the date of the invoice pro forma.

"Seller"                    "Buyer"

Exhibit 2

4.3. Валютой платежа по настоящему Контракту является Доллар США.
4.4. Предварительный объём контракта составляет 100 000 (сто тысяч) тонн [illegible] согласно пункту 4.2.
4.5. Окончательная цена Товара будет определена согласно пункту 4.1-4.2. настоящего Контракта и будет [illegible] в Коммерческий инвойс на каждую поставку.
4.6. Общая сумма Контракта может быть увеличена в дополнительных соглашениях к настоящему Контракту на сумму дополнительно поставляемых Товаров.
4.7. «Покупатель» оплачивает поставленный «Продавцом» товар по цене, предусмотренной в спецификации, которая прилагается к настоящему контракту.
4.8. Цены на товар включают стоимость упаковки, маркировки, транспортировки и таможенной очистки по месту Получателя.

### 5. ПОРЯДОК ПЛАТЕЖЕЙ

5.1. Валюта платежи – США доллар.
5.1.1. Оплата Товара по настоящему Контракту осуществляется на основании инвойса или проформы инвойса, который оформляется на каждую партию Товара, одним из нижеперечисленных способов:
5.1.2. Путём частичной предоплаты поставляемой продукции согласно предварительной договорённости;
5.1.3. Путем отсрочки платежа за отгруженную партию Товара, которая не может превышать 180 (сто восемьдесят) календарных дней;
Продавец предоставляет Покупателю следующие документы:
- Коммерческий инвойс (оригинал);
- Упаковочный лист (оригинал);
- Сертификат происхождения (оригинал);
- Товарно-транспортная накладная (оригинал).
5.2. Оплата за поставленный Товар производится банковским переводом на расчётный счет Продавца указанный в разделе 13 настоящего Контракта без удержания каких-либо налогов на территории Покупателя. Покупатель несет ответственность за уплату любых налогов, сборов или платежей в стране Покупателя, Продавец – в стране Продавца.
5.3. В случае не своевременной доставки Товара в течение 60-80 (шестьдесят-восемьдесят) календарных дней, Продавец и Покупатель совместно будут решать проблемы с логистической компанией.
5.4. Все налоги, сборы, пошлины, банковские и другие расходы, связанные с исполнением настоящего контракта на территории страны Продавца, несет продавец, а на территории страны назначения товара несет покупатель.
5.5. Получение экспортных лицензий в стране Продавца является обязанностью Продавца, а получение импортных лицензий в стране Покупателя является обязанностью Покупателя.

### 6. СДАЧА И ПРИЕМКА ТОВАРА

6.1. Продавец гарантирует, что в Товаре качество сырья и отсутствие производственных недоработок. Производитель гарантирует, что Товар соответствует стандарту EN12735-1:2001, ASTMB 280, ATSMB 88-89 или ГОСТ 617-2006 и техническим требованиям.
6.2. В том случае, если брак в Товаре обнаружен после отгрузки и до его продажи конечному потребителю, обе Стороны должны исследовать и выявить причину брака.
6.3. Продавец гарантирует, что в Товаре отсутствует брак, под которым понимается брак, возникший вследствие использования при производстве некачественного сырья, несоответствий в оформлении и комплектации или нарушение Продавцом технологии производства Товара, поставленного Покупателю в течение 12 (двенадцати) месяцев после отгрузки.
6.4. В случае обнаружения бракованного товара в количестве менее 10% (десяти процентов) в партии, Продавец по согласованию Сторон должен заменить бракованный Товар на качественный Товар при отгрузке следующей партии Товара.

4.3. The payment currency under this Contract is the US Dollar.

4.4. Preliminary volume is 100 000 (one hundred thousand) tons capacity, with the value in accordance with clause 4.2.
4.5. The final price of the Goods will be determined in accordance with clause 4.1-4.2. of this Contract and will be recorded in the Commercial invoice for each delivery.
4.6. The total amount of the Contract may be increased in additional agreements to this Contract by the amount of additionally supplied Goods.
4.7. The Buyer pays for the goods delivered according to the costs, stated in Specification attached to this contract.

4.8. The cost shall include the package, marking, transportation and duty clean.

### 5. PAYMENT TERMS

5.1. The currency of the payment – US dollar.
5.1.1. Payment for the Goods under this Contract is carried out on the basis of an invoice or a proforma invoice, which is issued for each batch of Goods, in one of the following ways:
5.1.2. By partial or agreed upon prepayment for every agreed upon order;
5.1.3. By deferring payment for the shipped batch of Goods, which cannot exceed 180 (One hundred eighty) calendar days.
The Seller provides the Buyer with the following documents:
-Commercial invoice(original);
-Packing list (original);
-Certificate of origin(original).
-Bill of lading

5.2. Paymentfor the delivered Goods shall be made by bank transfer to the Seller's bank account specified in section 13. Of this Contract, without any withholding of taxes in the Buyer's territory. The Buyer is responsible for paying any taxes, fees or charges in the Buyer's country, the Seller-in the Seller's country.

5.3. If the Goods are not delivered within 60-80 (sixty-eighty) calendar days, Buyer and Seller will jointly solve the problem with the logistics company.
5.4. All taxes due, duties and bank and other charges, associated with execution of the present contract in the seller's country are covered by the seller and in the country of destination of goods are covered by the Buyer.

5.5. The obtaining of export licenses in the country of the Seller is duty of the Seller, and obtaining import licenses in the country of the Buyer is duty of the Buyer.

### 6. THE GOODS RECEIVING TERMS

6.1. The Seller guarantees that there is quality of material and manufactured goods without defects. The manufacturer guarantees that the product complies with the standard EN12735-1: 2001, ASTMB 280, ASTMB 88-99 or GOST 617-2006 and technical requirements.
6.2. In the event that a marriage in the Product is discovered after shipment and before it is sold to the final consumer, both Parties must investigate and identify the cause of the marriage.
6.3. The Seller guarantees that there is no marriage in the Product, which is understood to be a marriage resulting from the use of poor-quality raw materials in the production, inconsistencies in design and packaging, or the Seller's violation of the production technology of the Goods delivered to the Buyer within 12 (twelve) months after shipment.
6.4. In case of detection of defective goods in the amount of less than 10% (ten percent) in the lot, the Seller, as agreed by the Parties, must replace the defective Goods with a quality Product when shipping the next batch of Goods. If a defective product is detected

"Seller" ____________ "Buyer" ____________

3

4

9.5. Если форс-мажорные обстоятельства действуют свыше 3 (трех) месяцев, любая Сторона имеет право снять с себя обязательства по выполнению данного Контракта без возмещения ущерба.

9.6. В случае наступления форс-мажорных обстоятельств ПОКУПАТЕЛЬ имеет право отозвать оплаченные средства за недопоставленный Товар, и ПРОДАВЕЦ обязан немедленно возвратить вышеуказанные средства на счет ПОКУПАТЕЛЯ.

9.5. If force majeure circumstances are valid for more than 3 (three) months, any Party has the right to relinquish its obligations to fulfill this contract without compensation for damage.

9.6. In case of force majeure, the BUYER has the right to withdraw the paid funds for the undelivered Goods, and the SELLER shall immediately return the above funds to the BUYER's account.

## 10. ПОРЯДОК РАССМОТРЕНИЯ СПОРОВ.

10.1. Все споры и разногласия, которые могут возникнуть из настоящего Контракта или в связи с ним, Стороны будут стремиться к разрешению их путем соглашения.

10.2. В случае невозможности решения в ходе переговоров все споры, разногласия или требования, возникающие из настоящего Контракта или в связи с ним, в том числе касающиеся его исполнения, нарушения, прекращения или недействительности подлежат передаче на рассмотрение международного арбитражного суда при Торгово-промышленных палатах Сторон. Арбитраж производится в стране ответчика. Если страной ответчика является США, то споры подлежат рассмотрению в Международном Коммерческом Арбитражном суде при Торгово-Промышленной Палате США или рассмотрение экономическим судом г. Денвер, Колорадо. Если страной ответчика является Узбекистан, то споры подлежат рассмотрению экономическим судом г. Ташкент.

Язык рассмотрения в обоих случаях – английский.

Арбитражное решение является окончательным и имеет обязательную силу для обеих Сторон.

## 10. ARBITRATION

10.1. All disputes and controversies that may arise from this Contract or in connection with it, the Parties will seek to resolve them by agreement.

10.2. If it is impossible to resolve in the course of negotiations, all disputes, disagreements or claims arising from or in connection with this Contract, including those relating to its execution, violation, termination or invalidity shall be referred to the international arbitration court of the Chambers of Commerce and Industry of the Parties Arbitration is made in the country of the defendant. If the country of the respondent is the USA, the disputes are to be considered in the International Commercial Arbitration Court at the Republic of USA Chamber or consideration by the Economic Court of Denver, Colorado. If the respondent's country is Uzbekistan, the disputes are subject to review by the Economic Court of Tashkent. The language of consideration in both cases is English.
The award is final and binding on both Parties.

## 11. СРОК ДЕЙСТВИЯ И ПРОЧИЕ УСЛОВИЯ

11.1. Вся предварительная переписка и документация Сторон по Контракту утрачивают юридическую силу с момента его заключения.

11.2. Компания ICO USA LLC является официальным и эксклюзивным дистрибьютором и представителем продукции, вступает в силу с даты его подписания Сторонами и действует до 31 декабря 2033 г.

11.3. Настоящий Контракт расторгается в следующих случаях:
- по истечению срока действия Контракта при наличии письменного уведомления одной из Сторон;
- по взаимному соглашению Сторон;

11.4. Контракт составлен в 2 (двух) экземплярах на 1 (одному) экземпляру для каждой Стороны, на русском языке, парафированы по каждой странице, оба экземпляра имеют одинаковую юридическую силу.

11.5. Прекращение действия настоящего Контракта по любым основаниям не освобождает Стороны от каких-либо имеющихся обязательств друг перед другом на день расторжения Контракта.

11.6. Все Приложения Дополнительные соглашения Коммерческий инвойс к настоящему Контракту являются его неотъемлемой частью.

11.7. В случае изменения адреса, абонентских номеров средств связи, банковских реквизитов Стороны обязаны уведомить об этом друг друга в течение 10 (десяти) рабочих дней с даты идентификации таких изменений.

11.8. Стороны условились о том, что любые документы, в том числе настоящий Контракт, а также изменения и дополнения к нему, заявки, приложения к Договору, подписанные уполномоченными лицами и заверенные печатью организации, переданные противоположной Стороне посредством факсимильной или электронной связи признаются Сторонами надлежащими юридическими документами и являются надлежащим доказательством в случае судебного разбирательства. При этом Договор будет считаться заключенным с момента его получения по факсу или электронной почте. Документы, которые были переданы Сторонами друг другу посредством электронной или факсимильной связи, должны быть обязательно

## 11. TERM AND OTHER CONDITIONS

11.1. All preliminary correspondence and documentation of the Parties under the Contract shall become null and void from the moment of its conclusion.

11.2. The company ICO USA LLC will be the official and exclusive distributor of products starting from date of the Contract enters into force from the date of its signing by the Parties and is valid until 31st of December 2033.

11.3. This Contract is terminated in the following cases:
- at the expiration of the Contract if there is a written notification of one of the Parties;
- by mutual agreement of the Parties;

11.4. The contract is made in 2 (two) copies in 1 (one) copy for each Party, in Russian, initialed on each page, both copies have the same legal force.

11.5. Termination of this Contract for any reason does not release the Parties from any existing obligations to each other on the day of termination of the Contract.

11.6. All Appendices Additional Agreements Commercial Invoice to this Contract are its integral part.

11.7. In the event of a change in the address, subscriber numbers of communications, bank details, the Parties are obliged to notify each other about this within 10 (ten) working days from the date such changes occur.

11.8. The parties agreed that any documents, including this Contract, as well as changes and additions to it, applications, annexes to the Contract, signed by authorized persons and sealed by the organization, transmitted to the opposite Party by facsimile or electronic communication are recognized by the Parties as full legal documents and are appropriate evidence in the event of a trial. In this case, the Contract will be considered concluded from the moment it is received by fax or e-mail.
Documents that have been transmitted by the Parties to each other via electronic or facsimile communication should be necessarily duplicated last, by sending each other their originals by registered letter with notification to the postal addresses of the Parties specified in this Agreement, within 5 (five) working days their

"Seller"

"Buyer"

5

продублирована последними путем направления друг другу их оригиналов заказным письмом с уведомлением по почтовым адресам Сторон, указанным в настоящем Договоре, в течение 5 (пяти) рабочих дней с момента их составления и подписания, если иные сроки по их отправке не указаны в настоящем Договоре. Документы, направляемые Сторонами по факсу, или электронной почте, должны быть направлены с электронных адресов/с телефонов номера, указанных в реквизитах Сторон в разделе 13 настоящего Договора. Переданные документы должны позволять идентифицировать наименование передающей стороны, дату и время передачи, номер телефона (факса), электронной почты.

compilation and signing, if other terms of their shipment are not specified in this Agreement. Documents sent by the Parties by fax or e-mail should be sent from the e-mail addresses and telephone numbers specified in the details of the Parties in section 13 of this Agreement. Sent documents should allow identifying the name of the transferor, date and time of transfer, phone (fax) number, e-mail.

## 12. ADDRESS OF THE PARTIES:

**Продавец:**

ООО "Metal Processing Technology"
Адрес: Республика Узбекистан,
г. Ташкент, ул. Астрада 22, 100149
Банк: ОПБРУ ЧАБ «Трастбанк»
г. Ташкент, ул. Навои, 7, 100011.
р/с счет: 2020 8846 8007 0186 5003
Код банка: 00491
SWIFT: TRSAUZ22XXX
ИНН: 304496020
e-mail: info@iog.uz
тел.: +99899 8117222

ICG USA LLC
Адрес: 3124 S Parker Road Ste A2-402
Aurora, CO 80014
Банк: US BANK
SWIFT: USBKUS441MT
Routing: 102000021
Acc: 103684508262
Телефон: +1 877-ICGUSA7 (USA toll free)
Тел: +1 (720) 943-3063 (Local)
+1 (303) 276-0438 (Fax)
Прямой: +1 (720) 261-3773
e-mail: info@infinitysourcegroup.com

CEO Anour Aroutiounov

## 12. ADDRESS OF THE PARTIES:

Seller:

LLC "Metal Processing Technology"
Address: Republic of Uzbekistan, Tashkent
City, Astrabad 22
Bank: PJSB "TRUSTBANK"
Tashkent, Navoi str., 7, 100011
Account: 2020 8846 8007 0186 5003
Bank code: 00491
SWIFT: TRSAUZ22XXX
Tax ID: 304496020
e-mail: info@iog.uz
phone: +99899 8117222

ICG USA LLC
Address: 3124 S Parker Road Ste A2-402
Aurora, CO 80014
Bank: US BANK
SWIFT: USBKUS441MT
Buyer Code:
SWIFT: USBKUS441MT
Routing: 102000021
Acc: 103684508262
Ph: +1 877-ICGUSA7 (USA toll free)
Ph: +1 (720) 943-3063 (Local)
+1 (303) 276-0438 (Fax)
Direct: +1 (720) 261-3773
e-mail: info@infinitysourcegroup.com

CEO Anour Aroutiounov

«Продавец» / "Seller"

«Покупатель» / "Buyer"



"Seller"



"Buyer"

# MAERSK

## ARRIVAL NOTICE

B/L No: **MAEU - 237801817**

TPDoc, sea waybill, shipped on board

| | |
|---|---|
| **Notify Party (Complete name and address)** Same as Consignee | |

| Vessel MAERSK ATLANTA | Voyage No 418W | Print Date 2024-06-20 01:41 |
|---|---|---|

| Your ref: 237801817 | Product Type: Maersk Spot |
|---|---|

| Place of Receipt | Other Numbering Identification IT/V0783900314 Customs Clearance Loc :LOS ANGELES C. |
|---|---|
| Port of Loading Poti | Customs Firms Code: Y386 |
| Port of Discharge Houston | Terminal Location: MARPORT TERMINAL - AMBARLI ALGECIRAS - ML TERMINAL Bay Port Container Terminal HOUSTON - BNSF PEARLAND RAMP ATSF-HOBART TERMINAL For IT Date use arrival date below. |
| Place of delivery Los Angeles | |

| Consignee (Complete name and address) ICG USA LLC 3124 S Parker Rd, Ste A2-402 AURORA 80014 United States | Shipper/Exporter (Complete name and address) LLC METAL PROCESSING TECHNOLOGY 22; STREET ASTRABAD TASHKENT 100021 UZBEKISTAN |
|---|---|

| Kind of Packages; Description of goods; Marks and Numbers; Container No./Seal No. | Gross Weight | Measurement |
|---|---|---|
| 31 COILS | 13928.000 KGS | |
| Refined copper pipes | | |
| 600 UNPACKED | 8222.000 KGS | |
| Refined copper pipes | | |
| Customs Ref. No:24ES001131B1178063 - ALGECIRAS - ML TERMINAL | | |
| CY/CY | | |

| Container No. | Seal No. | Seal Value | Size/Type/Height | Tare Weight | Pkgs. | Weight | Measurement | Rail Bond /Pick-up No. |
|---|---|---|---|---|---|---|---|---|
| MRKU6251455 | G6648779 | | 40 DRY 9'6 | 3810.000 KGS | 31 | 13928.000 KGS | | |
| MRKU6251455 | G6648779 | | 40 DRY 9'6 | 3810.000 KGS | 600 | 8222.000 KGS | | |

| Agent Name Maersk Agency U.S.A., Inc - Houston CRC | Date 2024-06-27 |
|---|---|

The above mentioned cargo is due to arrive aboard subject vessel On/or About

For invoice copies, shipment details and status of your account, please access "http://www.maersk.com"

B/L No:  **MAEU - 237801817**

The freight charges listed on this notice are for customs entry and cargo valuation purposes only, and the totals listed do not supersede those on the invoice. The sole financial document for payment is the invoice.
For cargo moving from Canadian ports to the United States, additional in-bond details, border crossing location, and Rail Bill numbers will be provided 2 days prior to vessel ETA.

Contact our Customer Experience specialists for any queries:
Maersk USA customers, please contact us via Live Chat on www.maersk.com, via email to us.import@maersk.com, or call 800-321-8807.
Maersk Canadian customers, please contact us via Live Chat on www.maersk.com, via email to ca.import@maersk.com, or call 877-339-0165.
Twill customers - please contact us via Live Chat www.twill.net, via email to twillsupport@maersk.com, or call 833-965-1648.

Quick Links:
•Register online at www.maersk.com/portaluser/register
•For shipment details and status of your account, please visit www.Maersk.com
•To stay informed about transport plan changes on your shipment, subscribe to notifications on our website: www.maersk.com/notifications/
Request Arrival Notice online:
• United States: https://www.maersk.com/forms/arrival-notice-us/
• Canada: https://www.maersk.com/forms/arrival-notice-ca/
• Request Diversion online:
• United States change of final inland destination: https://www.maersk.com/forms/diversion-req-form-us-imp/
• United States change of final discharge port: https://www.maersk.com/forms/diversion-req-form-us-exp/
• Canada change of final inland destination: https://www.maersk.com/forms/diversion-req-form-ca-imp/
• Canada change of final discharge port: https://www.maersk.com/forms/diversion-req-form-ca-exp/

•Street Turn/Container Re-use: login/register with E2Open (Avantida Container Management) https://platform.avantida.com/#/signin
•Empty notification site for Store Door Deliveries at www.namemptymaersk.com
•Empty Container Return Locations site at www.returnlocation.com/

Rail and Truck CY B/L's:
To ensure timely inland movement of cargo when clearing customs at the port, Maersk must receive customs clearance by noon TWO full business days prior to free-time expiration.

Store Door B/L's:
To ensure store door delivery of cargo within free-time, Maersk must receive a complete Delivery Order, freight payment, OBL's surrendered, and customs release by noon TWO full business days prior to free-time expiration.

Submitting Delivery Order Instructions:
Log into your Maersk.com account. From the Hub scroll down to see the "Delivery Order" widget, enter your Bill of Lading number, and click "Request Delivery Order" to submit your delivery instructions. All warehouses must be a commercial facility, located in a non-residential area and contain a loading/unloading dock

Demurrage and Detention:
Please note that demurrage and detention will be assessed on containers after expiration of free time. Third party storage charges may also be assessed per individual terminal tariffs.
USA Demurrage and Detention tariff, www.maersk.com/local-information/united-states-of-america/import
Canada Demurrage and Detention tariff, www.maersk.com/local-information/canada/import

For instant demurrage payments, contact our Maersk Release Service team at 1-800-321-8807, option 5, then option 1.

Invoice and Payment:
For instant payment and freight release, log into your account www.maersk.com and navigate to the MyFinance portal.
USA payment options, www.maersk.com/local-information/united-states-of-america/important-information
Canada payment options, www.maersk.com/local-information/canada/important-information
For electronic payments, please forward your remittance information and confirmation of bank payment via email to NAMFRCSVCACH@Maersk.com

USA Customer Check Payments
Overnight Mail Address:                              Post Office Address:
Maersk                                               Maersk
Atlanta Lockbox (College Park/Southside)             P.O. Box 744448
Bank of America Lockbox Services                     Atlanta, GA 30384-4448
Lockbox 744448
6000 Feldwood Road
College Park, GA 30349

USA original bill surrender (check payments are not accepted at this location):
Norton Lilly International
Documentation Department
One St. Louis Centre
Suite 2003
Mobile, AL 36602

Below freight details will not be part of Original Bill of Lading unless requested by customer

Note: Below payer is applied for imports demurrage charge (if any). If you want to change, please write or contact customer service before container pickup.

B/L No:  **MAEU - 237801817**

| Charges Name | Prepaid/Collect | Invoice Party | Customer Code | Collection Business Unit |
|---|---|---|---|---|
| Basic Ocean Freight | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Container Protect Unlimited | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Terminal Handling Service - Destinatio | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Detention Fee - Export | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Environmental Fuel Fee | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Government and Port Tax Exports | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Low Sulphur Surcharge | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Terminal Handling Service - Origin | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |

Effective Feb 1, 2023, the Port of Houston will charge a $45 per unit per day dwell fee for any import container still on terminal on the eighth day after the expiration of free time. This fee is in addition to demurrage charges and must be paid directly to the terminal. Link to the announcement: https://www.porthouston.com/wp-content/uploads/2023/01/Dwell-Fees_Final.pdf

| Equipment No | Demurrage Payer Code | Demurrage Payer Name |
|---|---|---|
| MRKU6251455 | 33104635305 | ICG USA LLC |
| MRKU6251455 | 33104635305 | ICG USA LLC |

| | | | | Terminal Location: |
|---|---|---|---|---|
| Charges Name | Prepaid/Collect | Invoice Party | Customer Code | Collection Business Unit |
| Spot Booking Amendment Fee | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |

# EXHIBIT #3
## Contract with MAERSK



# ARRIVAL NOTICE

| | |
|---|---|
| Ref No: MAEU - 237501617 | |

Vessel: **MAERSK ATLANTA**
Voyage No. **416W**
Print Date **2024-05-20 01:41**

Your Ref **237501617Y**
Product Type: **Maersk Spot**

Place of Receipt:

Other Numbering (Item/Seabill)
**ITYM0763900314**
Customs Clearance Loc: **LOS ANGELES C.**
Customs Firms Code: **Y355**

Port of Loading: **Reji**

Port of Discharge: **Houston**

Terminal Location:
**MARPORT TERMINAL - AMDARU**
**ALGECIRAS - ML TERMINAL**
**Bay Port Container Terminal**
**HOUSTON - BNSF PEARLAND RAMP**
**ATSF HOBART TERMINAL**
**for IT Date use arrival date below.**

Place of delivery: **Los Angeles**

Consignee (Complete name and address):
**ICG USA LLC**
**3124 S Parker Rd, Ste A2-403**
**AURORA**
**80014**
**United States**

Shipper/Exporter (Complete name and address):
**LLC METAL PROCESSING TECHNOLOGY**
**22 STREET ASTRABAD**
**TASHKENT**
**100021**
**UZBEKISTAN**

| Kind of Packages; Description of goods; Marks and Numbers; Container No./Seal No. | Gross Weight | Measurement |
|---|---|---|
| **31** **COILS** | **13928.000 KGS** | |
| Refined copper pipes | | |
| **600** **UNPACKED** | **8222.000 KGS** | |
| Refined copper pipes | | |
| Customs Ref. No.24ES001131B1178003 - ALGECIRAS - ML TERMINAL | | |
| CY/CY | | |

| Container No. Seal No. | Seal Value | Size/Type/Height, Tare Weight | Pkgs. | Weight | Measurements | Full Bond /Pick-up No. |
|---|---|---|---|---|---|---|
| MRKU6251456 | G6640779 | 40 DRY 9'6 3810.000 KGS | 31 | 13928.000 KGS | | |
| MRKU6251456 | G6640779 | 40 DRY 9'6 3810.000 KGS | 600 | 8222.000 KGS | | |

Agent Name:
**Maersk Agency U.S.A. Inc - Houston CRO**

Date **2024-06-27**

The above mentioned cargo is that is arrive aboard subject Vessel On/or About:

**Bill of Lading number** **From** **To**
**237801817** POTI LOS ANGELES

MRKU6251455 | 40' Dry High      Last updated 8 months ago

**Estimated arrival date**
14 Aug 2024 17:32

**Latest event**
Empty container return - Los Angeles, United States
14 Aug 2024

Note: All times are given in local time, unless otherwise stated.

**POTI**
POTI PORT TERMINAL
Gate out Empty
13 May 2024 11:15

**Poti**
GIANTI LOGISTICS TERMINAL
Gate In
13 May 2024 18:02

Gate out
18 May 2024 18:51

**POTI**
POTI PORT TERMINAL
Gate in
18 May 2024 19:51

Load

18 May 2024 20:13

Feeder departure (BERNARD A / 420W)

19 May 2024 02:15

**AMBARLI PORT ISTANBUL**

Marport Terminal - Ambarli

Feeder arrival (BERNARD A / 420W)

22 May 2024 08:00

Discharge

22 May 2024 10:05

Load

30 May 2024 08:27

Vessel departure (LARS MAERSK / 422W)

30 May 2024 21:47

**ALGECIRAS**

Algeciras - ML Terminal

Vessel arrival (LARS MAERSK / 422W)

06 Jun 2024 09:40

Discharge

06 Jun 2024 12:38

Load

09 Jun 2024 17:52

Vessel departure (MAERSK ATLANTA / 418W)

**HOUSTON**

**BAY PORT CONTAINER TERMINAL**

Vessel arrival (MAERSK ATLANTA / 418W)

27 Jun 2024 06:10

**Discharge**

27 Jun 2024 22:51

**Gate out**

01 Jul 2024 18:29

**HOUSTON**

**HOUSTON - BNSF PEARLAND RAMP**

Gate in

01 Jul 2024 19:21

**On rail**

06 Aug 2024 13:47

**Fort Worth**

**DALLAS FT. WORTH BNSF ALLIANCE RAMP**

Off rail

08 Aug 2024 03:08

**On rail**

08 Aug 2024 09:53

**LOS ANGELES**

**Atsf-Hobart Terminal**

Off rail

12 Aug 2024 07:32

Gate out for delivery
13 Aug 2024 00:21

Los Angeles
LSA APM Terminal Pier 400( W1BS )
Empty container return
14 Aug 2024 17:32



202359710505

B2238-8592 11/07/2023 3:24 PM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**REGISTRATION**
**OUT-OF-STATE LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: 202359710505 |
| Date Filed: 11/7/2023 |

| | |
| --- | --- |
| **Limited Liability Company Name**<br>Limited Liability Company Name | ICG USA LLC |
| **Jurisdiction**<br>Limited Liability Company is Formed in | COLORADO |
| **Authority Statement**<br>This LLC currently has powers and privileges to conduct business in the state, foreign country or other jurisdiction entered above. | |
| **Street Address of Principal Office of LLC**<br>Principal Address | 2878 BEECH ST<br>SAN DIEGO, CA 92102 |
| **Mailing Address of LLC**<br>Mailing Address<br><br>Attention | 3124 S PARKER RD<br>STE A2<br>AURORA, CO 80014 |
| **Street Address of California Office of LLC**<br>Street Address of California Office | 2878 BEECH ST<br>SAN DIEGO, CA 92102 |
| **Agent for Service of Process**<br>Agent Name<br>Agent Address | Emiliya Arutyunova<br>2878 BEECH ST<br>SAN DIEGO, CA 92102 |

**Consent to Service of Process**

The Secretary of State is appointed as the agent of the foreign (out-of-state) limited liability company for service of process if the agent has resigned and has not been replaced or if the agent cannot be found or served with the exercise of reasonable diligence.

Consent to service of process extends to service of process directed to the foreign (out-of-state) limited liability company's agent in this state for a search warrant issued pursuant to California Penal Code section 1524.2, or for any other validly issued and properly served search warrant, for records or documents that are in the possession of the foreign (out-of-state) limited liability company and are located inside or outside of this state. This shall apply to a foreign (out-of-state) limited liability company that is a party or a nonparty to the matter for which the search warrant is sought. For purposes of this consent "properly served" means delivered by hand, or in a manner reasonably allowing for proof of delivery if delivered by United States mail, overnight delivery service, facsimile, or any other means specified by the foreign (out-of-state) limited liability company, including email or submission via an Internet Web portal, the foreign (out-of-state) limited liability company has designated for the purpose of service of process.

**Electronic Signature**

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized to sign on behalf of the out-of-state LLC.

| | |
| --- | --- |
| *Emiliya Arutyunova* | 11/07/2023 |
| Signature | Date |

# EXHIBIT #4

**California Secretary of State**
**Statement of Information as to Defendant #1**
**[showing address in San Diego, CA]**

202359710505



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**REGISTRATION**
**OUT-OF-STATE LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: 202359710505 |
| Date Filed: 11/7/2023 |

B2238-8592 11/07/2023 3:24 PM Received by California Secretary of State

| Limited Liability Company Name | |
| --- | --- |
| Limited Liability Company Name | ICG USA LLC |

| Jurisdiction | |
| --- | --- |
| Limited Liability Company is Formed in | COLORADO |

**Authority Statement**
This LLC currently has powers and privileges to conduct business in the state, foreign country or other jurisdiction entered above.

| Street Address of Principal Office of LLC | |
| --- | --- |
| Principal Address | 2878 BEECH ST<br>SAN DIEGO, CA 92102 |

| Mailing Address of LLC | |
| --- | --- |
| Mailing Address | 3124 S PARKER RD<br>STE A2<br>AURORA, CO 80014 |
| Attention | |

| Street Address of California Office of LLC | |
| --- | --- |
| Street Address of California Office | 2878 BEECH ST<br>SAN DIEGO, CA 92102 |

| Agent for Service of Process | |
| --- | --- |
| Agent Name | Emiliya Arutyunova |
| Agent Address | 2878 BEECH ST<br>SAN DIEGO, CA 92102 |

**Consent to Service of Process**

The Secretary of State is appointed as the agent of the foreign (out-of-state) limited liability company for service of process if the agent has resigned and has not been replaced or if the agent cannot be found or served with the exercise of reasonable diligence.

Consent to service of process extends to service of process directed to the foreign (out-of-state) limited liability company's agent in this state for a search warrant issued pursuant to California Penal Code section 1524.2, or for any other validly issued and properly served search warrant, for records or documents that are in the possession of the foreign (out-of-state) limited liability company and are located inside or outside of this state. This shall apply to a foreign (out-of-state) limited liability company that is a party or a nonparty to the matter for which the search warrant is sought. For purposes of this consent "properly served" means delivered by hand, or in a manner reasonably allowing for proof of delivery if delivered by United States mail, overnight delivery service, facsimile, or any other means specified by the foreign (out-of-state) limited liability company, including email or submission via an Internet Web portal, the foreign (out-of-state) limited liability company has designated for the purpose of service of process.

**Electronic Signature**

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized to sign on behalf of the out-of-state LLC.

*Emiliya Arutyunova*                                  11/07/2023
_____                    _____
Signature                                                      Date

**E-Filed**

Document must be filed electronically.
Paper documents are not accepted.
Fees & forms are subject to change.
For more information or to print copies
of filed documents, visit www.coloradosos.gov.

Colorado Secretary of State
ID#: 20238068367
Document #: 20251238093
Filed on: 02/26/2025 01:04:30 PM
Paid: $10.00

ABOVE SPACE FOR OFFICE USE ONLY

# Statement of Dissolution
# Limited Liability Company
Filed pursuant to §7-80-802 of the Colorado Revised Statutes (C.R.S)

ID number:      20238068367

1. Entity name:      ICG USA LLC

2. Principal office address:

Street address      3124 S PARKER RD A2-402
*(Street number and name)*

Aurora      CO    80014
*(City)*      *(State)*    *(ZIP/Postal Code)*

United States
*(Province – if applicable)*      *(Country)*

Mailing address
(leave blank if same as above)

*(Street number and name or Post Office Box information)*

*(City)*      *(State)*    *(ZIP/Postal Code)*

*(Province – if applicable)*      *(Country)*

3. *(Optional)* Delayed effective date:
*(mm/dd/yyyy)*

4. ☐ This document contains additional information as provided by law.

Notice:

Causing this document to be delivered to the secretary of state for filing shall constitute the affirmation or acknowledgment of each individual causing such delivery, under penalties of perjury, that the document is the individual's act and deed, or that the individual in good faith believes the document is the act and deed of the person on whose behalf the individual is causing the document to be delivered for filing, taken in conformity with the requirements of part 3 of article 90 of title 7, C.R.S., the constituent documents, and the organic statutes, and that the individual in good faith believes the facts stated in the document are true and the document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the secretary of state, whether or not such individual is named in the document as one who has caused it to be delivered.

DISS_LLC                 Page 1 of 2                 Rev. 4/02/2012

5. Name(s) and address(es) of the individual(s) causing the document to be delivered for filing:

Zaikin                          Serge
_____
        (Last)                  (First)              (Middle)        (Suffix)

9102 White Pelican Way
_____
        (Street name and number or Post Office Box information)

Littleton                              CO        80126
_____
        (City)                          (State)          (Postal/Zip Code)
                                        United States
_____
        (Province – if applicable)      (Country – if not US)

☐ This document contains the true name and mailing address of one or more additional individuals causing the document to be delivered for filing.

**Disclaimer:**

This form, and any related instructions, are not intended to provide legal, business or tax advice, and are offered as a public service without representation or warranty. While this form is believed to satisfy minimum legal requirements as of its revision date, compliance with applicable law, as the same may be amended from time to time, remains the responsibility of the user of this form. Questions should be addressed to the user's attorney.

DISS_LLC                        Page 2 of 2                        Rev. 4/02/2012

**From:** Arthur Arutyunov
**Sent on:** Tuesday, January 21, 2025 7:33:41 AM
**To:** Serge Zaikin; Anvar Irsaliev
**Subject:** Fwd: Consignment

Begin forwarded message:

**From:** Arthur Arutyunov <arthur.arutyunov33@yahoo.com>
**Date:** January 21, 2025 at 7:21:47 AM MST
**To:** Akmalkhuja Qodirov <kodirovakmalkhuja@gmail.com>
**Subject: Fwd: Consignment**

Begin forwarded message:

**From:** Aaron Malosky <aaron@icsind.com>
**Date:** January 21, 2025 at 6:47:00 AM MST
**To:** Arthur Aroutiounov <arthur@infinitycoppergroup.com>, Arthur Arutyunov <arthur.arutyunov33@yahoo.com>
**Subject: Consignment**

*Hello Aurthur ,*

*Following up on my previous email . I wanted to let you know we would need to have insurance coverage for the material . Either provided by you or we would need to take out an inland marine policy with our insurer. In addition to the insurance we would require that the copper pricing be pegged to PMA (Prior Months Average ) so in that if copper goes up or down we are able to be competitive and your product retains value. At the end of every month what was sold will be given to you along with payment based on PMA of copper . If you need us to ship to another distributor for you we are happy to do so M-F 8am-5pm Est.   At this time we can only accept the coils . If you are able to get the NSF certification for the water tube or pipes we can look at those at that time. We would require other sizes in the future,   1/8 OD - 7/8 OD on ASTM B 280 both 50 ft coils and ¼- 7/8 in 100 ft coils. We would only be interested in a long-term relationship and not a one-time relationship. We currently are purchasing them at lower than $5.26/lbs and the cost to introduce a new brand would be prohibitive . Last week we were @ $5.15/lbs freight allowed to our location with comex copper trading @ $4.38 lbs. We would need to have a cost per lbs pegged to comex   + 0.65/lbs delivered . Last week that would have resulted in a payment to ICG of $5.03/lbs . Please let us know your thoughts. Thank you .*

are competitive in this market we need to make sure the TCS estimates close to our Bill certifications. I have attached some examples of what we provide to our customers on the domestic side.

<u>_I did not see the 3/8 x .025 x 10 ft coils, did you sell them?_</u>

Please call or email with any questions you may have.
Thank you,
Aaron Malosky

 

*ICS INDUSTRIES, INC*
*6106 Technology Drive*
*Browns Summit, NC 27214*
*Office:   336-285-5364*
*Direct Line:   336-285-7233*
*Fax: 336-272-5377*
*Email: aaron@icsind.com*

**From:** Aaron Malosky
**Sent:** Monday, January 20, 2025 8:08 AM
**To:** Arthur Arutyunov <arthur.arutyunov33@yahoo.com>
**Subject:** RE: RFQ

*Good Morning Arthur,*
*Would you be replenishing the inventory upon your container arrivals throughout the year ? For instance, your container coming in February . Will you be replenishing the coils that we have sold at that time? Also do you plan on having a warehouse in the US that is a dedicated ICG warehouse ?*

*Please call or email with any questions you may have.*
*Thank you,*
*Aaron Malosky*
*<image001.png>*

*ICS INDUSTRIES, INC*
*6106 Technology Drive*
*Browns Summit, NC 27214*
*Office:   336-285-5364*
*Direct Line:   336-285-7233*
*Fax: 336-272-5377*
*Email: aaron@icsind.com*

**From:** Arthur Arutyunov <arthur.arutyunov33@yahoo.com>
**Sent:** Saturday, January 18, 2025 3:05 PM
**To:** Aaron Malosky <aaron@icsind.com>
**Subject:** Re: RFQ

Ok


On Jan 16, 2025, at 5:40 AM, Aaron Malosky <aaron@icsind.com> wrote:


*Yes , thank you for that . I have forwarded it to Kevin with some of my thoughts. We should have a decision later this week . There are many factors that we have to consider and cost when bringing in that much more inventory even though it is consignment . I will let you know asap . Thanks again.*

*Please call or email with any questions you may have.*

*Aaron Malosky*
*<image001.png>*

*ICS INDUSTRIES, INC*
*6106 Technology Drive*
*Browns Summit, NC 27214*
*Office:   336-285-5364*
*Direct Line:   336-285-7233*
*Fax: 336-272-5377*
*Email: aaron@icsind.com*

**From:** Arthur Arutyunov <arthur.arutyunov33@yahoo.com>
**Sent:** Wednesday, January 15, 2025 2:43 PM
**To:** Aaron Malosky <aaron@icsind.com>
**Subject:** Re: RFQ

Did you receive my proposal from yesterday?

> On Jan 15, 2025, at 11:59 AM, Arthur Arutyunov <arthur.arutyunov33@yahoo.com> wrote:
>
> Yes, I am confirming this LWC
> 1/4 x 0.030 x 330lbs
>
> Also we have
> 3/16 x 0.030 x 330 lbs
>
> Thank you

> On Jan 15, 2025, at 11:37 AM, Arthur Arutyunov <arthur.arutyunov33@yahoo.com> wrote:
>
> Begin forwarded message:
>
> > **From:** Aaron Malosky <aaron@icsind.com>
> > **Date:** January 15, 2025 at 11:31:45 AM MST
> > **To:** Arthur Arutyunov <arthur.arutyunov33@yahoo.com>
> > **Subject: RE: RFQ**
> >
> > *Can you confirm that the wall thickness is*
> > *.030 . They are asking for confirmation as*

*Please call or email with any questions you may have.*
*Thank you,*
*Aaron Malosky*
*<image001.png>*

*ICS INDUSTRIES, INC*
*6106 Technology Drive*
*Browns Summit, NC 27214*
*Office:   336-285-5364*
*Direct Line:   336-285-7233*
*Fax: 336-272-5377*
*Email: aaron@icsind.com*

**From:** Arthur Arutyunov
<arthur.arutyunov33@yahoo.com>
**Sent:** Wednesday, January 15, 2025 1:28 PM
**To:** Aaron Malosky <aaron@icsind.com>
**Subject:** Re: RFQ

1/4  LWC for one 330 lbs
$5.99/lbs
If he wants to take it all 14 LWC price will
$5.52/lbs

About certificate UL I sent you before

Thanks

On Jan 15, 2025, at 11:10 AM,
Aaron Malosky
<aaron@icsind.com> wrote:

*I have a customer that was looking for a coil of ¼" ACR LWC . How much will you sell one of the 330 lbs LWC for and could you provide me with any MTR or Certificate of Conformance on it ? Thank you  .*

*Please call or email with any questions you may have.*
*Thank you,*
*Aaron Malosky*

Bitmap) 1.jpg>

*ICS INDUSTRIES, INC*
*6106 Technology Drive*
*Browns Summit, NC 27214*
*Office: 336-285-5364*
*Direct Line: 336-285-7233*
*Fax: 336-272-5377*
*Email: aaron@icsind.com*

**From:** Serge Zaikin
**Sent on:** Monday, January 13, 2025 10:52:21 AM
**To:** info@icg.uz
**CC:** Arthur Aroutiounov; Akmal Koridov
**Subject:** Official Response to product return
**Attachments:** 20250112-ICG UZ - Response.pdf (325.69 KB)


Hi,
Please see attached official response to the product return request.
All conversation and negotiation must be via email, as a response.
Thanks,

**Serge Zaikin**
*Chief Technology Officer*
serge@infinitycoppergroup.com



**Infinity Copper Group USA LLC**

20-201-5209
infinitycoppergroup.com
124 S Parker Road A2-402
Aurora Colorado 80014, USA



ICG USA LLC
3124 S Parker Rd Ste A2-402
Aurora, CO 80014
infinitycoppergroup.com

toll free: (877) ICG-USA7 (424-8727)
phone: (720) 943-5063
fax: (303) 276-0438
info@infinitycoppergroup.com

12 января 2025

Руководству и акционерам (ICG UZ),

Надеюсь, что это письмо найдет Вас в добром здравии. Я обращаюсь к вам с официальным запросом в связи с просьбой вашей компании о возврате двух контейнеров с медными трубами, которые были предоставлены нам на условиях займа. Мы понимаем условия нашего соглашения, однако хотел бы обратить ваше внимание на финансовые трудности и усилия, которые мы вложили, так же, в связи с отсутсвии NSF сертификатов в течении года, мы потеряли продажи в сумме на $500,000, и в создание нашего бизнеса, и попытки реализации этого продукта.

Убедительно просим вас произвести и отгрузить, один 40 фут контейнер, согласно заказа. Мы должны получить контейнер до марта 2025 года.

Наши постоянные расходы:
- Выставки
- Складские
- Таможенные
- Командировки
- Маркетинг
- Софтвер
- Имайл
- Бухгалтерские
- Представительские
- Доставка продукции до покупателей

Себестоимость на данный момент $12,500 за тонну.

Мы инвестировали значительные ресурсы в организацию работы, маркетинг продукции и стараемся построить жизнеспособный бизнес вокруг нее. К сожалению, этот процесс не принес пока ожидаемых результатов, и мы оказались в сложной финансовой ситуации.

В связи с вышеописанным, мы просим отгрузить один контейнер по заказу от ноября 2024 года, взамен двух контейнеров продукции по договору, для того чтобы выполнить обезательства перед нашими клиентам.

Мы работаем с инвесторами и клиентами и просим согласие на продолжение ведения переговоров. (информация отправленна вам раннее по емаилу) Просим сротчно ответит ны имаил.

**ICG USA LLC**
3124 S Parker Rd Ste A2-402
Aurora, CO 80014
infinitycoppergroup.com

toll free: (877) ICG-USA7 (424-8727)
phone: (720) 943-5063
fax: (303) 276-0438
info@infinitycoppergroup.com

Согласно нашей договоренности с Акмалем, в октябре 2023 году, нам было обещенно, что склад будет иметь один-два контейнера в наличии на постоянной основе для совместной операционной деятельности.

Мы высоко ценим отношения между нашими компаниями и настроены на дальнейшее сотрудничество. Мы надеемся на ваше понимание и рассмотрение нашего запроса и готовы обсудить любые условия или договоренности, которые позволят нам продолжить партнерство и одновременно решить текущую ситуацию.

Благодарим вас за внимание к нашему запросу. Мы с нетерпением ждем вашего положительного ответа и готовы найти взаимовыгодное решение.

С уважением,


Артур Арутюнов
Акционеры (Акмал Кадиров (Президент), Артур Арутюнов CEO, Сергей Заикин CTO)
CEO – arthur@infinitycoppergroup.com – Infinity Copper Group USA (ICG USA LLC)

**From:** Arthur Arutyunov
**Sent on:** Tuesday, May 26, 2026 7:36:12 PM
**To:** Serge Zaikin
**Subject:** Приглашение Акмаля с женой в США

06:53

✕         Flow Expo Panoma Invitatio...



ICG USA LLC
3124 S Parker Rd Ste A2-402
Aurora, CO 80014
infinitycoppergroup.com

toll free: (877) ICG-USA7 (424-8727)
phone: (720) 943-5063
fax: (303) 276-0438
info@infinitycoppergroup.com

January 8th 2024

Metal Processing Technology (ICG UZ)
Republic of Uzbekistan, Tashkent
City, Astrabad 22

To whom it may concern:

According to our agreement and contract (No 97/2023-EX), signed on 1st of November 2023, ICG USA LLC cordially invite ICG UZ to a Flow Expo show in Panoma, CA (Booth 223). All hotel and accommodations have been prepared for your convenience. All mentioned below are requested to attend the show between March 7th – 14th, 2024 at Fairplex, Panoma, CA; located at 1101 West McKinley Avenue, Panoma, CA 91768.

Invited individuals:
Akmalkhuja Kodirov
President ICG USA LLC

Mohinur Kodirova
Marketing Specialist

This will give everyone opportunity to attend the show and inspect the premises of the warehouse where the product will be located and the product will be distributed.

Warehouse is located at 28610 Hasley Canyon Road, Castaic, CA 91384.

We request that all marketing materials and product samples to be delivered at least 1 week before the expo/show.

We anticipate your prompt arrival. If you have any questions, please do not hesitate to reach out.

Sincerely,

Sergey Zaikin
CTO – sergey@infinitycoppergroup.com
720-201-5209

OFFICE OF THE SECRETARY OF STATE
OF THE STATE OF COLORADO

I, Jena Griswold, as the Secretary of State of the State of Colorado, hereby certify that, according to the records of this office,

ICG USA LLC

is a

## Limited Liability Company

formed or registered on 10/06/2023 under the law of Colorado, has complied with all applicable requirements of this office, and is in good standing with this office. This entity has been assigned entity identification number 20238008367 .

This certificate reflects facts established or disclosed by documents delivered to this office on paper through 01/18/2024 that have been posted, and by documents delivered to this office electronically through 01/19/2024 @ 14:01 In .

I have affixed hereto the Great Seal of the State of Colorado and duly generated, executed, and issued this official certificate at Denver, Colorado on 01/19/2024 @ 14:01:16 in accordance with applicable law.



**ICG USA LLC**
3124 S Parker Rd Ste A2-402
Aurora, CO 80014
infinitycoppergroup.com

toll free: (877) ICG-USA7 (424-8727)
phone: (720) 943-5063
fax:  (303) 276-0438
info@infinitycoppergroup.com

Dear Akmal,

Re: Return of Inventory and the loss of productivity and revenue

I am writing to inform you that, after careful consideration, our company is asking for your opinion on the decision to return a portion of its current inventory back to Uzbekistan. This decision cannot be taken lightly, but it is in line with our strategy to optimize our product offerings and improve our overall business performance.

As the president, you are part management and shareholder of ICG USA LLC, we are requiring you to provide your suggestion/direction on what can be done.   You have 4 business days to respond.

This is confidential information and may not be distributed outside of the shareholders.

We are about to send an invoice to ICG UZ and the shareholders in Uzbekistan to recoup the losses and to remediate the breach of the exclusivity agreement.

Here is a snippet from the invoice:

| ITEM CODE | DESCRIPTION | QTY | PRICE EACH | AMOUNT |
|---|---|---|---|---|
| OTHER | NSF Certification Sales loss, promised in March of 2024 | | 500,000.00 | 500,000.00 |
| OTHER | Product Quality and non-certified product. 2 containers at retail price | | 835,246.60 | 835,246.60 |
| OTHER | Expo/Show costs reimbursment:<br>* transportation<br>* hotel<br>* insurance<br>* display/electricity rental | | 14,000.00 | 14,000.00 |
| OTHER | Warehouse product storage @ $2000 per container per month | | 24,000.00 | 24,000.00 |

Our current loss is over $1.3 million dollars ($1,300,000.00+)

We anticipate that this return will have a significant impact on our financial performance in the short term, but it will help us achieve our long-term goals.

Actions to take:
- As per our exclusive agreement we have the right to smelt the improperly manufactured product to recover the costs.

**ICG USA LLC**
3124 S Parker Rd Ste A2-402
Aurora, CO 80014
infinitycoppergroup.com

toll free: (877) ICG-USA7 (424-8727)
phone: (720) 943-5063
fax:  (303) 276-0438
info@infinitycoppergroup.com

Infinity Copper Group

- To receive replacement products, which the manufacturer has failed to provide in a timely manner.
- To receive replacement products and mend our agreement by covering the other costs, as specified by our exclusive agreement.

Again, please keep all conversations confidential and provide your opinion as early as possible, but not later than 4 days from the receipt of this communication.

Sincerely,


Serge Zaikin
CTO – ICG USA LLC
serge@infinitycoppergroup.com

**From:** Serge Zaikin

**Sent on:** Saturday, May 23, 2026 9:15:48 AM

**To:** Arthur Arutyunov

**Subject:** Breach of contract

**Attachments:** Breeched Sales Territory in USA.msg (1.25 MB)

Here is an email to Akmal.

This breach of contract has foundation to start our own case.

Thank you,

## Serge Zaikin

serge@zaikinco.com

Phone: 720-201-5209

**From:** Serge Zaikin

**Sent on:** Tuesday, February 4, 2025 9.44:01 AM

**To:** Akmal Koridov; Akmal Koridov

**Subject:** Breeched Sales Territory in USA

**Urgent:** High

Hi,

It was brought to my attention that someone from your sales team contacted our Prospecting Client to sell ICG UZ product. They are using ICG USA (https://infinitycoppergroup.com) website as a reference point. I was ashamed that I did NOT know that someone else will contact the client. I had to explain away how this could possibly happen.

I am canceling today's meeting and starting an investigation into this matter. I am appalled that you would break our EXCLUSIVITY agreement and start selling in American Territory.

I will get with you once I complete my investigation.



**Serge Zaikin**

*Chief Technology Officer*

serge@infinitycoppergroup.com



## Infinity Copper Group USA LLC

20-201-5209

infinitycoppergroup.com

124 S Parker Road A2-402

Aurora Colorado 80014, USA

**From:** Akmal Koridov
**Sent on:** Thursday, June 27, 2024 3:47:53 AM
**To:** Hovik Manukyan
**Subject:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA // Service invoice

Dear Hovik
sorry for the late reply

We made a payment according to the invoice, sorry for the lateness, in the attachments you can find a SWIFT

Отправлено с iPhone

26 июня 2024 г., в 23:50, Hovik Manukyan написал(а):

```
┌ MT 103 FROM TRSAUZ22XXX TO RZBAATWWXXX ( ID:497787 ) OUT ─────────────
│ :20:TR04912406270142                                    27.06.2024 11:46:50
│ :23B:CRED                                                      БАНК-КЛИЕНТ
│ :32A:240627USD8500,
│ :33B:USD8500,
│ :50K:/20208840800701865003
│ LLC METAL PROCESSING TECHNOLOGY, 2
│ 2 ASTRABAD STREETCHILINZAR DISTRIC
│ T, TASHKENT CITY100149 UZBEKISTAN
│ :52A:TRSAUZ22XXX
│ :57A:BOFAUS6HXXX
│ :59:/325166169007
│ AMERICAN GLOBAL FREIGHTS 910 LORIN
│ DA DR GLENDALE CA 9120 USA
│ :70:PREPAYMENT FOR TRANSPORTATION SERV
│  ICES FOR COPPER PIPES CONTRACT 01
│  DD 08.04.2024
│ :71A:OUR
│
│ UETR: C10887E6-E8A2-424C-B779-DC93D6ECE622
```

┌ Мемориальный ордер ─────────────────────────────────────────

№ документа: TR04912406270142                    Дата документа: 27-JUN-24

Дебет
    Плательщик: ООО "METAL PROCESSING TECHNOLOGY"
      Счет: 20208840800701865003                          ИНН: 304496020
      Банк: [00491] ТОШКЕНТ Ш., "ТРАСТБАНК" ХА БАНКИНИНГ БОШ ОФИСИ
      БХМ: [00491] ТОШКЕНТ Ш., "ТРАСТБАНК" ХА БАНКИНИНГ БОШ ОФИСИ

Кредит
    Получатель: RAIFFEISEN BANK INTERNATIONAL AG VIENNA AT
      Счет: 10501840200090057001                          ИНН: 000000000
      Банк: [00491] ТОШКЕНТ Ш., "ТРАСТБАНК" ХА БАНКИНИНГ БОШ ОФИСИ

    Сумма: USD 8 500.00    Курс: 0    Комиссия: 460 398.44    ИДНК: 20105509030449602024020000016

    Сумма прописью: Восемь тысяч пятьсот Долларов США, 00 центов

    Назначение: 52042 Prepayment for transportation serv ices for copper pipes contract 01 DD 08.04.2024

Hello Akmal,
Please advise urgently. Attaching our invoice for your reference.

Regards,

Hovik Manukyan

Export Manager

American Global Freights

P. +1 (213) 569-5360

M. +1 (424) 382-8034

W. www.agfreights.com

FMC-Licensed NVOCC OTI#031665NF

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof. By accepting a quote from AGF, you acknowledge that you agree to AGF Terms of Service. All services provided by AGF are subject to the AGF Terms and Conditions of Service.

**From:** Hovik Manukyan
**Sent:** Monday, June 24, 2024 4:44 PM
**To:** 'Akmal Koridov'
**Subject:** RE: 1x40'HC from Uzbekistan to Los Angeles, CA // Service invoice

Hello Akmal,

Kind reminder on due payment.

Thank you.

Regards,

Hovik Manukyan

Export Manager

American Global Freights

P. +1 (213) 569-5360

M. +1 (424) 382-8034

W. www.agfreights.com

FMC-Licensed NVOCC OTI#031665NF

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof. By accepting a quote from AGF, you acknowledge that you agree to AGF Terms of Service. All services provided by AGF are subject to the AGF Terms and Conditions of Service.

**From:** Hovik Manukyan
**Sent:** Friday, June 21, 2024 12:15 PM
**To:** Akmal Koridov <akmal@infinitycoppergroup.com>
**Subject:** RE: 1x40'HC from Uzbekistan to Los Angeles, CA // Service invoice

Hello Akmal,

Please advise when we can expect the payment.

Thank you!

Regards,

Hovik Manukyan

Export Manager

American Global Freights

P. +1 (213) 569-5360

M. +1 (424) 382-8034

W. www.agfreights.com

FMC-Licensed NVOCC OTI#031665NF

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof. By accepting a quote from AGF, you acknowledge that you agree to AGF Terms of Service. All services provided by AGF are subject to the AGF Terms and Conditions of Service.

**From:** Hovik Manukyan
**Sent:** Tuesday, June 4, 2024 1:01 PM
**To:** Akmal Koridov <akmal@infinitycoppergroup.com>
**Cc:** Ari Baghdasaryan <ari@agfreights.com>; AG Freights <billing@agfreights.com>

Hello Akmal,

I hope all is well on your end.
Please find our invoice attached, reference #IN-00016.
Please note that 2 days truck demurrage has been incurred in Tashkent at $100/day.
The total of $200 demurrage charge is included in the invoice.
Please let me know once you process the payment.
Thank you!
Regards,
Hovik Manukyan
Export Manager
American Global Freights

P. +1 (213) 569-5360
M. +1 (424) 382-8034
W. www.agfreights.com
FMC-Licensed NVOCC OTI#031665NF

IMPORTANT: The contents of this email and any attachments are confidential. They are intended for the named recipient(s) only. If you have received this email by mistake, please notify the sender immediately and do not disclose the contents to anyone or make copies thereof. By accepting a quote from AGF, you acknowledge that you agree to AGF Terms of Service. All services provided by AGF are subject to the AGF Terms and Conditions of Service.

**From:** Akmal Koridov <akmal@infinitycoppergroup.com>
**Sent:** Tuesday, April 2, 2024 5:40 AM
**To:** Hovik Manukyan <hovik@agfreights.com>
**Subject:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA
What does reference number mean?
Contact person: +998 90-933-29-06 (Bakhodir)
Invoice and packing list I will send tomorrow
Thank you
Отправлено с iPhone

> 2 апр. 2024 г., в 12:22, Hovik Manukyan <hovik@agfreights.com> написал(а):
>
>
> Hello Akmal,
> Received with thanks. Please provide commercial invoice and packing list along with contact person details, reference number.
> Thank you.
> Regards,
> Hovik Manukyan
> Export Manager
>
> American Global Freights
> www.agfreights.com
> M. +1 424-382-8034
>
> **From:** Akmal Koridov <akmal@infinitycoppergroup.com>
> **Sent:** Tuesday, April 2, 2024 12:04 AM
> **To:** Hovik Manukyan <hovik@agfreights.com>
> **Subject:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA
> Dear Hovik
> Address: 61 Elbek street, Yashnabod district, Tashkent city (A17) gate.
> This is the address of industrial zone called "Technopark"
> Отправлено с iPhone
>
>> 2 апр. 2024 г., в 10:42, Hovik Manukyan <hovik@agfreights.com> написал(а):

Please find updated quote attached reflecting the agreed payment terms.

We are checking truck availability to arrange the pickup today, latest tomorrow. Meanwhile, please provide commercial invoice and packing list.

Thank you.

Regards,

Hovik Manukyan

Export Manager

## American Global Freights
www.agfreights.com
M. +1 424-382-8034

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Monday, April 1, 2024 10:09 PM
**To:** Ari Baghdasaryan <ari@agfreights.com>; Hovik Manukyan <hovik@agfreights.com>; Akmal Koridov <akmal@infinitycoppergroup.com>; Arthur Aroutiounov <arthur@infinitycoppergroup.com>; sabirovibroxim98@mail.ru
**Subject:** RE: 1x40'HC from Uzbekistan to Los Angeles, CA

Dear Artur and Havik

Thank you for your support.

Today you can arrange the truck for goods which is going to TAMPA port.

**Here is necessary information:**

Loading address- (Gate "17", Block "A", TEXNOPARK) Elbek 61, Yashnaobod district, Tashkent city, Uzbekistan.

Contact person for loadings-Mr Bakhadir +998909332906

Contact person for export docs-Mr Ibrahim +998990494004

Best Regards,

**Anvar Irsaliev**

International Sales Manager

Mob/WhatsApp/Telegram: +998998117222

anvar@infinitycoppergroup.com

www.infinitycoppergroup.com

www.icg.uz

3124 S Parker Road A2-402

Aurora Colorado 80014, USA

https://youtu.be/TDq8vbkYzuY?si=9aWgTt8BbaebBVPi

___

**От:** Ari Baghdasaryan <ari@agfreights.com>
**Отправлено:** 2 апреля 2024 г. 09:51
**Кому:** Hovik Manukyan <hovik@agfreights.com>; Anvar Irsaliev <anvar@infinitycoppergroup.com>; Akmal Koridov <akmal@infinitycoppergroup.com>; Arthur Aroutiounov <arthur@infinitycoppergroup.com>
**Тема:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA

Hi Everyone

agree to provide payment terms as following
Full payment 30days after departure from Poti.
Please advise pickup address to organize pickup asap

Best
Ari

## American Global Freights
www.agfreights.com
## Cell:+13866271006

---

**From:** Hovik Manukyan <hovik@agfreights.com>
**Sent:** Monday, April 1, 2024 5:08:17 PM
**To:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Cc:** Ari Baghdasaryan <ari@agfreights.com>
**Subject:** RE: 1x40'HC from Uzbekistan to Los Angeles, CA

Hi Anvar,

Please discuss with Ararat. He is the founder and CEO of the company.

Thank you!

Regards,

Hovik Manukyan

Export Manager

American Global Freights
www.agfreights.com
M. +1 424-382-8034

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Monday, April 1, 2024 5:00 PM
**To:** Hovik Manukyan <hovik@agfreights.com>
**Cc:** Ari Baghdasaryan <ari@agfreights.com>
**Subject:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA

We want to pay balance after arrival to the port

Отправлено с iPhone

> 2 апр. 2024 г., в 04:50, Hovik Manukyan <hovik@agfreights.com> написал(а):
>
> • 50% within 5 calendar days after departure from port Poti;
> • 50% within 30 calendar days after departure from port Poti

**From:** Akmal Koridov

**To:** Hovik Manukyan

**Subject:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA


Can i call you?

Отправлено с iPhone


5 апр. 2024 г., в 23:03, Hovik Manukyan написал(а):


Hello Akmal,

Our driver has advised that there is some space remaining between the pallets after loading (see attached pics). As the pallets are tall and heavy, they'll be swinging during the transportation and can be damaged. Your warehouse staff has stated that there shouldn't be any issues with that.

Please check if you can put some fixing material to prevent any damages.

Thank you!

Regards,

Hovik Manukyan

Export Manager


American Global Freights

www.agfreights.com

M. +1 424-382-8034

**From:** Hovik Manukyan
**Sent:** Friday, April 5, 2024 8:58 AM
**To:** 'Akmal Koridov'
**Cc:** Ari Baghdasaryan
**Subject:** RE: 1x40'HC from Uzbekistan to Los Angeles, CA

Hello Akmal,

Please advise when we can expect the required documents.

Thank you.

Regards,

Hovik Manukyan

Export Manager


American Global Freights

www.agfreights.com

M. +1 424-382-8034

**From:** Hovik Manukyan
**Sent:** Wednesday, April 3, 2024 11:05 PM
**To:** Akmal Koridov <akmal@infinitycoppergroup.com>
**Cc:** Ari Baghdasaryan <ari@agfreights.com>
**Subject:** RE: 1x40'HC from Uzbekistan to Los Angeles, CA

Dear Akmal,

Max truck load is 23,000 kg.

I'm sending you a shipping instruction form. Please fill out the highlighted parts and send us back along with the commercial invoice and packing list.
Thank you!
Regards,
Hovik Manukyan
Export Manager

American Global Freights

www.agfreights.com
M. +1 424-382-8034

**From:** Akmal Koridov <akmal@infinitycoppergroup.com>
**Sent:** Wednesday, April 3, 2024 4:42 PM
**To:** Hovik Manukyan <hovik@agfreights.com>
**Subject:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA
I will send it today, very sorry for the delay. I have a question regarding the max load, what is the max gross weight for the truck?
Отправлено с iPhone

> 3 апр. 2024 г., в 20:49, Hovik Manukyan <hovik@agfreights.com> написал(а):
>
>
> Hello Akmal,
> Please provide commercial invoice for the cargo going to Los Angeles in 1x40'HC container.
> Thank you!
> Regards,
> Hovik Manukyan
> Export Manager
>
> American Global Freights
> www.agfreights.com
> M. +1 424-382-8034
>
> **From:** Akmal Koridov <akmal@infinitycoppergroup.com>
> **Sent:** Tuesday, April 2, 2024 5:40 AM
> **To:** Hovik Manukyan <hovik@agfreights.com>
> **Subject:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA
> What does reference number mean?
> Contact person: +998 90-933-29-06 (Bakhodir)
> Invoice and packing list I will send tomorrow
> Thank you
> Отправлено с iPhone
>
>> 2 апр. 2024 г., в 12:22, Hovik Manukyan <hovik@agfreights.com> написал(а):
>>
>>
>> Hello Akmal,
>> Received with thanks. Please provide commercial invoice and packing list along with contact person details, reference number.
>> Thank you.
>> Regards,
>> Hovik Manukyan
>> Export Manager

American Global Freights
www.agfreights.com
M. +1 424-382-8034

**From:** Akmal Koridov <akmal@infinitycoppergroup.com>
**Sent:** Tuesday, April 2, 2024 12:04 AM
**To:** Hovik Manukyan <hovik@agfreights.com>
**Subject:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA

Dear Hovik
Address: 61 Elbek street, Yashnabod district, Tashkent city (A17) gate.
This is the address of industrial zone called "Technopark"
Отправлено с iPhone


> 2 апр. 2024 г., в 10:42, Hovik Manukyan <hovik@agfreights.com> написал(а):
>
>
> Hello Anvar,
> Please find updated quote attached reflecting the agreed payment terms.
> We are checking truck availability to arrange the pickup today, latest tomorrow. Meanwhile, please provide commercial invoice and packing list.
> Thank you.
> Regards,
> Hovik Manukyan
> Export Manager
>
> American Global Freights
> www.agfreights.com
> M. +1 424-382-8034
>
> **From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
> **Sent:** Monday, April 1, 2024 10:09 PM
> **To:** Ari Baghdasaryan <ari@agfreights.com>; Hovik Manukyan <hovik@agfreights.com>; Akmal Koridov <akmal@infinitycoppergroup.com>; Arthur Aroutiounov <arthur@infinitycoppergroup.com>; sabirovibroxim98@mail.ru
> **Subject:** RE: 1x40'HC from Uzbekistan to Los Angeles, CA
>
> Dear Artur and Havik
> Thank you for your support.
> Today you can arrange the truck for goods which is going to TAMPA port.
> **Here is necessary information:**
> Loading address- (Gate "17", Block "A", TEXNOPARK) Elbek 61, Yashnaobod district, Tashkent city, Uzbekistan.
> Contact person for loadings-Mr Bakhadir +998909332906
> Contact person for export docs-Mr Ibrahim +998990494004
>
> Best Regards,
>
> **Anvar Irsaliev**
>
> International Sales Manager

anvar@infinitycoppergroup.com

www.infinitycoppergroup.com

www.icg.uz

3124 S Parker Road A2-402

Aurora Colorado 80014, USA

https://youtu.be/TDq8vbkYzuY?si=9aWgTt8BbaebBVPi

---

**От:** Ari Baghdasaryan <ari@agfreights.com>
**Отправлено:** 2 апреля 2024 г. 09:51
**Кому:** Hovik Manukyan <hovik@agfreights.com>; Anvar Irsaliev <anvar@infinitycoppergroup.com>; Akmal Koridov <akmal@infinitycoppergroup.com>; Arthur Aroutiounov <arthur@infinitycoppergroup.com>
**Тема:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA

Hi Everyone

After discussing with Arthur, Arthur took all responsibility from his side. We agree to provide payment terms as following.

Full payment 30days after departure from Poti.

Please advise pickup address to organize pickup asap

Best

Ari

## American Global Freights
www.agfreights.com

Cell:+13866271006

---

**From:** Hovik Manukyan <hovik@agfreights.com>
**Sent:** Monday, April 1, 2024 5:08:17 PM
**To:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Cc:** Ari Baghdasaryan <ari@agfreights.com>
**Subject:** RE: 1x40'HC from Uzbekistan to Los Angeles, CA

Hi Anvar,

Please discuss with Ararat. He is the founder and CEO of the company.

Thank you!

Regards,

Hovik Manukyan

Export Manager

American Global Freights
www.agfreights.com

M. +1 424-382-8034

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Monday, April 1, 2024 5:00 PM
**To:** Hovik Manukyan <hovik@agfreights.com>
**Cc:** Ari Baghdasaryan <ari@agfreights.com>
**Subject:** Re: 1x40'HC from Uzbekistan to Los Angeles, CA

We want to pay balance after arrival to the port

Отправлено с iPhone

<hovik@agfreights.com> написал(а):

- 50% within 5 calendar days after departure from port Poti;
- 50% within 30 calendar days after departure from port Poti

ent on: Monday, March 17, 2025 7:18:09 PM

o:      Nick Canter Case 3:26-cv-02762-DMS-SBC    Document 11    Filed 06/04/26    PageID.262    Page 85
C:      akmalkhuja.kodirov@icg.uz; Anvar Irsaliev                          of 101
ubject: Re: ICG - DAYCO Fabrication price

ood morning Nick,

wanted to keep you updated that Anvar is currently working on the quote. You can expect to receive it from him as soon as possible.


st Regards,

**Zaid Muhhammad**
Sales & Marketing Manager-
North America
AKFA Group of Companies

+14372143087
zaid.muhhammad@akfagroup.com
www.akfagroup.com
1 Katta Khirmontepa str., Uctepa district, Tashkent, Uzbekistan

---

om: Nick Canter <ncanter@daycoindustries.com>
nt: Monday, March 17, 2025 7:02:48 PM
: Anvar Irsaliev
: Zaid Muhhammad
bject: RE: ICG - DAYCO Fabrication price

ear Anvar,

ease confirm the receipt and request below.

st regards,

cholas Canter
irchasing
iyco Industries
205 San Sevaine Way, Mira Loma, CA 91752
rect Line)951-404-0587 / F)951-360-5999

om: Nick Canter
nt: Thursday, March 13, 2025 2:55 PM
: Anvar Irsaliev <anvar@infinitycoppergroup.com>
: Zaid Muhhammad <Zaid.Muhhammad@akfagroup.com>
bject: RE: ICG - DAYCO Fabrication price

ear Anvar,

lope all is well.  We are re-opening our review for new copper mills.  Attached is your previous quote, please review again and let us know your best price.

st regards,

cholas Canter
irchasing
iyco Industries
205 San Sevaine Way, Mira Loma, CA 91752
rect Line)951-404-0587 / F)951-360-5999

om: Anvar Irsaliev <anvar@infinitycoppergroup.com>
nt: Friday, March 29, 2024 4:07 AM
: Nick Canter <ncanter@daycoindustries.com>
: zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>
bject: RE: ICG - DAYCO Fabrication price

ear Nick

lank you for the information.

ittached AGREEMENT OF THE MAIN CONDITIONS. We started to make the draft of the contract according to this AGREEMENT OF THE MAIN CONDITIONS. ease sign THE AGREEMENT  OF THE MAIN CONDITIONS  and send to me.

so, I attached the shipping cost to LA, please check.
im also waiting shipping costs from others. Please you also check shipping cost from your side from other logistics.

st Regards,

**ıvar Irsaliev**
ernational Sales Manager

ob/WhatsApp/Telegram: +998998117222
var@infinitycoppergroup.com
ww.infinitycoppergroup.com
ww.icg.uz

24 S Parker Road A2-402
irora Colorado 80014, USA

**nfinity Copper Group USA LLC**

ps://youtu.be/TDq8vbkYzuY?si=9aWgTt8BbaebBVPi

___

: Nick Canter <ncanter@daycoindustries.com>
правлено: 28 марта 2024 г. 22:34
му: Anvar Irsaliev <anvar@infinitycoppergroup.com>
пия: zaid.muhhammad@akfagroup.com <zaid.muhhammad@akfagroup.com>; Monty Thomas <mthomas@daycoindustries.com>
ма: RE: ICG - DAYCO Fabrication price

ar Anvar,

lidn't see an attachment for an agreement to the email.

ease see the information below.
presented by President: Darren Day

X ID:  33-074618
nk:  Bank of America, N.A.
nk address: 900 W. Trade St. Charlotte, NC 98255
count number: 325134120719
VIFT code: BOFAUS3N

st regards,

cholas Canter
rchasing
tyco Industries
205 San Sevaine Way, Mira Loma, CA 91752
ect Line)951-404-0587 / F)951-360-5999

om: Anvar Irsaliev <anvar@infinitycoppergroup.com>
nt: Wednesday, March 27, 2024 9:53 PM
: Nick Canter <ncanter@daycoindustries.com>
: zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>
bject: RE: ICG - DAYCO Fabrication price

ar Nick

e need following information too:

presented by President: Name and Surname

X ID:
nk:
nk address:
count number:
VIFT code:

io please find attached THE AGREEMENT OF THE MAIN CONDITIONS which need to start contract drafts. Please sign and send to me.

st Regards,

**war Irsaliev**
ernational Sales Manager

ob/WhatsApp/Telegram: +998998117222
var@infinitycoppergroup.com
vw.infinitycoppergroup.com
vw.icg.uz

24 S Parker Road A2-402
rora Colorado 80014, USA



**nfinity Copper Group USA LLC**

ps://youtu.be/TDq8vbkYzuY?si=9aWgTt8BbaebBVPi

___

: Nick Canter <ncanter@daycoindustries.com>
правлено: 27 марта 2024 г. 23:08
му: Anvar Irsaliev <anvar@infinitycoppergroup.com>
пия: zaid.muhhammad@akfagroup.com <zaid.muhhammad@akfagroup.com>; Monty Thomas <mthomas@daycoindustries.com>
ма: RE: ICG - DAYCO Fabrication price

ar Anvar,

yco Industries LLC
205 San Sevaine Way,
ra Loma, CA 91752
1-360-5900

st regards,

holas Canter
rchasing
yco Industries
205 San Sevaine Way, Mira Loma, CA 91752
ect Line)951-404-0587 / F)951-360-5999

om: Anvar Irsaliev <anvar@infinitycoppergroup.com>
nt: Wednesday, March 27, 2024 11:02 AM
: Nick Canter <ncanter@daycoindustries.com>
: zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>
bject: Re: ICG - DAYCO Fabrication price

ar Nick

ease send to me your company details to make the draft of the contract.

гправлено с iPhone

27 марта 2024 г., в 22:36, Nick Canter <ncanter@daycoindustries.com> написал(а):

Dear Anvar,

Thank you for reviewing again. Zaid didn't quote by a full container price, it was just added to the fab price/lb. The difference was $0.13/lb. in January.

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Wednesday, March 27, 2024 12:53 AM
**To:** Nick Canter <ncanter@daycoindustries.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>
**Subject:** RE: ICG - DAYCO Fabrication price

Dear Nick

Now I am waiting for an official offer from a logistics company and also from Mr. Zaid. I will send you it very soon after I get it.
We will try to get the same price for shipping as Benkam.
$.13 USD/LB. how much is it in USD per container?

**От:** Nick Canter <ncanter@daycoindustries.com>
**Отправлено:** 26 марта 2024 г. 22:04
**Кому:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Копия:** zaid.muhhammad@akfagroup.com <zaid.muhhammad@akfagroup.com>; Monty Thomas <mthomas@daycoindustries.com>
**Тема:** RE: ICG - DAYCO Fabrication price

Dear Anvar,

I'm sorry for not being clear.

I meant to say when Zaid quoted the same term "CIF LA" for aluminum. His cost was $.13 USD/LB. shipping from Benkam. We believe this rate should be very similar to ICG. Especially as with copper level wound, the material will max out on weight before CBM.

Please see the options you gave below if we chose FOB Mersin and CIF LA. The rate of $8100 for CIF LA comes closer to $.20 USD/LB. This makes the total cost uncompetitive to our other suppliers. Please help review the cost again.

*"Tashkent-Mersin 2600 USD/40' ctr.*
*Tashkent-LA 8100 USD/40' ctr."*

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**Sent:** Monday, March 25, 2024 11:30 PM
**To:** Nick Canter <ncanter@daycoindustries.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>
**Subject:** RE: ICG - DAYCO Fabrication price

Dear Nick

Thank you for your mail.

I dont think that Zaid quoted our copper pipe prices. As I remember I sent you our prices as following:
LME +800 USD/ton FCA Tashkent. Payment terms 30% deposit and balance before loading when all goods ready.
We will check shipping costs for you too. Please send to me the port name of your destination.
Also, I need your company details for making the draft of the contract.

Best Regards,

**Anvar Irsaliev**
International Sales Manager

Mob/WhatsApp/Telegram: +998998117222
anvar@infinitycoppergroup.com
www.infinitycoppergroup.com
www.icg.uz

3124 S Parker Road A2-402
Aurora Colorado 80014, USA

<image001.jpg>
https://youtu.be/TDq8vbkYzuY?si=9aWgTt8BbaebRVPi

**От:** Nick Canter <ncanter@daycoindustries.com>
**Отправлено:** 26 марта 2024 г. 04:41
**Кому:** izzi291095@gmail.com <izzi291095@gmail.com>
**Копия:** zaid.muhhammad@akfagroup.com <zaid.muhhammad@akfagroup.com>; Monty Thomas <mthomas@daycoindustries.com>; Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Тема:** RE: ICG - DAYCO Fabrication price

Dear Mr. Izzat,

One item was mis-understood, we've changed it to be more clear, attached.

Dear Anvar,

We are ready to place an order. Although we noticed that when Zaid quoted us CIF prices he only quote $.13/lb in addition to the fabrication. Please review freight cost again.

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** izzi291095@gmail.com <izzi291095@gmail.com>
**Sent:** Friday, March 22, 2024 9:46 PM
**To:** Nick Canter <ncanter@daycoindustries.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>; Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Subject:** Re: ICG - DAYCO Fabrication price

Good afternoon Mr. Nick

I'm sorry for the wait
I answered your questions in the file, you can check)
As for the wooden coil, we will order according to your drawing.

Sincerely, Izzat

Суббота, 23 марта 2024, 4:38 +05:00 от Nick Canter <ncanter@daycoindustries.com>:

Dear Mr Izzat,

Please help complete Dayco's concerns on packaging. We are ready to place initial order but can't until this is worked out.

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** Nick Canter
**Sent:** Monday, March 18, 2024 4:35 PM
**To:** 'izzi291095@gmail.com' <[/compose?To=izzi291095@gmail.com]izzi291095@gmail.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <[/compose?To=mthomas@daycoindustries.com]mthomas@daycoindustries.com>; Anvar Irsaliev <[/compose?To=anvar@infinitycoppergroup.com]anvar@infinitycoppergroup.com>
**Subject:** RE: ICG - DAYCO Fabrication price

Dear Mr Izzat,

The image provided, shows a hub-hole much larger than the value put on your drawing.

I've attached a PDF of the other detail dimensions and questions relating to the reel drawing provided.

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** izzi291095@gmail.com <izzi291095@gmail.com>
**Sent:** Friday, March 15, 2024 10:43 PM
**To:** Nick Canter <ncanter@daycoindustries.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>; Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Subject:** Re: ICG - DAYCO Fabrication price

Good afternoon
I am sending the file and the drawing of the coil, please check

Пятница, 15 марта 2024, 4:51 +05:00 от Nick Canter <ncanter@daycoindustries.com>:

Dear Mr Izzat,

Thank you for your reply.  Please see our answers.  Hope to have this concluded soon.

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** izzi291095@gmail.com <izzi291095@gmail.com>
**Sent:** Wednesday, March 13, 2024 11:08 PM
**To:** Nick Canter <ncanter@daycoindustries.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>; Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Subject:** Re: ICG - DAYCO Fabrication price

Good afternoon
Please check the file, there are comments on some points

Thank you in advance

Четверг, 14 марта 2024, 1:56 +05:00 от Nick Canter <ncanter@daycoindustries.com>:

Dear Anvar,

Thank you for your reply.  We'll look forward to your reply.

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Wednesday, March 13, 2024 1:00 PM
**To:** Nick Canter <ncanter@daycoindustries.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>; izzi291095 <izzi291095@gmail.com>
**Subject:** Re: RE: RE: ICG - DAYCO Fabrication price

Dear Nick

I will get the answer about packaging tomorrow.
Will send you answer tomorrow. Today technical department said they are checking last item.

Best regards

Отправлено из мобильной Почты Mail.ru

вторник, 12 марта 2024г. в 04:57 +05:00 от Nick Canter <ncanter@daycoindustries.com>:

Dear Anvar,

Would you please help update us on the packaging for the copper tube?

Best regards,

Nicholas Canter

10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Tuesday, February 27, 2024 12:37 AM
**To:** Nick Canter <ncanter@daycoindustries.com>; izzi291095 <izzi291095@gmail.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>
**Subject:** Re: RE: ICG - DAYCO Fabrication price

Dear Nicholas

Thank you for the mail.
Ok I got you. We are ready to start first order.
Our engineer from technical department mr Izzat is in CC. He will communicate with you about technical issues. So, he will study your requests and answer you by mail soon.

BR
Anvar

Отправлено из мобильной Почты Mail.ru

вторник, 27 февраля 2024г. в 05:55 +05:00 от ncanter <ncanter@daycoindustries.com>:

Dear Anvar,

We would like to set up a container trial soon. Although we need to verify Dayco's packaging requirements are met. Would ICG please acknowledgement that they will comply with this drawings 4 pages, which includes

1. Copper Specification
2. The Pallet Configuration
3. Material certification report, the coil labels, pallet labels and Full Listing of all Coil serial numbers the certification covers.
   1. The nylon strapping found on page 4.

Please note the strapping is not typically part of the packing for Dayco, but is for an specific account.

The attached document, 4 pages, each has a "Red Stamp" for specification approval.

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Thursday, February 22, 2024 12:24 AM
**To:** Nick Canter <ncanter@daycoindustries.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>
**Subject:** ICG - DAYCO Fabrication price

Dear Nicholas

We can offer you fabrication price per ton in FCA terms a following:
1. LME+800 USD with payment terms 30% deposit and 70% before loading;
2. LME+900 USD with payment terms 30% deposit and 70% after arrival to US port;
If you have any questions, feel free to contact me.

**Anvar Irsaliev**
**International Sales Department Manager**

**Web:** www.infinitycoppergroup.com
**E-mail:** anvar@infinitycoppergroup.com
**Mob/WhatsApp/Telegram:** +998998117222

**USA warehouses:**
28610 Hasley Canyon road Castaic California 91384, USA.

**USA main office:**
Address: 3124 S Parker Road A2-402 Aurora Colorado 80014, USA.

**1 Factory address:** Astrabad 22, Almazar district, Tashkent, Uzbekistan.
**2 Factory address:** Elbek 61, Yashnaobod district, Tashkent, Uzbekistan.
**3 Factory address:** Bunyodkor 85, Ohangaron town, Tashkent reg., Uzbekistan.

Четверг, 22 февраля 2024, 3:51 +03:00 от Nick Canter <ncanter@daycoindustries.com>:

Dear Anvar,

Please see the responses on the attached spreadsheet regarding the fittings.

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Sunday, February 18, 2024 9:07 PM
**To:** Nick Canter <ncanter@daycoindustries.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>
**Subject:** Re: ICG - DAYCO

Dear Nicholas

Hope you are well.
Please find attached comments about fittings.

**Anvar Irsaliev**
**International Sales Department Manager**

**Web:** www.infinitycoppergroup.com
**E-mail:** anvar@infinitycoppergroup.com
**Mob/WhatsApp/Telegram:** +998998117222

**USA warehouses:**
28610 Hasley Canyon road Castaic California 91384, USA.

**USA main office:**
Address: 3124 S Parker Road A2-402 Aurora Colorado 80014, USA.

**1 Factory address:** Astrabad 22, Almazar district, Tashkent, Uzbekistan.
**2 Factory address:** Elbek 61, Yashnaobod district, Tashkent, Uzbekistan.
**3 Factory address:** Bunyodkor 85, Ohangaron town, Tashkent reg., Uzbekistan.

Среда, 14 февраля 2024, 20:18 +03:00 от Nick Canter <ncanter@daycoindustries.com>:

Dear Anvar,

Glad we are now connected via email. Understood, thank you. I'll look forward to your reply after you have time to review.

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Tuesday, February 13, 2024 8:37 PM
**To:** Nick Canter <ncanter@daycoindustries.com>
**Cc:** zaid.muhhammad@akfagroup.com; Monty Thomas <mthomas@daycoindustries.com>
**Subject:** Re: ICG - DAYCO

Dear Nicholas

Thank you for your mail.
I got you. Will stady all information and reply you by next mails.

**Anvar Irsaliev**
**Head of International Sales Department**

**Web:** www.infinitycoppergroup.com
**E-mail:** anvar@infinitycoppergroup.com
**Mob/WhatsApp/Telegram:** +998998117222

**USA warehouses:**
28610 Hasley Canyon road Castaic California 91384, USA.

1 **Factory address:** Astrabad 22, Almazar district, Tashkent, Uzbekistan.
2 **Factory address:** Zbek1 16, Sassabod district, Tashkent, Uzbekistan.
3 **Factory address:** Bunyodkor 85, Ohangaron town, Tashkent reg., Uzbekistan.

Вторник, 13 февраля 2024, 20:39 +03:00 от Nick Canter <ncanter@daycoindustries.com>:

Dear Anvar,

Thank you for reaching out.  We sent a few emails to the other address and replied to your other email.  It seems it didn't go through.  Please see my original email below with the inquiry information needed.

*Dear Anvar,*

*Thank you very much for visiting Dayco.  We appreciate your time you spent with us.*

*As promised you requested us to send the inquiry for copper tubing converted to metrics.  Along with the copper fittings.  We also I have potential new account that I included on the bottom for quotation.  Please help review and let me know if you have any questions.*

| Copper Level Wound Coil Product Description | Inch OD | MM OD | Inch Wall | MM Wall | Inch Length | MM Length | Annual Usage Quantity |
|---|---|---|---|---|---|---|---|
| CTU .250" x .023" x Coil REEL C12200 O60 | 0.25 | 6.35 | 0.023 | 0.5842 | LWC | LWC | 3,927.00 |
| CTU .250" x .028" x Coil REEL C12200 O60 | 0.25 | 6.35 | 0.028 | 0.7112 | LWC | LWC | 25,499.00 |
| CTU .375" x .016" x Coil BULK ID GRV B743-B903 O50 | 0.375 | 9.525 | 0.016 | 0.4064 | LWC | LWC | 143,450.00 |
| CTU .375" x .023" x Coil REEL C12200 O60 | 0.375 | 9.525 | 0.023 | 0.5842 | LWC | LWC | 59,580.00 |
| CTU .375" x .024" x Coil BULK C12200 O50 | 0.375 | 9.525 | 0.024 | 0.6096 | LWC | LWC | 189,960.00 |
| CTU .375" x .025" x 72" C12200 O60 | 0.375 | 9.525 | 0.025 | 0.635 | 72 | 1828.8 | 1,397.00 |
| CTU .375" x .028" x Coil REEL C12200 O60 | 0.375 | 9.525 | 0.028 | 0.7112 | LWC | LWC | 105,873.00 |
| CTU .375" x .032" x Coil REEL C12200 O60 | 0.375 | 9.525 | 0.032 | 0.8128 | LWC | LWC | 17,353.00 |
| CTU .500" x .025" x Coil REEL C12200 O60 | 0.5 | 12.7 | 0.025 | 0.635 | LWC | LWC | 9,011.00 |
| CTU .500" x .028" x 120" C12200 O60 | 0.5 | 12.7 | 0.028 | 0.7112 | 120 | 3048 | 1,141.00 |
| CTU .500" x .030" x Coil REEL C12200 O60 | 0.5 | 12.7 | 0.03 | 0.762 | LWC | LWC | 28,386.00 |
| CTU .500" x .032" x Coil REEL C12200 O60 | 0.5 | 12.7 | 0.032 | 0.8128 | LWC | LWC | 3,132.00 |
| CTU .500" x .032" x 72" C12200 O60 | 0.5 | 12.7 | 0.032 | 0.8128 | 72 | 1828.8 | 388.00 |
| CTU .625" x .020" x Coil BULK C12200 O50 | 0.625 | 15.875 | 0.02 | 0.508 | LWC | LWC | 201,916.00 |
| CTU .625" x .020" x Coil REEL C12200 O50 | 0.625 | 15.875 | 0.02 | 0.508 | LWC | LWC | 29,337.00 |
| CTU .625" x .025" x Coil BULK C12200 O50 | 0.625 | 15.875 | 0.025 | 0.635 | LWC | LWC | 36,277.00 |
| CTU .625" x .025" x Coil REEL C12200 O60 | 0.625 | 15.875 | 0.025 | 0.635 | LWC | LWC | 17,386.00 |
| CTU .625" x .030" x Coil REEL C12200 O60 | 0.625 | 15.875 | 0.03 | 0.762 | LWC | LWC | 71,604.00 |
| CTU .625" x .035" x Coil BULK C12200 O50 | 0.625 | 15.875 | 0.035 | 0.889 | LWC | LWC | 114,845.00 |
| CTU .625" x .035" x Coil REEL C12200 O50 | 0.625 | 15.875 | 0.035 | 0.889 | LWC | LWC | 30,570.00 |
| CTU .625" x .049" x Coil BULK C12200 O50 | 0.625 | 15.875 | 0.049 | 1.2446 | LWC | LWC | 7,663.00 |
| CTU .750" x .0235" x Coil REEL C12200 O50 | 0.75 | 19.05 | 0.0235 | 0.5969 | LWC | LWC | 21,536.00 |
| CTU .750" x .028" x Coil REEL C12200 O60 | 0.75 | 19.05 | 0.028 | 0.7112 | LWC | LWC | 62,228.00 |
| CTU .750" x .032" x Coil REEL C12200 O60 | 0.75 | 19.05 | 0.032 | 0.8128 | LWC | LWC | 87,451.00 |
| CTU .750" x .032" x 72" C12200 O50 | 0.75 | 19.05 | 0.032 | 0.8128 | 72 | 1828.8 | 108.00 |
| CTU .750" x .035" x 120" C12200 O60 | 0.75 | 19.05 | 0.035 | 0.889 | 120 | 3048 | 2,243.00 |
| CTU .750" x .035" x Coil REEL C12200 O60 | 0.75 | 19.05 | 0.035 | 0.889 | LWC | LWC | 60,838.00 |
| CTU .875" x .038" x Coil REEL C12200 O60 | 0.875 | 22.225 | 0.038 | 0.9652 | LWC | LWC | 83,362.00 |
| CTU .875" x .040" x Coil REEL C12200 O60 | 0.875 | 22.225 | 0.04 | 1.016 | LWC | LWC | 38,395.00 |
| CTU .875" x .041" x Coil REEL C12200 O60 | 0.875 | 22.225 | 0.041 | 1.0414 | LWC | LWC | 125,750.00 |
| CTU .875" x .045" x 120" C12200 O60 | 0.875 | 22.225 | 0.045 | 1.143 | 120 | 3048 | 1,378.00 |

| Product Description | Inch OD | MM OD | Inch Wall | MM Wall | Inch Length | MM Length | Weight |
|---|---|---|---|---|---|---|---|
| CTU 1.000" x .032" x 144" STR LG | | | | | | | |
| CTU 1.125" x .045" x 120" STR LG C12200 O60 | 1.125 | 28.575 | 0.045 | 1.143 | 120 | 3048 | 140.00 |
| CTU 1.125" x .045" x Coil REEL C12200 O60 | 1.125 | 28.575 | 0.045 | 1.143 | 120 | 3048 | 1,163.00 |
| CTU 7/8" x TYPE-L x 20' STR LG B280 C12200 H58 | 1.125 | 28.575 | 0.045 | 1.143 | LWC | LWC | 38,349.00 |
| | | 0 | | 0 | 240 | 6096 | 171.00 |
| CTU 1-1/8" x TYPE-L x 20' STR LG B280 C12200 H58 | | 0 | | 0 | 240 | 6096 | 170.00 |
| CTU 1-3/8" x TYPE-L x 20' STR LG B280 C12200 H58 | | 0 | | 0 | 240 | 6096 | 35.00 |
| CTU 1-5/8" x .060" x 20'TYP L STRLG B280 C122 H58 | | 0 | | 0 | 240 | 6096 | 68.00 |
| CTU 3-1/8" x TYPE-L x 20' STR LG B280 C12200 H58 | | 0 | | 0 | 240 | 6096 | 1,805.00 |
| CTU 3-5/8" x TYPE-L x 20' STR LG B280 C12200 H58 | | 0 | | 0 | 240 | 6096 | 690.00 |
| CTU 4-1/8" x TYPE-L x 20' STR LG B280 C12200 H58 | | 0 | | 0 | 240 | 6096 | 11,442.00 |
| CTU 1-1/8" x TYPE-L x 20' STR LG B280 C12200 H58 | | 0 | | 0 | 240 | 6096 | 341.00 |
| CTU 1-3/8" x TYPE-L x 20' STR LG B280 C12200 H58 | | 0 | | 0 | 240 | 6096 | 248.00 |
| CTU 1-5/8" x .060" x 20'TYP L STRLG B280 C122 H58 | | 0 | | 0 | 240 | 6096 | 274.00 |
| CTU 6-1/8" x TYPE L x 10' STR LG B280 C12200 H58 | | 0 | | 0 | 120 | 3048 | 5,100.00 |
| CTU 7/8" TYPE-L 19' STR LG B280 C12200 H58 INC | | 0 | | 0 | 228 | 5791.2 | 174.00 |
| CTU 1-1/8" TYPE-L 19' STR LG B280 C12200 H58 INC | | 0 | | 0 | 228 | 5791.2 | 373.00 |
| CTU 1-5/8" TYPE-L 19' STR LG B280 C12200 H58 INC | | 0 | | 0 | 228 | 5791.2 | 108.00 |
| CTU 2-1/8" TYPE-L 19' STR LG B280 C12200 H58 INC | | 0 | | 0 | 228 | 5791.2 | 534.00 |
| CTU 3-1/8" TYPE-L 19' STR LG B280 C12200 H58 INC | | 0 | | 0 | 228 | 5791.2 | 4,239.00 |
| CTU 3-5/8" TYPE-L 19' STR LG B280 C12200 H58 INC | | 0 | | 0 | 228 | 5791.2 | 1,960.00 |
| CTU 4-1/8" TYPE-L 19' STR LG B280 C12200 H58 INC | | 0 | | 0 | 228 | 5791.2 | 9,207.00 |

| Copper Fittings Product Description | Inch OD | MM OD | Inch Wall | MM Wall | Inch Length | MM Length | Weight |
|---|---|---|---|---|---|---|---|
| CFG .625" x .035" x 11.875" "C" BEND C12200 H55 | 0.625 | 15.875 | 0.035 | 0.889 | 11.875 | 301.625 | 15.00 |
| CFG .625" x .035" x 5.4375" "C" BEND C12200 H55 | 0.625 | 15.875 | 0.035 | 0.889 | 5.4375 | 138.1125 | 2,300.00 |
| CFG :625" x .035" x 7.5625" "C" BEND C12200 H55 | 0.625 | 15.875 | 0.035 | 0.889 | 7.5625 | 192.0875 | 3,330.00 |
| CFG .625" x .035" x 9.750" "C" BEND C12200 H55 | 0.625 | 15.875 | 0.035 | 0.889 | 9.75 | 247.65 | 1,091.00 |
| CFG .625" x .035" x 3.3125" RTN BEND C12200 H55 | 0.625 | 15.875 | 0.035 | 0.889 | 3.3125 | 84.1375 | 7,193.00 |
| CFG .625" x .035" x 1.250" RTN BEND C12200 H55 | 0.625 | 15.875 | 0.035 | 0.889 | 1.25 | 31.75 | 0.00 |
| CFG .625" x .035" x 3.500" RTN BEND C12200 H55 | 0.625 | 15.875 | 0.035 | 0.889 | 3.5 | 88.9 | 681.00 |
| CFG .625" x .035" x 1.250" RTN BEND W/SR C122 H55 | 0.625 | 15.875 | 0.035 | 0.889 | 1.25 | 31.75 | 4,650.00 |

| Part Number | Part Description | L2 | L3 | L4 | Unit of Measure | Estimated Annual Usage |
|---|---|---|---|---|---|---|
| 7836 | TUBE,COP-.625 OD SERV VLV | Metal Shapes | Bent Tube | Copper | EA | 2,678 |
| 10667 | TUBE COPPER 0.250 OD | Metal Shapes | Bent Tube | Copper | EA | 9,270 |
| 15784 | HEAT EXCHANGER ASSY 48 INCH | Metal Shapes | Bent Tube | Copper | EA | 4,857 |
| 1055213 | 3/8 TUBE ASS'Y-20' | Metal Shapes | Bent Tube | Copper | EA | 90 |
| 1055243 | 1/2 TUBE ASS'Y-35' | Metal Shapes | Bent Tube | Copper | EA | 967 |
| 1055293 | 3/8 TUBE ASS'Y- | Metal Shapes | Bent Tube | Copper | EA | 455 |

| Part Number | Description | Category | Type | Material | UOM | Qty |
|---|---|---|---|---|---|---|
| 1055583 | 5/16 TUBE ASSY - 90 | Metal Shapes | Bent Tube | Copper | EA | 947 |
| 1055753 | RESTRICTOR TUBE | Metal Shapes | Bent Tube | Copper | EA | 950 |
| 6062861 | TUBE - 0.625 OD | Metal Shapes | Bent Tube | Copper | EA | 615 |
| 6216414 | TUBE COP PROCESS 1/4 | Metal Shapes | Bent Tube | Copper | EA | 58,051 |
| 40007624 | TUBE CAP/RESTRICTOR .031X90 | Metal Shapes | Bent Tube | Copper | EA | 5,837 |
| 10541 | TEE COP 3/8 X 5/16 X 1/4 CXCXC | Metal Shapes | Fittings | Copper | EA | 45,500 |
| 14597 | PLUG COPPER 0.250 OD | Metal Shapes | Fittings | Copper | EA | 3,630 |
| 470418 | RDCR COPR 5/8X3/8 | Metal Shapes | Fittings | Copper | EA | 5,220 |
| 474336 | TEE COPPER 1/2in | Metal Shapes | Fittings | Copper | EA | 14,500 |
| 1300131 | TEE COP 3/8 CXCXC | Metal Shapes | Fittings | Copper | EA | 98,800 |
| 1300151 | TEE COP 3/8 X 3/8 X 1/4 CXCXC | Metal Shapes | Fittings | Copper | EA | 79,000 |
| 1307511 | TEE COP 3/8 X 1/4 X 1/4 CXCXC | Metal Shapes | Fittings | Copper | EA | 40,000 |
| 8305213 | ELBOW, 90 DEG. 1/2 OD FTG X C | Metal Shapes | Fittings | Copper | EA | 5,650 |
| 8307633 | TEE-COP  1/2 X 1/4 X 1/2 CXCXC | Metal Shapes | Fittings | Copper | EA | 500 |
| 8310063 | DISTRIBUTOR 1/2 X TWO 1/2 OD | Metal Shapes | Fittings | Copper | EA | 1,500 |
| 4002 | 3/8OD X 0.024 LIGHT ANNEAL CU | Metals | Tube | Copper | IN | 129,644 |
| 473021 | PIPE COPPER ROLL 7/8" SOFT 50' | Metals | Tube | Copper | FT | 76,362 |
| 473118 | TUBE COPPER 1/2" SOFT | Metals | Tube | Copper | FT | 136,824 |

Best regards,

Nicholas Canter
Purchasing
Dayco Industries
10205 San Sevaine Way, Mira Loma, CA 91752
Direct Line)951-404-0587 / F)951-360-5999

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Tuesday, February 13, 2024 4:08 AM
**To:** Nick Canter <ncanter@daycoindustries.com>
**Cc:** zaid.muhhammad@akfagroup.com
**Subject:** ICG - DAYCO

Dear Nicholas

Hope you are well.
Thank you for warm meeting at your company during my stay in California.
I am sending you mail from my another mailbox, hope you will get it and reply.

**Anvar Irsaliev**
**Head of International Sales Department**

**Web:** www.infinitycoppergroup.com
**E-mail:** anvar@infinitycoppergroup.com
**Mob/WhatsApp/Telegram:** +998998117222
**Mob/Telegram USA:** +13125156957

**USA warehouses:**
28610 Hasley Canyon road Castaic California 91384, USA.

**USA main office:**
Address: 3124 S Parker Road A2-402 Aurora Colorado 80014, USA.
Direct 720-2613773
Toll: 877-4248727(ICGUSA7) ext 101.
Main: 720-9435063
Fax: 303-2760438

**1 Factory address:** Astrabad 22, Almazar district, Tashkent, Uzbekistan.
**2 Factory address:** Elbek 61, Yashnaobod district, Tashkent, Uzbekistan.
**3 Factory address:** Bunyodkor 85, Ohangaron town, Tashkent reg., Uzbekistan.

--

Отправлено из Почты Mail.ru

--

Отправлено из Почты Mail.ru

--

Отправлено из Почты Mail.ru

**From:** Jasmine Kostanyan

**Sent on:** Monday, December 2, 2024 8:17:30 PM

**To:** Anvar Irsaliev

**CC:** Sales AGF

**Subject:** Re: Shipping

Anvar,please advise warehouse location. Zip code

Get Outlook for Android

**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Monday, December 2, 2024 5:28:41 PM
**To:** Jasmine Kostanyan <Jasmine@agfreights.com>
**Cc:** Sales AGF <sales@agfreights.com>
**Subject:** Re: Shipping

Hi

Exw please
Отправлено с iPhone

> 3 дек. 2024 г., в 04:37, Jasmine Kostanyan <Jasmine@agfreights.com> написал(а):

Dear Anvar,

Sorry to disturbing You.
Can You please advise if I need to check EXW charges as well?
Or You will load and bring the goods to port by yourself?


Regards,

Jasmine (Hasmik) Kostanyan
American Global Freights

Mob: +18187201521
Email: jasmine@agfreghts.com
www.agfreights.com
<image008.png>
<image009.png>


FMC-Licensed NVOCC OTI#031665NF
WCA ID: 144028


**From:** Anvar Irsaliev <anvar@infinitycoppergroup.com>
**Sent:** Monday, December 2, 2024 9:06 AM
**To:** Jasmine Kostanyan <Jasmine@agfreights.com>

Dear Jasmine

Goods are copper pipes.
Total weight around 55 tons.
It is copper pipes for scrap, so no need pay attention for quality. We will melt them when we get goods to Uzbekistan. So we can load  full container regarding to the weight.
Destination is Astrabad-22, Tashkent, Uzbekistan.
I attached some pictures.

Best regards
Anvar

<image003.jpg>
<image004.jpg>
<image005.jpg>
<image006.jpg>
<image007.jpg>

Отправлено с iPhone

2 дек. 2024  г., в 21:47, Jasmine Kostanyan <Jasmine@agfreights.com> написал(а):

Dear Anvar,

Good day.
Can You please advise more info regarding shipment?
Weight, commodity type, and destination address and so on.

Thank You

Regards,

Jasmine (Hasmik) Kostanyan
American Global Freights

Mob: +18187201521
Email: jasmine@agfreghts.com
 www.agfreights.com
<image005.png>
<image006.png>

FMC-Licensed NVOCC OTI#031665NF
WCA ID: 144028

**From:** Ari Baghdasaryan <ari@agfreights.com>
**Sent:** Sunday, December 1, 2024 10:37 PM
**To:** Anvar Irsaliev <anvar@infinitycoppergroup.com>; Jasmine Kostanyan <Jasmine@agfreights.com>; Sales

**Subject:** Re: Shipping

Hi Anvar

Thanks for inquiry adding Jasmine to follow up.
She will up for all other your inquiries

Regards,

Ari Baghdasaryan

American Global Freights
P. +1 (213) 569-5360
M. +1 (386) 627-1006
W. www.agfreights.com

<image003.png>
<image004.png>

FMC-Licensed NVOCC OTI#031665NF
WCA ID: 144028

On Dec 1, 2024, at 9:49 PM, Anvar Irsaliev <anvar@infinitycoppergroup.com> wrote:

Hello Hovik

Please send price for shipping from LA to Tashkent goods as last time (re export).
20'
40'
Contsiners

Отправлено с iPhone

**Sent on:** Sunday, January 26, 2025 7:54:11 PM
**To:** Akmal Koridov; Akmalkhuja Kodirov
**Subject:** Shareholder and Manager Response Required
**Attachments:** 20250126 - Akmal (President) Response.pdf (363.75 KB)


Hi Akmal,

Please respond to the attached email as soon as possible, no later than 4 days. We have received requests for the inventory of the product.

We need to decide the next steps and about the product requested by ICG UZ.

FYI: We also did not receive response for January 13th email. Please make sure we have an official response.

We hope that all of us continue to work together.

Thanks,

**Serge Zaikin**

*Chief Technology Officer*

serge@infinitycoppergroup.com



## Infinity Copper Group USA LLC

20-201-5209

infinitycoppergroup.com

124 S Parker Road A2-402

Aurora Colorado 80014, USA



# Reusable Enve

# Recycle me.

TO REUSE: Mark through all previous shipping labels and barcodes.

ORIGIN ID:DENA  (720) 261-3773
ARTOUR AROUTIOUNOV

9999 E YALE AVE
APT D-206
DENVER, CO 80231
UNITED STATES US

SHIP DATE: 02JUN26
ACTWGT: 1.90 LB
CAD: 6570238/ROSA2710

TO UNITED STATES DISTRICT COURT
ATTN: CLERK OF THE COURT
333 WEST BROADWAY
STE 420
SAN DIEGO CA 92101

(800) 216-1190          REF:
INV:
PO:                              DEPT:

**FedEx**
Express

**E**

THU – 04 JUN 5:00P
** 2DAY **

TRK# 8725 5423 1683
0201

SS SDMA

92101
CA-US  SAN



Align bottom of peel-and-stick airbill or pouch here.

▶ ▶ ▶ Pull to open.

This envelope is reusable. If it is still in good shape, use it again for your next FedEx® shipment.

Pull to open. ◀ ◀ ◀

02/21/25 00:38



**New envelopes are only for FedEx Express® shipments.
Reuse for any FedEx® shipment.**

You can help us get your package safely to its destination by packing your items securely. Need help? Go to **fedex.com/packaging** for packing tips.

Check your FedEx shipping document, the current FedEx Service Guide, or the conditions of carriage for complete terms, conditions, and limits of liability.

© 2023 FedEx 158011 REV 11/23



PAP 21

Please reuse; then recycle. See how we are connecting the world in responsible and resourceful ways at **fedex.com/sustainability**. Recycling options may vary by location.



RECEIVED
June 04, 2026
U.S. District Court
STN DISTRICT OF CALIFORNIA
DEPUTY



Made from 100% recycled paperboard



**Scan to learn how we can help make Earth a priority together.**