**Ruochen Liu   SBN 350852**
7 Day Attorneys, APC
100 N. Barranca St., #7060
West Covina, CA 91791
Phone: (314)285-5165
Email: RuochenLiu.Esq@gmail.com
Attorney for Plaintiff Metal Processing Technology LTC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Metal Processing Technology LTC,** | Case No.:  **3:26-CV-02762-DMS-SBC** |
| **Plaintiff,** | **FIRST AMENDED COMPLAINT FOR DAMAGES FOR:** |
| **vs.** | 1. **FRAUD BY INTENTIONAL MISREPRESENTATION;** |
| **ICG USA, LLC; Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova; AMERICAN GLOBAL FREIGHTS [A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.; MAERSK LOGISTICS & SERVICES USA INC.; Ararat Baghdasaryn [aka alter ego of American Global Freights ] and DOES 1 – 5, Inclusive,** | 2. FRAUD BY FALSE PROMISE [**PROMISSORY FRAUD**]; |
| | 3. CONVERSION; |
| | 4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; |
| | 5. CIVIL CONSPIRACY; |
| **Defendants.** | 6. NEGLIGENCE **Respondeat Superior;** |
| | 7. Breach of Written Contract |
| | 8. Negligence; |
| | and Demand for Jury Trial |
| | Courtroom:  13A (13th Flr) |
| | Judge: Hon. Dana M. Sabraw |

**COMES** METAL PROCESSING TECHNOLOGY LTC., herein referred to as "plaintiff"

in support of this Complaint for Damages hereby complains, alleges and states as follows:

The amount of damages sought in this case is more than **$35,000.**

The address for each party to this action is as follows-

10. Defendant Emilia Arutyunova aka **Emiliya Aroutiounov** at all times herein mentioned maintained her address of 2878 Beech St., **San Diego, California 92102**

11. **ICG USA LLC's** principal address is 2878 BEECH ST SAN DIEGO, CA 92102. Their agent for service of process is Emiliya Arutyunova at the address of **2878 Beech St., San Diego, California 92102.**

### ALTER EGO THEORY:

**Emilia Arutyunova** aka Emiliya Aroutiounov is the primary managing member for ICG USA LLC, owns at least 1/3 of the company, and acted, participated and conspired in the fraudulent acts and omissions Alleged herein. Therefore, Emilia Arutyunova is the alter ego of ICG USA LLC.

**Artour Aroutiounov** aka Artour Arutyunova is a managing member for ICG USA LLC, owns at least 1/3 of the company, and acted, participated and conspired in the fraudulent acts and omissions Alleged herein. Therefore, Artour Aroutiounov is the alter ego of ICG USA LLC.

12. **American Global Freights** is located at 910 Lorinda Dr., Glendale, California 91206. The agent for service of process is: Ararat Baghdasaryan whose address is 910 Lorinda Dr., Glendale, CA 91206. American Global Freights **owed a duty to Plaintiff to ascertain that Plaintiff was paid** for the cargo delivered to a California port, but neglected to perform its duties owed to Plaintiff.

13. **Maersk Customs Services USA Inc**. is located at 180 Park Avenue, Florham Park, **New Jersey** 07932. Maersk Customs Services USA Inc.

First Amended Complaint for damages  06/24/26

**owed a duty to Plaintiff to ascertain that Plaintiff was paid for the cargo delivered** to a California port, but neglected to perform its duties owed to Plaintiff. The agent for service of process is CT Corporation.

14. **Maersk Logistics & Services USA Inc.** is located at 180 Park Avenue, Florham Park, **New Jersey** 07932. The agent for service of process is CT Corporation.

6. Maersk Logistics & Services USA Inc. **owed a duty to Plaintiff to ascertain that Plaintiff was paid for the cargo delivered** To a California port, but neglected to perform its duties owed to Plaintiff.

*The damages exceed $400,000 based on the value of the goods which were converted from Plaintiff's possession without being paid for.*

Parties to the action

7. DOES 1 – 20 made additional contacts with Plaintiff through a civil conspiracy, and also participated and conspired in defrauding Plaintiff, converting Plaintiff's money to their own and participated in fraud on Plaintiff.

8. Plaintiff **will amend the complaint when they discover the names of the two trusts** which are currently sued as DOES.

9. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-20, inclusive, and therefore sues these defendants by such fictitious names.

10. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is negligently responsible in some manner for the occurrences herein alleged, and that plaintiff's losses as herein alleged were proximately caused by such acts and omissions.

11. Plaintiff will amend the complaint to allege their true names and capacities when ascertained.

12. Plaintiff seeks Punitive damages based because Defendants engaged in malicious, oppressive, fraudulent, wanton and outrageous conduct.

PUNTIVE DAMAGES ARE WARRANTED.

13. The malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of the business entity defendants named, who acted on behalf of the business entity named defendants.

14. An officer, a director, or a managing agent of the business entity-named defendants had advanced knowledge of the unfitness of the individually named defendants and employed those defendants with a knowing disregard of the rights or safety of others.

15. The conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of the business entity-named defendants.

16. One or more officers, directors, or managing agents of the business entity-named defendants knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

### FIRST CAUSE OF ACTION for FRAUD by Intentional Misrepresentation
against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

**17.** The plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-18, inclusive of the complaint.

18. On or about **April 8, 2024,** Ararat Baghdasaryan on behalf of American Global Freights Entered into a written agreement with Nodirkhonov A.N. on behalf of Metal Processing

Technology.

19. American Global Freights was to act as the freight forwarder involving the shipment of 405 packages of pipes of refined copper, which weighed 2,991.289 KGs.

20. Per the agreement, the port of discharge would be in Los Angeles, California.

21. On or about April 8, 2023 Metal Processing Technology entered into a written agreement with ICG USA LLC. Whereas ICG USA LLC agreed to purchase 405 packages of copper. The California Secretary  of State Business Entity Website shows defendant **Emilya Arutyunova as the agent for service of process** as to the business entity, ICG USA LLC.

22. On or about **June 20, 2024, the shipped and purchased merchandise arrived to Customs Clearance Los Angeles, California. The shipment consisted of 31 Coils of refined Copper Pipes which had a gross weight of 13926.000 KGS AND 600 Unpacked refined copper pipes weighing 8222.000 KGS.**

23. Defendants were required to pay Plaintiff in full in the amount of over $400,000 after receiving the shipment. However, *defendants received and kept the shipment of the $400,000 valued copper refined pipes without remitting the required payment to Plaintiff*

24. Defendant Maersk was the entity owing a duty to Plaintiff to collect the payment from ICG, Emiliya and Artour Aroutiounov.

25. Therefore, the Promise made by defendants and their company was deemed Broken, and is now being referenced as a "false Promise" constituting **fraud.**

**re. Emilia Arutyunova**

26.  Emilia represented that she would pay the full fee for the copper pipes after Plaintiff Metal Processing Technology LTC would have it shipped to them.

27. Defendant Emilia's representation was false.

First Amended Complaint for damages  06/24/26

28.  Defendant Emilia  knew that the representation was false when she made it, and she made the representation recklessly and without regard for its truth.

29. Emilia intended that Metal Processing Technology LTC and owners rely on the representation,

30.  The owners of Metal Processing Technology LTC reasonably relied on Emilia's Representation.

31. Plaintiff Metal Processing Technology LTC and their owners were harmed.

32. Plaintiff Metal Processing Technology's reliance on Emilia's representation was a substantial factor in causing the harm.

33. An agent or employee Defendant entity made a false representation that harmed Plaintiff Metal Processing Technology LTC..

RE. ICG USA, LLC

## re. Emilia Arutyunova

15.  ICG USA, LLC's managing members represented that she would pay the full fee for the copper pipes after Plaintiff Metal Processing Technology LTC would have it shipped to them.

16. Defendant ICG USA LLC's representation was false.

17.  Defendant ICG USA LLC  knew that the representation was false when she made it, and they made the representation recklessly and without regard for its truth.

18. ICG USA LLC ntended that Metal Processing Technology LTC and owners rely on the representation,

19.  The owners of Metal Processing Technology LTC reasonably relied on ICG USA's

First Amended Complaint for damages  06/24/26

Representation.

20. Plaintiff Metal Processing Technology LTC and their owners were harmed.

21. Plaintiff Metal Processing Technology's reliance on ICG USA LLC's representation was a substantial factor in causing the harm.

22. An agent or employee Defendant entity made a false representation that harmed Plaintiff Metal Processing Technology LTC..

### 23.        RE.: Artour Aroutiounov

24.  **Artour** represented that she would pay the full fee for the copper pipes after Plaintiff Metal Processing Technology LTC would have it shipped to them.

25. Defendant **Artour's** representation was false.

26.  Defendant **Artour** knew that the representation was false when she made it, and she made the representation recklessly and without regard for its truth.

27. **Artour** intended that Metal Processing Technology LTC and owners rely on the representation,

**28.**  The owners of Metal Processing Technology LTC reasonably relied on **Artour's** representation.

29. Plaintiff Metal Processing Technology LTC and their owners were harmed.

**30.** Plaintiff Metal Processing Technology's reliance on **Artour's** representation was a substantial factor in causing the harm.

**re. MAERSK CUSTOMS SERVICES USA INC.;**

MAERSK LOGISTICS & SERVICES USA INC.;

31. **Maersk and their corporate officers** represented that she would pay the full fee for the copper pipes after Plaintiff Metal Processing Technology LTC would have it shipped to them.

First Amended Complaint for damages  06/24/26

32. Defendant **Maersk and their corporate officers**  representation was false.

33.  Defendant **Artour** knew that the representation was false

when she made it, and she made the representation recklessly and

without regard for its truth.

34. **Maersk and their Corporate officers** intended that Metal Processing Technology LTC and

owners rely on the representation.

**35.**  The owners of Metal Processing Technology LTC reasonably relied on **Maersk's**

representation.

36. Plaintiff Metal Processing Technology LTC and their owners were harmed.

**37.** Plaintiff Metal Processing Technology's reliance on **Maersk's**

representation was a substantial factor in causing the harm.

38. An agent or employee Defendant entity made a false representation

that harmed Plaintiff Metal Processing Technology LTC..

39. Plaintiff is informed and believes that defendants all acted, conspired and participated

in a HOAX, implemented by fraud, to trick plaintiff out of his money.

**See California Civil Jury Instructions (CACI)**

CACI # **1900. Essential Elements for an Action for Intentional Misrepresentation**

40. WHEREFORE, plaintiff prays for judgment in their favor against defendants and

DOES 1 to 20 for general damages in the amount

of $According to Proof of at least $35,000, or in the amount of $425,000 if judgement is

to be entered by Default.

First Amended Complaint for damages  06/24/26

**SECOND CAUSE OF ACTION FOR**
**PROMISSORY FRAUD**
against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

**41.** The plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-29, inclusive of the complaint.

See **CACI #1902**.False Promise

42.  On or about April 8, 2024, Ararat Baghdasaryan on behalf of American Global Freights Entered into a written agreement with Nodirkhonov A.N. on behalf of Metal Processing Technology.

43. American Global Freights was to act as the freight forwarder involving the shipment of 405 packages of pipes of refined copper, which weighed 2,991.289 KGs.

44. Per the agreement, the port of discharge would be in Los Angeles, California.

45. On or about April 8, 2023 Metal Processing Technology entered into a written agreement with ICG USA LLC. Whereas ICG USA LLC agreed to purchase 405 packages of copper.

34. On or about **April 8, 2024,** Ararat Baghdasaryan on behalf of American Global Freights Entered into a written agreement with Nodirkhonov A.N. on behalf of Metal Processing Technology.

35. American Global Freights was to act as the freight forwarder involving the shipment of 405 packages of pipes of refined copper, which weighed 2,991.289 KGs.

36. Per the agreement, the port of discharge would be in Los Angeles, California.

37. On or about April 8, 2023 Metal Processing Technology entered into a written agreement with ICG USA LLC. Whereas ICG USA LLC agreed to purchase 405 packages of copper. The California Secretary of State Business Entity Website shows defendant **Emilya Arutyunova as the agent for service of process** as to the business entity, ICG USA LLC.

38. On or about **June 20, 2024, the shipped and purchased merchandise arrived to Customs Clearance Los Angeles, California. The shipment consisted of 31 Coils of refined Copper Pipes which had a gross weight of 13926.000 KGS AND 600 Unpacked refined copper pipes weighing 8222.000 KGS.**

39. Defendants were required to pay Plaintiff in full in the amount of over $400,000 after receiving the shipment. However, *defendants received and kept the shipment of the $400,000 valued copper refined pipes without remitting the required payment to Plaintiff*

40. Therefore, the Promise made by defendants and their company was deemed Broken, and is now being referenced as a "false Promise" constituting **fraud.**

34. On or about **April 8, 2024,** Ararat Baghdasaryan on behalf of American Global Freights Entered into a written agreement with Nodirkhonov A.N. on behalf of Metal Processing Technology.

35. American Global Freights was to act as the freight forwarder involving the shipment of 405 packages of pipes of refined copper, which weighed 2,991.289 KGs.

36. Per the agreement, the port of discharge would be in Los Angeles, California.

37. On or about April 8, 2023 Metal Processing Technology entered into a written agreement with ICG USA LLC. Whereas ICG USA LLC agreed to purchase 405 packages of copper. The California Secretary of State Business Entity Website shows defendant **Emilya Arutyunova as the agent for service of process** as to the business entity, ICG USA LLC.

First Amended Complaint for damages  06/24/26

38. On or about **June 20, 2024, the shipped and purchased merchandise arrived to Customs Clearance Los Angeles, California.**

**The shipment consisted of 31 Coils of refined Copper Pipes which had a gross weight of 13926.000 KGS AND 600 Unpacked refined copper pipes weighing 8222.000 KGS.**

39. Defendants were required to pay Plaintiff in full in the amount of over $400,000 after receiving the shipment. However, *defendants received and kept the shipment of the $400,000 valued copper refined pipes without remitting the required payment to Plaintiff*

40. Defendant Maersk was the entity owing a duty to Plaintiff to collect the payment from ICG, Emiliya and Artour Aroutiounov.

41. Therefore, the Promise made by defendants and their company was deemed Broken, and is now being referenced as a "false Promise" constituting **fraud.**

**re. Emilia Arutyunova**

42.  Emilia represented that she would pay the full fee for the copper pipes after Plaintiff Metal Processing Technology LTC would have it shipped to them.

43. Defendant Emilia's representation was false.

44.  Defendant Emilia  knew that the representation was false when she made it, and she made the representation recklessly and without regard for its truth.

45. Emilia intended that Metal Processing Technology LTC and owners rely on the representation,

46.  The owners of Metal Processing Technology LTC reasonably relied on Emilia's Representation.

47. Plaintiff Metal Processing Technology LTC and their owners were harmed.

48. Plaintiff Metal Processing Technology's reliance on Emilia's

representation was a substantial factor in causing the harm.

49. An agent or employee Defendant entity made a false representation

that harmed Plaintiff Metal Processing Technology LTC..

RE. ICG USA, LLC

## re. Emilia Arutyunova

46.  ICG USA, LLC's managing members represented that she would pay the full fee for the copper pipes after Plaintiff Metal Processing Technology LTC would have it shipped to them.

47. Defendant ICG USA LLC's representation was false.

48.  Defendant ICG USA LLC  knew that the representation was false when she made it, and they made the representation recklessly and without regard for its truth.

49. ICG USA LLC ntended that Metal Processing Technology LTC and owners rely on the representation,

50.  The owners of Metal Processing Technology LTC reasonably relied on ICG USA's Representation.

51. Plaintiff Metal Processing Technology LTC and their owners were harmed.

52. Plaintiff Metal Processing Technology's reliance on ICG USA LLC's representation was a substantial factor in causing the harm.

53. An agent or employee Defendant entity made a false representation that harmed Plaintiff Metal Processing Technology LTC..

## 54.        RE.: Artour Aroutiounov

55.  **Artour** represented that she would pay the full fee for the copper pipes after Plaintiff Metal Processing Technology LTC would have it shipped to them.

56. Defendant **Artour's** representation was false.

57. Defendant **Artour** knew that the representation was false when she made it, and she made the representation recklessly and without regard for its truth.

58. **Artour** intended that Metal Processing Technology LTC and owners rely on the representation,

**59.** The owners of Metal Processing Technology LTC reasonably relied on **Artour's** representation.

60. Plaintiff Metal Processing Technology LTC and their owners were harmed.

**61.** Plaintiff Metal Processing Technology's reliance on **Artour's** representation was a substantial factor in causing the harm.

**re. MAERSK CUSTOMS SERVICES USA INC.;**

aka MAERSK LOGISTICS & SERVICES USA INC.;

62. **Maersk and their corporate officers** represented that she would pay the full fee for the copper pipes after Plaintiff Metal Processing Technology LTC would have it shipped to them.

63. Defendant **Maersk and their corporate officers** representation was false.

64. Defendant **Artour** knew that the representation was false when she made it, and she made the representation recklessly and without regard for its truth.

65. **Maersk and their Corporate officers** intended that Metal Processing Technology LTC and owners rely on the representation.

**66.** The owners of Metal Processing Technology LTC reasonably relied on **Maersk's** representation.

First Amended Complaint for damages  06/24/26

41. Therefore, the Promise made by defendants and their company was deemed Broken, and is now being referenced as a "false Promise" constituting **fraud.**

42. An agent or employee Defendant entity made a false representation that harmed Plaintiff Metal Processing Technology LTC..

43. Defendants and DOES intended that Plaintiff Metal Processing Technology LTC. rely on this promise.

Plaintiff  reasonably relied on Defendants' and DOES' Defendant's promise.

44. Defendants and DOES did not perform the promised act.

Plaintiff Metal Processing Technology LTC. was harmed.

45. Plaintiff Metal Processing Technology LTC.'s reliance on DOE Defendant's promise was a

46. substantial factor in causing their harm.

47. **re.  ICG USA, LLC**

Around August 5, 2024, Metal Processing Technology LTC. received a letter from

• Deceit. Civil Code section 1710.
• " ' "Promissory fraud" is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.' " (Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 973-974 [64 Cal.Rptr.2d 843, 938 P.2d 903], internal citations omitted.)

Also, CACI #1907

Plaintiff relied on DOE Defendant's false promise

48. Plaintiff is informed and believes that defendants all acted, conspired and participated in a HOAX, implemented by fraud, to trick plaintiff out of his money.

49. WHEREFORE, plaintiff prays to the court for relief for general damages in the amount

$ According to Proof of at least $35,001 or in the amount of $425,000 if judgment is to be taken by default.

**THIRD CAUSE OF ACTION**

**FOR CONVERSION**
against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

50. The plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-49, inclusive of the complaint.

See CACI # 2100

51. Plaintiff Metal Processing Technology LTC. claims that Defendants and DOES 1-20 wrongfully exercised control over their money **in excess of $450,000.**

52. Plaintiff Metal Processing Technology LTC. had the right to possess the money that was in his bank.

53. Defendants and DOES 1-20 substantially interfered with Plaintiff Aridis Pharmaceuticals Inc.'s property by knowingly or intentionally taking possession of over $450,000 [Two Hundred and Fifty Thousand Dollars] in money by False Pretenses, by Trick and by Hoax *using duress and false statements* as the means to defraud Plaintiff and extort money from plaintiff Metal Processing Technology LTC.

54. Plaintiff did not consent to giving Defendant $450,000 **in excess of the agreed rent** that had been agreed pursuant to a prior rental agreement.

55. Plaintiff Metal Processing Technology LTC. was harmed.

56. Defendant and DOES 1-20's conduct was a substantial factor in causing plaintiff's harm.

57. Defendant and DOES 1-20'S wrongful acts and omissions were a substantial factor in causing Plaintiff's harm.

58. WHEREFORE, plaintiff prays to the court for relief for general damages in the amount According to proof of at least $35,001, <u>if judgment is to be taken by default, then the Judgment demand would be $825,000,</u> **or in the alternative for return of the merchandise** <u>Plus reasonable damages for diminished value, wear and damage to merchandise</u>

<u>FOURTH</u> CAUSE OF ACTION FOR **INTENTIONAL** <u>**INFLICTION OF EMOTIONAL DISTRESS**</u>
against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

59. The plaintiff refers to and incorporates, as though fully set forth herein, Paragraphs 1-58, inclusive of the complaint.

60. On or about the above-mentioned dates, defendants, and each of them, did each of their acts to intentionally inflict emotional distress upon the corporate officers of Metal Processing Technology LTC..

61. Wherefore, plaintiff did or does seek medical attention to sooth the anguish and mental suffering caused by defendants.

[See CACI # 1600 ]

62. Defendants and DOES 1-20's conduct was outrageous.

63. Defendants and DOES 1-20 intended to cause Plaintiff emotional distress.

64. Defendants and DOES 1-20 acted with reckless disregard of the probability that

First Amended Complaint for damages   06/24/26

65. Plaintiff would suffer emotional distress, knowing that Plaintiff Metal Processing Technology LTC. was present when the conduct occurred.

66. Plaintiff Metal Processing Technology LTC.'s corporate officers suffered severe emotional distress

67. Defendants and DOES 1-20's conduct was a substantial factor in causing Plaintiff severe emotional distress.

[Also, See CACI #1602]

Plaintiff seeks declaratory adjudication as to the following questions of fact:

(a) Whether defendants abused a position of authority or a relationship that gave them  real or apparent power to affect plaintiff's interests;

(b) Whether defendants  knew that plaintiff was particularly vulnerable to emotional distress; and

(c) Whether defendants knew that their conduct would likely result in harm due to mental distress.

68. WHEREFORE, plaintiff prays to the court for relief for general damages in the amount According to proof of at least $35,001, if judgment is to be taken by default, then the Judgment demand would be $825,000

### FIFTH CAUSE OF ACTION FOR
### CIVIL CONSPIRACY
against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

69. Plaintiff refers to and incorporates by this reference each allegation set forth in

17

**Paragraphs 1 through 68** thereof, inclusive, as if alleged herein in full.

70. On or about the above-stated dates, Plaintiff was harmed emotionally, based on defendants' conspiracy to act, conspire and participate "in concert" as to each Allegation contained in the causes of action alleged in this complaint.

71. Defendants and DOES 1-20 are responsible for the harm because they were part of a conspiracy to commit each act and omission alleged in this complaint.

72. A conspiracy is an agreement by two or more persons to commit a wrongful act.

73. Such an agreement may be made orally or in writing or may be implied by the conduct of the parties.

74. Defendants and DOES 1-20 committed each wrong act and omission that harmed Plaintiff.

75. Each Defendant was aware that the co-defendants planned to Commit each act and omission described in the complaint with intent to Harm Plaintiff.

76. Each Defendant agreed with the coconspirator and intended that each wrongful act and omission alleged herein be committed against Plaintiff to cause Plaintiff harm  [As described in **CACI #3600**].

**SIXTH CAUSE OF ACTION FOR**
**NEGLIGENCE-RESPONDEAT SUPERIOR [VICARIOUS LIABILITY]**
against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

77. Plaintiff refers to and incorporates by this reference each allegation set forth in **Paragraphs 1 through 76** thereof, inclusive, as if alleged herein in full.

78.   AS TO CONTRACT WITH AMERICAN GLOBAL FREIGHT

18
First Amended Complaint for damages  06/24/26

79. On or about the date of February 6, 2024, Plaintiff Metal Processing Technology LLC and American Global Freights  entered into a contract;

The terms and conditions of the said written contract, in general were as follows

Plaintiff agreed to pay for Freight Forwarding as to a shipment of approximately $500,000 in precious metals

80.  In return for plaintiff's performance, defendants American Global Freights agreed

Collect the money owed by purchaser, ICG USA LLC,

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.     `

87. Plaintiff did all, or substantially all, of the significant things that the contract required by them.

88. All conditions required by the contract for Defendants American Global Freights performance were not complied with.

89.  The condition requiring Defendants to make payment for the Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova

90. AS TO CONTRACT WITH  ICG USA LLC,

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.

91. On or about the date of February 6, 2024, Plaintiff Metal Processing Technology LLC

 ICG USA LLC, Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova entered into a contract;

92. The terms and conditions of the said written contract, in general were as follows

93. Plaintiff agreed to have around $500,000 in precious metals delivered to the customer ICG USA LLC, in exchange for ICG USA LLC issuing payment.

94.  However, ICG USA LLC pickup the merchandise without making the required payment to plaintiff  re. around $500,000 in precious metals

95. In return for plaintiff's performance, defendants American Global Freights agreed collect the money owed by purchaser, ICG USA LLC,

First Amended Complaint for damages  06/24/26

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.      `

96. Plaintiff did all, or substantially all, of the significant things that the contract required by them.

97. All conditions required by the contract for Defendants American Global Freights

and ICG USA LLC performance were not complied with.

98.  The condition requiring Defendants to make payment for the goods

After receiving the goods did not occur and were not excused.

99. Defendants failed to do something that the contract required them to do.

re. CONTRACT WITH MAERSK

100. On or about June 27, 2024, Plaintiff METAL PROCESSING TECHNOLOGY LLC

and MAERSK entered into agreement, whereas MAERSK would collect the required

payment from the Client ICG USA LLC American Global Freight.

101. On or about June 27, ,2024, MAERSK received the merchandise shipped to

ICG USA LLC from Metal Processing Technology LLC, but failed to ensure that

Metal Processing Technology LLC would receive the money owed to them

MAERSK negligently released the goods without collecting payment from the receiving

Party, which was over $500,000 in merchandise.

102. Specifically, defendants failed to make the required payment for the goods received

after they received the goods.

103.  Plaintiff was harmed.

104. Defendants' breach of contract was a substantial factor in causing

Plaintiff's harm.

105.   The Defendant **BUSINESS ENTITIES named** were negligent in supervising, managing

and overseeing the functions of their agents and employees DOES 1-5 **who are  employed by**

A.  AMERICAN GLOBAL FREIGHTS [A California Corporation];

B.  MAERSK CUSTOMS SERVICES USA INC.;

First Amended Complaint for damages  06/24/26

C. MAERSK LOGISTICS & SERVICES USA INC.;

D. ICG USA, LLC;

106. An employee or agent is always responsible for harm caused by his, her or its own wrongful conduct, whether or not the employer is also liable.

**107. <u>DEFENDANTS, DOES 1-20 AND CO-DEFENDANTS</u>**

<u>acted in Concert</u> to commit fraud, and engage in abuse of process in effort to harm Plaintiff.

108. Defendants planned, plotted, and conspired with the other named defendants and conspired and carried out by defendants was intentional.

109. Each **co-conspirators committed fraud, planned** and plotted to

110. Each defendant and DOE conspirator is responsible because conspirators were aware that the named defendants planned their scheme.

Each defendant and coconspirators agreed with the other defendants and intended that the fraud, property damage and intentional infliction of emotional distress be committed. [See <u>CACI #3600</u>]

**111.** As a result, Plaintiff was damaged by defendants' **<u>wrongful conduct</u>** in an amount of at least $35,001.

**SEVENTH CAUSE OF ACTION FOR**

**BREACH OF WRITTEN CONTRACT**

against AMERICAN GLOBAL FREIGHTS
[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;
MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC;
Emilia Arutyunova aka Emiliya Aroutiounov;
and Artour Aroutiounov aka Artour Arutyunova;
Ararat Baghdasaryn [aka alter ego
of American Global Freights ] and DOES 1 – 20

112. Plaintiff refers to and incorporates by this reference each allegation set forth in Paragraphs 1 through 111 thereof, inclusive, as if alleged herein in full.

**AS TO CONTRACT WITH AMERICAN GLOBAL FREIGHT**

**113.** On or about the date of February 6, 2024, Plaintiff **Metal Processing Technology LLC**

First Amended Complaint for damages  06/24/26

and **American Global Freights** entered into a contract;

The terms and conditions of the said written contract, in general were as follows

114. Plaintiff agreed to pay for Freight Forwarding as to a shipment of approximately $500,000 in precious metals

115. In return for plaintiff's performance, defendants American Global Freights agreed

Collect the money owed by purchaser, ICG USA LLC,

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova. `

116. Plaintiff did all, or substantially all, of the significant things that the contract required by them.

117. All conditions required by the contract for Defendants American Global Freights performance were not complied with.

118. The condition requiring Defendants to make payment for the Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova

**AS TO CONTRACT WITH ICG USA LLC,**

**Emilia Arutyunova aka Emiliya Aroutiounov;**

**and Artour Aroutiounov aka Artour Arutyunova.** `

119. On or about the date of February 6, 2024, Plaintiff **Metal Processing Technology LLC**

**ICG USA LLC, Emilia Arutyunova aka Emiliya Aroutiounov;**

**and Artour Aroutiounov aka Artour Arutyunova** entered into a contract;

120. The terms and conditions of the said written contract, in general were as follows

121. Plaintiff agreed to have around $500,000 in precious metals delivered to the customer ICG USA LLC, in exchange for ICG USA LLC issuing payment.

122. However, ICG USA LLC pickup the merchandise without making the required payment to plaintiff re. $500,000 in precious metals.

123. In return for plaintiff's performance, defendants American Global Freights agreed collect the money owed by purchaser, ICG USA LLC,

First Amended Complaint for damages  06/24/26

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.     `

124.  Plaintiff did all, or substantially all, of the significant things that the contract required by them.

125. All conditions required by the contract for Defendants American Global Freights and ICG USA LLC performance were not complied with.

126. The condition requiring Defendants to make payment for the goods After receiving the goods did not occur and were not excused.

127. Defendants failed to do something that the contract required them to do.

### re. CONTRACT WITH MAERSK

128.  On or about June 27, 2024, Plaintiff METAL PROCESSING TECHNOLOGY LLC and MAERSK entered into agreement, whereas MAERSK would collect the required payment from the Client ICG USA LLC American Global Freight.

129. On or about June 27, ,2024, MAERSK received the merchandise shipped to ICG USA LLC from Metal Processing Technology LLC, but failed to ensure that Metal Processing Technology LLC would receive the money owed to them MAERSK negligently released the goods without collecting payment from the receiving Party, which was over $500,000 in merchandise.

130.  Specifically, defendants failed to make the required payment for the goods received after they received the goods.

131. Plaintiff was harmed.

132. Defendants' breach of contract was a substantial factor in causing Plaintiff's harm.

### EIGHTH CAUSE OF ACTION FOR NEGLIGENCE

Against all defendants and DOES 1-10

133. Plaintiff refers to and incorporates by this reference each allegation set forth in Paragraphs 1 through 132 thereof, inclusive, as if alleged herein in full.

134. Each named Defendant and DOES 1-10 was negligent.

First Amended Complaint for damages  06/24/26

Defendants and DOES 1-10 owed a duty to Plaintiff to ascertain that the money owed to Plaintiff was paid upon the delivery of the goods shipped to Defendants ICG USA and  LLC Emelia Arutyunova.

135. However, **defendants and DOES 1-10 breached their duty owed to plaintiff by failing to ensure that Plaintiff was paid for the goods delivered upon delivery**. Therefore, Defendants and DOES 1-10 were negligent.

NEGLIGENCE against AMERICAN GLOBAL FREIGHTS

[A California Corporation]; MAERSK CUSTOMS SERVICES USA INC.;

MAERSK LOGISTICS & SERVICES USA INC.; ICG USA, LLC;

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova;

Ararat Baghdasaryn [aka alter ego

of American Global Freights ] and DOES 1 – 20

136.    Plaintiff refers to and incorporates by this reference each allegation set forth in Paragraphs 1 through 84 thereof, inclusive, as if alleged herein in full.

AS TO CONTRACT WITH AMERICAN GLOBAL FREIGHT

137.    On or about the date of February 6, 2024, Plaintiff Metal Processing Technology LLC and American Global Freights  entered into a contract; The terms and conditions of the said written contract, in general were as follows Plaintiff agreed to pay for Freight Forwarding as to a shipment of approximately $500,000 in precious metals

138.    In return for plaintiff's performance, defendants American Global Freights agreed Collect the money owed by purchaser, ICG USA LLC, Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova.      `

139.    Plaintiff did all, or substantially all, of the significant things that the contract required by them.

140. All conditions required by the contract for Defendants American Global Freights performance were not complied with.

141. The condition requiring Defendants to make payment for the Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova

142. AS TO CONTRACT WITH  ICG USA LLC,

Emilia Arutyunova aka Emiliya Aroutiounov;

and Artour Aroutiounov aka Artour Arutyunova.

143. On or about the date of February 6, 2024, Plaintiff Metal Processing Technology LLC ICG USA LLC, Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova entered into a contract;

144. The terms and conditions of the said written contract, in general were as follows

145. Plaintiff agreed to have around $500,000 in precious metals delivered to the customer ICG USA LLC, in exchange for ICG USA LLC issuing payment.

146. However, ICG USA LLC pickup the merchandise without making the required payment to plaintiff  re. around $500,000 in precious metals

147. In return for plaintiff's performance, defendants American Global Freights agreed collect the money owed by purchaser, ICG USA LLC, Emilia Arutyunova aka Emiliya Aroutiounov; and Artour Aroutiounov aka Artour Arutyunova.   `

148. Plaintiff did all, or substantially all, of the significant things that the contract required by them.

149. All conditions required by the contract for Defendants American Global Freights and ICG USA LLC performance were not complied with.

PRAYER FOR JUDGMENT

150. Wherefore, Plaintiff prays for judgment against each defendant **in an amount according to proof** of at least $35,001 **or in the amount of $3,000,000** if the judgment is to be entered by default.

First Amended Complaint for damages  06/24/26

**DEMAND FOR JURY TRIAL**

151.      Plaintiff demands a trial by jury of all claims so triable as a matter of right and law.

**PRAYER FOR JUDGMENT AND RELIEF**

152.      WHEREFORE, Plaintiff prays for judgment and order against the Defendants, and each of them, as follows:

**FOR ALL CAUSES OF ACTION**

1.   General Damages in a **monetary amount "according to proof" of at least $35,001 or in the amount of $7,000,000 if judgment is entered by default; or Return of the unpaid merchandise plus reasonable damages for diminished value;**

2.   For Punitive Damages in the amount of $10,000,000;

3.   For such other relief as the Court deems just and proper.

**Dated: June 26, 2026**

Respectfully submitted,

By   *Ruochen Liu*

Attorney for Metal Processing Technology LTC.,

See attached verification and Exhibits

First Amended Complaint for damages  06/24/26

**VERIFICATION BY ULUGBEK TADJIEV,**
Corporate officer for METAL PROCESSING TECHNOLOGY LTC.

I, ULUGBEK TADJIEV, declare

I am a corporate officer for plaintiff Metal Processing Technology LTC.

I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

June 26/2026

Dated: ▮▮▮▮▮▮▮▮▮

By: X _Ulugbek Tadjiev_
ULUGBEK TADJIEV [Corporate Officer of Metal Processing Technology LTC ]

# INDEX OF EXHIBITS

## EXHIBIT #1

**Contract with American Global Freight**

## EXHIBIT #2

**Contract with ICG USA LLC**

## EXHIBIT #3

**Contract with MAERSK**

## EXHIBIT #4

**California Secretary of State's Statement of Information as to Defendant ICG USA LLC**

# EXHIBIT #1
## Contract with AMERICAN GLOBAL FREIGHT

| | |
|---|---|
| **Contract No 01**<br>**Transport expedition** | **ДОГОВОР № 01**<br>**Транспортной экспедиции** |

April 8, 2024

8 Апреля 2024г.

**"American Global Freight"** hereinafter referred to as the «Forwarder» represented by the General Manager of the company **Ararat Baghdasaryan** on the one hand and **LLC "Metal Processing Technology"**, hereinafter referred to as the «Customer», represented by the director of the company **Nodirkhonov A.N.**, acting in compliance with the Regulations on the other hand have signed the present Contract to the following terms:

**"American Global Freight"**, именуемое в дальнейшем «Экспедитор», в лице Генерального Директора Арарата Багдасаряна, с одной стороны, и **LLC "Metal Processing Technology"**, именуемый в дальнейшем «Клиент», в лице директора **Nodirkhonov A.N.**, действующего на основании Устава, с другой стороны, заключили настоящий Контракт о нижеследующем:

**1. Subject of the contract**
1.1. According to the present Contract "The Forwarder" is obliged to arrange and provide freight forwarding services, concerned with the Cargoes of "the Customer". "The Customer" is obliged to pay for forwarding services rendered.

1.2. While performance of duties according to the present Contract "the Forwarder" acts on its own behalf and at the expenses of "the Customer", or on behalf and at the expenses of "the Customer"

**2.The rights and responsibilities of "the Forwarder"**

2.1 "The Forwarder" fulfills the certain services in accordance with forwarding instructions of "the Customer" (applications to the present Contract). The specific list of services rendered by "the Forwarder" is coordinated with the Parties in every specific forwarding instructions. In particularly, "the Forwarder":
- arranges transportation of "the Client's" cargoes by motor, railway, sea, air types of transport, makes the payment of cargo Carriers;
- arranges and makes payment of terminal operations (handling, storage, inspection etc.) for "the Customer's" expenses;
- makes repacking, relabeling, package repair, cargo weighing, goods quality definition
- enlists experts from survey organizations for making examination certificates for defining quality and quantity of cargoes;
- carries cargo insurance at expenses and in the interests of "the Customer";
- provides consulting and information services on the issues connected with performance of obligations under this contract.
- informs "the Customer" about cargo location according to "the Customer's" demand;
- provides other services according to "the Customer's" forwarding instructions;

**1. Предмет договора.**
1.1. По настоящему Договору Экспедитор обязуется выполнять или организовывать выполнение определенных Договором транспортно-экспедиторских услуг, связанных с грузами Клиента, а Клиент обязуется оплатить оказанные ему транспортно-экспедиционные услуги.

1.2. В ходе выполнения обязанностей по настоящему договору Экспедитор действует от собственного имени и за счёт Клиента, либо от имени и за счет Клиента.

**2. Права и обязанности Экспедитора.**

2.1 Экспедитор выполняет или организовывает выполнение определенных услуг в соответствии с экспедиторскими поручениями Клиента (Приложения к настоящему Договору). Конкретный список услуг, оказываемых Экспедитором, согласовывается Сторонами в каждом конкретном экспедиторском поручении. В частности, Экспедитор:
- организует перевозку автомобильным, железнодорожным, морским, воздушным транспортном грузов Клиента, осуществляет оплату услуг Перевозчиков;
- организует и производит за счет Клиента оплату терминальных операций (погрузочно-разгрузочные работы, хранение, досмотр и пр.);
- выполняет работы по переупаковке, перемаркировке, ремонту тары, взвешиванию груза, определению качества товара;
- привлекает экспертов сюрвейерских организаций для составления актов экспертизы по определению количества и качества груза;
- осуществляет страхование груза за счет и в интересах Клиента;
- информирует Клиента о движении груза по его запросу;

1

2.2. "The Forwarder" makes necessary payments for third parties services on its own behalf, but at expense and in the interests of "the Customer";

2.3. "The Forwarder" fulfills accepted orders on most favorable for "the Customer" conditions in accordance with instructions, in the absence of instructions – in accordance with business intercourse rules or other common requirements;

2.4. "The Forwarder" provides the documents list to "the Customer", which are necessary for transportation and forwarding of cargo. In case of additional requirements for set of documents, which is necessary for cargo documenting, from customs, veterinary or other state structures, "the Forwarder" informs "the Customer" about the list of additional documents.

**2.5. "The Forwarder" has the right:**

    2.5.1     to attract the third parties for duty performance

**3. Liabilities of "The Customer"**

    3.1 To issue the letter of attorney for "the Forwarder" for the right to fulfill fright forwarder operations;

    3.2 To send forwarding order to "the Forwarder" in accordance with the terms of the present Contract;

    3.3 To supply "the Forwarder" with full pack of relevant documents, which are necessary for duty performance according to the present Contract, in proper time;

    3.4 To supply "the Forwarder" with special instructions for cargo processing, which are not established;

    3.5 To supply "the Forwarder" with cargo in accordance with forwarding order and to coordinate with date and place of cargo transfer with "the Forwarder" preliminary;

    3.6 To sign the Statement of execute works and send it to "the Forwarder" within 3 days from the moment of receiving the Statement. "The Forwarder" sends the Statement of execute works by fax or by e-mail to foreign Customers, "the Customer" should send the signed copy by fax within 3 days, after receiving which "the Forwarder" sends the original of Statement of execute works to "the Customer" by registered

---

    — оказывает консультационные и информационно-справочные услуги по вопросам, связанным с выполнением обязательств по данному договору.

    — иные услуги на основании экспедиторских поручений Клиента.

2.2 Экспедитор от своего имени, но за счет и в интересах Клиента производит необходимые платежи за услуги третьих лиц.

2.3 Принятое поручение Экспедитор стремится исполнить на наиболее выгодных для Клиента условиях в соответствии с его указаниями, а при их отсутствии - в соответствии с обычаями делового оборота или иными обычно предъявляемыми требованиями.

2.4 Экспедитор предоставляет Клиенту список документов, необходимых для организации перевозки и экспедирования груза. Если таможенными, ветеринарными или иными государственными органами будут предъявлены дополнительные требования к пакету документов, необходимому для документального оформления груза, то Экспедитор немедленно сообщает Клиенту список дополнительно затребованных документов.

**2.5 Экспедитор имеет право:**
2.5.1 Привлекать для исполнения обязанностей по настоящему Договору третьих лиц.

**3. Обязанности клиента.**
3.1. Выдать доверенность Экспедитору на право совершения транспортно-экспедиторских операций.

3.2. Направлять экспедиторское поручение Экспедитору в соответствии с условиями настоящего Договора.

3.3. Своевременно предоставлять Экспедитору полный комплект надлежащим образом оформленных документов, необходимых Экспедитору для выполнения обязанностей по настоящему Договору.
3.4. Обеспечивать Экспедитора специальными инструкциями по обработке грузов, в отношении которых не установлены транспортные правила.

3.5. Предоставить Экспедитору груз, в соответствии с экспедиторским поручением, предварительно согласовав с Экспедитором дату и место передачи груза.

3.6. Подписать Акт выполненных работ и направить его Экспедитору в течении 3 (трех) дней с момента получения акта. Для иногородних Клиентов Экспедитор направляет акт выполненных работ с помощью факсимильной связи, либо электронной почты, а Клиент в течении 3 (трех) дней должен переслать подписанный экземпляр акта по факсу, после получения которого Экспедитор отправляет оригинал акта выполненных работ Клиенту заказным письмом. В случае, если в течение указанных

2

letter. In case the "the Customer" doesn't sign the statement within given time and doesn't send reasonable objections to "the Forwarder", the Statement of execute works is considered to be accepted and the cost of provided services is confirmed;

3.7 To pay an account billed by "the Forwarder" in proper time in accordance with the terms of present Contract.

## 4. The content and approval procedure of applications.

4.1. The Forwarder" provides services to "the Customer" within the limits of forwarding orders;

4.2. The Forwarding order is a written instruction from "the Customer" to "the Forwarder" about providing freight forwarding services in accordance with the present Contract. The forwarding order must include the necessary information enough for providing services such as: information about types of provided services, cargoes, its quantity, packing, dimensions of cargo packages, dates of cargo readiness in stocks, the delivery address of cargo, terms of delivery and other necessary information. The certain Forwarding order can change or cancel some clauses of the present Contract.

4.3. "The Customer" gives or sends the Forwarding order in written form (by fax, e-mail) and also the set of documents, which are necessary for "the Customer's" cargo expedition, within 2 working days till the beginning of providing the services mentioned in order;

4.4. The Forwarding order is considered to be confirmed and comes into legal force for Parties of the present Contract from the moment of Forwarding order signing by both Parties, receiving the consent of "the Forwarder" for providing services and begging of providing services to "the Customer" in accordance with the Forwarding order.

4.5. "The Customer" is obliged to inform "the Forwarder" immediately in written form in case of any changes in the Forwarding orders of "the Customer" or any changes in cargo delivery schedule, its volume, cargo delivery address, terms of delivery, and also in case if any other circumstances that can influence on the Parties duty performance of the present Contract.

сроков Клиент не подписывает Акт и к Экспедитору не поступает мотивированных возражений Клиента, Акт выполненных работ считается принятым, а стоимость оказанных Экспедитором услуг утвержденной.

3.7. Своевременно, в соответствии с условиями настоящего Договора оплачивать выставленные Экспедитором счета.

## 4. Содержание и порядок согласования заявок.

4.1. Экспедитор оказывает услуги Клиенту в рамках согласованных экспедиторских поручений.

4.2. Экспедиторским поручением является письменное указание Клиента Экспедитору о предоставлении транспортно-экспедиционных услуг в соответствии с настоящим Договором. Экспедиторское поручение должно содержать необходимую информацию, достаточную для выполнения Экспедитором услуг, в частности: информацию о видах оказываемых услуг, грузах, их количестве, упаковке, размерах грузовых мест, сроках готовности груза на складах отправителей, адрес доставки груза, условия поставки и другую, необходимую информацию. Конкретное Экспедиторское поручение может изменять и отменять отдельные положения настоящего Договора.

4.3. Клиент вручает Экспедитору или направляет в письменном виде (по факсу, по электронной почте) экспедиторское поручение, а также пакет документов, необходимых для экспедирования груза Клиента, не позднее, чем за 2 (два) рабочих дня до начала оказания указанных в заявке услуг.

4.4. Экспедиторское поручение считается согласованным и приобретает юридическую силу для Сторон настоящего Договора с момента подписания Экспедиторского поручения обеими Сторонами, получения Клиентом согласия Экспедитора на оказание услуг или начала оказания Экспедитором услуг в соответствии с экспедиторским поручением Клиента.

4.5. В случае возникновения любых изменений в экспедиторских поручениях Клиента, выдаваемых в соответствии с настоящим Договором, либо возникновения изменений в графике завоза груза, его объеме, номенклатуре, при изменении адреса доставки груза, условий поставки, а также при возникновении любых других обстоятельств, которые могут повлиять на ход исполнения Сторонами своих обязательств по настоящему Договору, Клиент обязан немедленно сообщить об этом Экспедитору в письменной форме.

3

## 5. Payment procedure.

5.1. "The Customer" makes the payment of "the Forwarder's" services, on the basis of the invoices, issued as per Rates, agreed by the Parties on the moment of receiving an order.

5.2. The payments of "the Forwarder" invoices is made within 5(five) banking days from the date of issuing and sending the invoice to "the Customer";

5.3. The coordinated cost of "the Forwarder's" services includes commission and costs, born by "the Forwarder" in the interests of "the Customer". The commission of "the Forwarder" equals the difference between overall cost of "the Forwarder's" services and the sum of the costs born "the Forwarder".

## 6. Liabilities of the parties

6.1. "The Forwarder" is responsible for damage of "the Customer's'" cargo, and also for delay in providing serviced in accordance with the legislation about transport forwarding activity;

6.2. In case of invoice payment delay "the Customer" pays penalty at a rate of 0.1% from the total sum for each day of delay;

6.3. "The Forwarder" hiring the third party for execution of the obligations is liable for their actions as for its own;

### 6.4. "The Forwarder" is not responsible for:

• Quality and accordance of received cargo to the documents identifying its assortment, type etc., that is the distinctive feature of the cargo and can be defined only by expertise or analysis, or quality certificate. All problems with customs, that can arise because of "the Customer's" mistakes in documents, are solved by "the Customer" without participation of "the Forwarder" or according to coordination of the Parties.

- The quantity of cargo packages and weight are not correspondent with the ones mentioned in transport documents;
- Inside shortage contents freight place, accepted trig packing.

• Not keeping the schedule of cargoes transporting in case of inadequate execution of obligations, stipulated in the present Contract, and also for all the losses connected with these violations;

• Possible additional expenses and losses, occurred in result of claiming additional requirements for legalization by customs, veterinary or other authorized state structures.

## 5. Расчеты между сторонами.

5.1. Клиент осуществляет оплату услуг Экспедитора согласно выставленным счетам поставкам, существующим у Экспедитора на момент подачи Клиентом заявки.

5.2. Оплата счетов Экспедитора производится Клиентов в течение 5 (Пяти) банковских дней с момента выставления и направления Экспедитором Клиенту соответствующего счета.

5.3. Согласованная стоимость услуг Экспедитора включает в себя вознаграждение и расходы, которые несет Экспедитор в интересах Клиента. При этом вознаграждение Экспедитора определяется как разница между общей стоимостью услуг Экспедитораи суммой понесенных им расходов.

## 6. Ответственность сторон.

6.1. Экспедитор несет ответственность за порчу и повреждение грузов Клиента, а также за просрочку в оказании услуг в соответствии с законодательством о транспортно- экспедиционной деятельности.

6.2. В случае несвоевременной оплаты Клиентом счетов Экспедитора, последний имеет право начислить пени в размере 0,1% от суммы неоплаченной суммы за каждый день просрочки.

6.3. В случае если Экспедитор привлекает для исполнения поручений Клиента третьих лиц, он твечает за их действия как за свои собственные.

### 6.4. Экспедитор не несет ответственности за:

- Качество и соответствие принятого к перевозке груза документам, удостоверяющим их ассортимент, тип, марку и т.п., что является неотличимой особенностью груза и может быть определено исключительно путем экспертизы или анализа, либо сертификата качества или соответствия. Все споры с таможенными органами, которые могут возникнуть из-за ненадлежащего оформления Клиентом документов либо из-за других упущений Клиента, разрешаются Клиентом без участия Экспедитора, либо по согласованию между Сторонами совместно.

- Несоответствие количества мест и весов, заявленных в транспортных документах, фактическому количеству мест и весу груза.
- Внутритарную недостачу содержимого грузовых мест, принятых/переданных в исправной таре.

- Несоблюдение сроков перевозки грузов при ненадлежащем выполнении Клиентом условий настоящего Договора, а также за все убытки, связанные с этими нарушениями.

- Возможные дополнительные расходы и убытки, возникшие в результате предъявления таможенными, ветеринарными или иными уполномоченными государственными органами дополнительных требований к оформлению груза.

4

## 7. Force Majeure

7.1. Any of the parties will be released from their responsibility for partial or complete non-execution of their liabilities under the present Contract should this non-execution be caused by the circumstances of force majeure, occurred after signing the present Contract, which the Party can not foresee. The force majeure includes fire, flood, earthquake and other natural calamities, extreme weather and climatic conditions, embargoes, war or state of emergency, temporary closed motorways, national or local strikes, military coup d'etat, accidents with no fault of driver and other force majeure circumstances.

7.2. In case of force majeure circumstances, the time of execution of the obligations is to be extended for a period equal to that during which such circumstances will remain in force;

7.3. The Party, which becomes unable to fulfill its duties because of force majeure circumstances, is to inform another Party within 6 (six) hours in written form. Otherwise, the Party can't not refer to force majeure circumstances as the basis of declining the responsibility;

7.4. In case the period exceeds 3 (three) months, the Parties shall jointly consider the further expedience of the Contract or revise the terms;

7.5. The Party, which refers to force majeure circumstances, is to provide a certificate from the Chamber of Commerce and Industry or other authorized state structure.

## 8. Terms of validity

8.1. This Contract becomes effective from the moment of its signing by the Parties and is valid till 31 of December 2024. The currency of the Contract is automatically prolonged for the next calendar year if, 30 days before the expiration, neither Party notifies of its desire to terminate the present Contract.

8.2. In violation of 8.1. particularly about notifying the Party about desire to terminate the Contract, the Party, that didn't notify about its desire in proper time,

## 7. Форс-мажор.

7.1. Стороны освобождаются от ответственности за неисполнение или частичное неисполнение обязательств по настоящему договору, в случаях, когда оно является прямым следствием обстоятельств непреодолимой силы, возникших после заключения настоящего договора, которые сторона не могла разумно предвидеть или предотвратить. К обстоятельствам непреодолимой силы относятся: пожары, наводнения, землетрясения и другие стихийные бедствия, экстремальные погодно-климатических условия, запрет экспорта или импорта определенных товаров, объявление чрезвычайного или военного положения, фактические военные действия, временное закрытие для движения отдельных автомобильных дорог по распоряжению компетентных властей, общенациональные или локальные забастовки, военные перевороты, дорожно-транспортные происшествия не по вине водителя, издание нормативных актов, государственный запрет на совершение действий, составляющих содержание обязательств, и другие обстоятельства непреодолимой силы.

7.2. Срок исполнения обязательства при наступлении обстоятельств непреодолимой силы увеличивается на срок действия этих обстоятельств.

7.3. Сторона, которая не может исполнить свои обязательства по настоящему договору в связи с наступлением обстоятельств непреодолимой силы, обязана в течение 6 (шести) часов в письменной форме уведомить другую сторону о наступлении этих обстоятельств и о предполагаемом сроке их действия. В противном случае сторона не может ссылаться на обстоятельства непреодолимой силы как на основание освобождения от ответственности.

7.4. Если этот срок превышает 3 месяца, стороны договариваются о досрочном расторжении договора или пересмотре его условий.

7.5. Сторона, ссылающаяся на обстоятельства непреодолимой силы, обязана предоставить подтверждающую это справку из соответствующей торгово-промышленной палаты или иного уполномоченного государственного органа.

## 8. Действие договора.

8.1. Настоящий Договор вступает в законную силу с момента подписания его полномочными представителями Сторон и действует до 31 декабря 2024 г. Срок действия договора автоматически продлевается на следующий календарный год, если ни одна из сторон за 30 дней до истечения срока действия договора не известит другую сторону о своем намерении расторгнуть настоящий договор.

8.2. При нарушении п. 8.1. в части извещения Стороны о намерении расторгнуть договор Сторона, своевременно не известившая о своем намерении, возмещает другой Стороне убытки, вызванные таким

5

recovers losses to other Party, caused by this termination.

8.3. In case of the Contract termination the Parties are to fulfill their obligations under contract made prior thereof.

## 9. Other conditions.

9.1. All disputes in connection with this Contract shall be settled by negotiations. If the Parties are unable to settle any disputes by negotiations, such disputes shall be settled by the Court in the city of Valencia according to the rules of law of Spain.

9.2. All terms that are not regulated by the present Contract, are regulated according to rules of law Spain.

9.3. All the documents concerning the present Contract can be made and sent by fax or telex. The Parties recognize these documents to be legal and original.

9.4. In the event any of the clauses or/and conditions of the present Contract is recognized invalid, such recognition does not influence the validity of any other clauses and conditions of the present Contract. The invalid clause is to be replaced by other similar clause, which is workable in legal terms;

9.5. This Contract is drawn up in two copies, each copy for each Party, both copies have equal legal force.

## 10. ADDRESSES AND DETAILS OF THE PARTIES

Forwarder/Экспедитор
**American Global Freights**

Address:
601 E Acacia ave, Unit I
Glendale, CA 91205
USA

**Bank Information**
Beneficiary Account: 325166169007
Bank: Bank of America, N.A.
Swift Code: BOFAUS6HXXX
Bank Address: 555 CALIFORNIA STREET, SAN FRANCISCO, CA 94104

Ararat Baghdasaryan _____

---

расторжением

8.3. В случае прекращения действия настоящего договора, Стороны обязаны исполнить все возникшие до этого момента обязательства.

## 9. Прочие условия.

9.1. Все споры, возникающие в связи с настоящим договором, стороны будут стремиться урегулировать путем переговоров. При не урегулировании споров путем переговоров, они передаются на рассмотрение в Суд г. Валенсии согласно нормам права Испании.

9.2. Все, что не урегулировано настоящим договором, регулируется в соответствии с нормами права Испании.

9.3. Любые документы, касающиеся настоящего договора, могут быть изготовлены и переданы посредством электронно-вычислительной техники, факсимильной и телексной связи, при этом стороны признают, что данные документы будут иметь силу оригинала.

9.4. Если в результате изменения действующего законодательства какое-либо положение настоящего Договора становится недействительным, это не должно затрагивать другие положения настоящего Договора. Недействительное положение заменяется положением, близким по смыслу с заменяемым, и допустимым в правовом отношении.

9.5 Настоящий договор составлен в 2-х экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон.

## 10. АДРЕСА И РЕКВИЗИТЫ СТОРОН

Customer/ Клиент
**LLC Metal Processing Technology**

Address:
22 Astrabad street,
Chilanzar district, Tashkent city 100149
Republic of Uzbekistan

**Bank Information**
Account: 2020 8840 8007 0186 5003
Bank: PJSB "TRUSTBANK"
SWIFT: TRSAUZ22XXX
Tax ID: 304496020
Bank Address: Tashkent, Navoi str., 7, 100011

Nodirkhonov A.N. _____

6

# EXHIBIT #2
Contract with ICG USA LLC

| КОНТРАКТ № 97/2023-EX | Contract # 07/2023-EX |
|---|---|
| г. Ташкент  «01» ноябрь 2023г. | Tashkent  «01» November 2023y. |

Компания ООО «METAL PROCESSING TECHNOLOGY» (Республика Узбекистан) в лице директора Шодирхонова А.Н., действующего на основании Устава, именуемая в дальнейшем "Продавец", с одной стороны, и Компания ICG USA LLC в лице CEO Артур Арутюнов, действующего на основании устава, именуемое в дальнейшем Покупатель, с другой стороны, заключили настоящий контракт о нижеследующем:

Company LLC «METAL PROCESSING TECHNOLOGY» (Republic of Uzbekistan) represented by Director Shodirkhonov A.N., acting on the basis of the Charter, hereinafter referred to as the "Seller", on one side and Company ICG USA LLC represented by CEO Artour Aroutiounos, acting on the basis of the company, hereinafter referred to as the "Buyer", on the other side, have concluded the present Contract as follows:

### 1. ПРЕДМЕТ КОНТРАКТА

1.1. Продавец продает, а Покупатель покупает на условиях DAP, DDP (Инкотермс, 2010г.) Рафинированную медную продукцию (далее по тексту «Товар»).
1.2. Товар, поставляемый по настоящему контракту, является новым.
1.3. Страна происхождения Товара– Республика Узбекистан.
1.4. Производитель Товара является компания ООО «Metal Processing Technology».
1.5. Отправителем Товара является компания ООО «Metal Processing Technology»
1.6. Код ТНВЭД товара: 7411109000, 7411101000.
1.7. Страна назначения Товара – США
1.8. Грузополучатель Товара является компания ICG USA LLC.

### 1. SUBJECT OF THE CONTRACT

1.1. The Seller sells, and the Buyer buys on DAP, DDP terms (Incoterms, 2010), Refined copper products (hereinafter referred as goods)
1.2. The goods, delivered according to the present contract is new.
1.3. The country of origin of the Goods is the Republic of Uzbekistan.
1.4. The manufacturer of the product is the company «Metal Processing Technology» LLC.
1.5. The sender of the Goods is «Metal Processing Technology» LLC.
1.6. US code of goods. 7411109000, 7411101000.
1.7. The country of destination of USA.
1.8. The consignee of the Goods is the company ICG USA LLC.

### 2. УСЛОВИЯ ПОСТАВКИ

2.1. Базисные условия поставки указываются в спецификациях настоящего Контракта и может быть: DAP, DDP (Инкотермс – 2010).
2.2. Поставка товара осуществляется в течение 60-80 дней.
2.3. Поставки производятся в автотранспортном средстве на условиях DAP, DDP.
2.4. Дата поставки – в соответствии с условиями Инкотермс 2010.
2.5. Вместе с товаром «Продавец» обязуется отправить товарно-транспортную накладную, сертификат качества, сертификат происхождения (оригинал), счет- фактуру (инвойс).
2.6. «Продавец» обязан известить «Покупателя» письменно, по факсу и электронной почте, о готовности товара к отгрузке в течение 2-х рабочих дней до момента отправки.
2.7. «Продавец» обязан известить «Покупателя» письменно, по факсу, о произведенной отгрузке с указанием даты отгрузки, номера накладной, наименование товара и его количество, а также вес брутто и нетто в течение 2-х рабочих дней со дня отправки товара.

### 2. DELIVERY TERMS

2.1. The basic terms of delivery are specified in the specifications of this Contract and may be: DAP, DDP (Incoterms -2010).
2.2. Delivery is made within 60-80 days.
2.3. The delivery is made in vehicle transportation under the terms of DAP, DDP.
2.4 Delivery date - in accordance with the terms of Incoterms 2010.
2.5. The Seller is obliged to send the transport bill, certificate of quality, certificate of origin(original), invoice.
2.6. The Seller is obliged to inform the Buyer in written form by fax and via email about the readiness of shipment within two working days before the shipment.
2.7. The Seller is obliged to inform the Buyer in written form by fax about the fact of shipment within two working days after the shipment. The following information shall be included: the date, the number of the travel bill, the name of the goods and that's quantity, the net and gross weight.

### 3. КАЧЕСТВО И КОЛИЧЕСТВО ТОВАРА

3.1. Качество поставляемого товара должно соответствовать требованиям нормативно-технической документации предприятия-изготовителя и подтверждается сертификатом качества и происхождения (оригинал).
3.2. Количество товара определяется согласно спецификации прилагаемой к настоящему контракту и являющейся его неотъемлемой частью.

### 3. THE GOODS QUALITY AND QUANTITY

3.1. Quality of the Goods shall be in full conformity with the standards and the technical conditions of the Manufacturer and shall be confirmed by Certificate of Quality of the Goods issued by the Manufacturer and the Certificate of origin (original).
3.2. The quantity of the Goods shall be in conformity with the attached Specification, which is integral part of the present contract.

### 4. ЦЕНА И ОБЩАЯ СУММА КОНТРАКТА

4.1. Цена Товара поставляемого по настоящему Контракту согласно Инкотермс 2010 указывается в спецификациях настоящего Контракта и может быть: DAP, DDP, а также стоимость работ и услуг в соответствии с базисом поставки.
4.2. Цена за 1 (одну) тонну медной продукции рассчитывается по формуле:

Цена = LME* + обработка меди в долл. США/тн

где,
*LME - котировка меди на Лондонской Бирже Металлов LME «Cash Settlement», усредненная за пять последовательных биржевых дней предшествующих дате уведомления Продавцом о готовности к выработке партии товара и дате выставления проформы инвойса.

### 4.THE COST AND TOTAL CONTRACTUAL AMOUNT

The price of the Goods delivered under this Contract according to Incoterms 2010 is specified in the specifications of this Contract and may be: DAP, DDP, as well as the cost of works and services in accordance with the basis of delivery

4.2. The price for 1 (one) ton of copper product is calculated by the formula:

Price = LME * + processing of copper USD/t

where,
*LME is the copper quotation on the London Metals Exchange LME "Cash Settlement", averaged over five consecutive stock days preceding the date of the notice by the Seller about readiness to work out a batch of goods and the date of the invoice pro forma.

"Seller" _____  Exhibit 2  "Buyer" _____

2

4.3. Валютой платежа по настоящему Контракту является Доллар США.
4.4. Предварительный объём контракта составляет 100 000 (сто тысяч) тонн стоимостью согласно пункту 4.2.
4.5. Окончательная цена Товара будет определена согласно пункту 4.1-4.2. настоящего Контракта и будет фиксироваться в Коммерческом инвойсе на каждую поставку.
4.6. Общая сумма Контракта может быть увеличена в дополнительных соглашениях к настоящему Контракту на сумму дополнительно поставляемых Товаров.
4.7. «Покупатель» оплачивает поставленный «Продавцом» товар по цене, предусмотренной в спецификации, которая прилагается к настоящему контракту.
4.8. Цены на товар включают стоимость упаковки, маркировки, транспортировки и таможенной очистки по месту Получателя.

## 5. ПОРЯДОК ПЛАТЕЖЕЙ

5.1. Валюта платежа – США доллар.
5.1.1. Оплата Товара по настоящему Контракту осуществляется на основании инвойса или проформа инвойса, который оформляется на каждую партию Товара, одним из ниже-перечисленных способов.
5.1.2. Путём частичной предоплаты за поставляемую продукцию согласно предварительной договорённости;
5.1.3. Путём отсрочки платежа за отгруженную партию Товара, которая не может превышать 180 (сто восемьдесят) календарных дней;
Продавец предоставляет Покупателю следующие документы:
-Коммерческий Инвойс (оригинал);
-Упаковочный лист (оригинал);
-Сертификат происхождения (оригинал)
-Товарно-транспортная накладная (оригинал).
5.2. Оплата за поставленный Товар производится банковским переводом на расчётный счёт Продавца указанный в разделе 13. настоящего Контракта, без удержания каких-либо налогов на территории Покупателя. Покупатель несет ответственность за уплату любых налогов, сборов или платежей в стране Покупателя. Продавец – в стране Продавца.
5.3. В случае не своевременной доставки Товара в течение 60-80 (шестьдесят-восемьдесят) календарных дней, Продавец и Покупатель совместно будут решать проблемы с логистической компанией.
5.4. Все налоги, сборы, пошлины, банковские и другие расходы, связанные с исполнением настоящего контракта на территории страны продавца, несет продавец, а на территории страны назначения товара несет покупатель.
5.5. Получение экспортных лицензий в стране Продавца является обязанностью Продавца, а получение импортных лицензий в стране Покупателя является обязанностью Покупателя.

## 6.СДАЧА И ПРИЕМКА ТОВАРА.

6.1. Продавец гарантирует, что в Товаре качество сырья и отсутствие производственных недостатков. Производитель гарантирует, что Товар соответствует стандарту EN12735-1:2001, ASTMB 280, ATSMB 88-89 или ГОСТ 617-2006 и техническим требованиям.
6.2. В том случае, если брак в Товаре обнаружен после отгрузки и до его продажи конечному потребителю, обе Стороны должны исследовать и выявить причину брака.
6.3. Продавец гарантирует, что в Товаре отсутствует брак, под которым подразумевается брак, возникший вследствие использования при производстве некачественного сырья, несоответствий в оформлении и комплектации или нарушении Продавцом технологии производства Товара, поставленного Покупателю в течение 12 (двенадцать) месяцев после отгрузки.
6.4. В случае обнаружения бракованного товара в количестве менее 10% (десяти процентов) в партии, Продавец по согласованию Сторон, должен заменить бракованный Товар на качественный Товар при отгрузке следующей партии Товара.

4.3. The payment currency under this Contract is the US Dollar.
4.4. Preliminary volume is 100 000 (one hundred thousand) tons capacity, with the value in accordance with clause 4.2.
4.5. The final price of the Goods will be determined in accordance with clause 4.1-4.2. of this Contract and will be recorded in the Commercial invoice for each delivery.
4.6. The total amount of the Contract may be increased in additional agreements to this Contract by the amount of additionally supplied Goods.
4.7. The Buyer pays for the goods delivered according to the cost, stated in Specification attached to this contract.
4.8. The cost shall include the package, marking, transportation and duty clean.

## 5. PAYMENT TERMS

5.1. The currency of the payment – US dollar.
5.1.1. Payment for the Goods under this Contract is carried out on the basis of an invoice or a proforma invoice, which is issued for each batch of Goods, in one of the following ways:
5.1.2. By partial or agreed upon prepayment for every agreed upon order;
5.1.3. By deferring payment for the shipped batch of Goods, which cannot exceed 180 (One hundred eighty) calendar days;
The Seller provides the Buyer with the following documents:
-Commercial Invoice(original);
-Packing list (original);
-Certificate of origin(original).
-Bill of lading

5.2. Payment for the delivered Goods shall be made by bank transfer to the Seller's bank account specified in section 13. Of this Contract, without any withholding of taxes in the Buyer's territory. The Buyer is responsible for paying any taxes, fees or charges in the Buyer's country, the Seller- in the Seller's country.

5.3. If the Goods are not delivered within 60-80 (sixty-eighty) calendar days, Buyer and Seller will jointly solve the problem with the logistics company.
5.4. All taxes due, duties and bank and other charges, associated with execution of the present contract in the seller's country are covered by the seller and in the country of destination of goods are covered by the Buyer.

5.5. The obtaining of export licenses in the country of the Seller is duty of the Seller, and obtaining import licenses in the country of the Buyer is duty of the Buyer.

## 6. THE GOODS RECEIVING TERMS

6.1. The Seller guarantees that there is quality of material and manufactured goods without defects. The manufacturer guarantees that the product complies with the standard EN12735-1: 2001, ASTMB 280, ASTMB 88-99 or GOST 617-2006 and technical requirements.
6.2. In the event that a marriage in the Product is discovered after shipment and before it is sold to the final consumer, both Parties must investigate and identify the cause of the marriage.
6.3. The Seller guarantees that there is no marriage in the Product, which is understood to be a marriage resulting from the use of poor-quality raw materials in the production, inconsistencies in design and packaging, or the Seller's violation of the production technology of the Goods delivered to the Buyer within 12 (twelve) months after shipment.
6.4. In case of detection of defective goods in the amount of less than 10% (ten percent) in the lot, the Seller, as agreed by the Parties, must replace the defective Goods with a quality Product when shipping the next batch of Goods. If a defective product is detected

"Seller" _____

"Buyer" _____

3

При обнаружении бракованного товара в количестве более 10% (десяти процентов) в партии, вся партия признаётся серийным браком, а Продавец обязан заменить всю партию Товара на условиях DAP-склад покупателя (Инкотермс 2010), либо возместить Покупателю стоимость Товара, уплаченную Покупателем. При замене забракованного товара на новый товар, покупатель должен вернуть в адрес Продавца ранее отгруженный забракованный товар в течение 90 календарных дней после требования Продавца или совместно решить данную проблему иным способом.

6.5. Сдача-приёмка товара производится на месте выгрузки в США.

in an amount of more than 10% (ten percent) in a lot, the whole lot is recognized as a serial marriage and the Seller is obliged to replace the entire batch of Goods on DAP-buyer's warehouse terms (Incoterms 2010), or to reimburse the Buyer for the cost of the Goods paid by the Buyer, rejected goods to a new product, the buyer must return to the Seller's address the previously shipped rejected goods within 90 calendar days after the Seller's request or solve the problem by other means.

6.5. Delivery-acceptance of the goods is carried out at the place of unloading in USA.

## 7. РЕКЛАМАЦИИ

7.1. Рекламации в отношении качества и количества в случае недостачи могут быть заявлены ПОКУПАТЕЛЕМ ПРОДАВЦУ в момент приёмки Товара согласно пункту 6.5. настоящего Контракта.

7.2. Содержание и обоснование рекламации должно быть, по требованию ПРОДАВЦА, подтверждено актом, составленным с участием незаинтересованной компетентной организации.

7.3. ПРОДАВЕЦ обязан рассмотреть полученную рекламацию в течение 12 (двенадцати) календарных дней, считая со дня получения. Если по истечению указанного срока от ПРОДАВЦА не последует ответа, рекламация считается признанной ПРОДАВЦОМ.

7.4. По требованию ПОКУПАТЕЛЯ ПРОДАВЕЦ обязан заменить некачественный Товар Товаром надлежащего качества в течение 60 (шестьдесят) календарных дней, а недостающее количество Товара поставить в следующей поставке на условиях DAP-склад покупателя, согласно ИНКОТЕРМС-2010.

## 7. CLAIMS

7.1. Complaints regarding quality and quantity in case of shortage may be filed by the BUYER of the SELLER at the time of acceptance of the Goods in accordance with clause 6.5. of the present Contract.

7.2. The content and substantiation of the complaint must be at the request of the SELLER, confirmed by an act drawn up with the participation of a disinterested competent organization.

7.3. The SELLER is obliged to consider the received claim within 12 (twelve) calendar days from the date of receipt. If after the expiry of the specified period no reply is received from the SELLER, the complaint shall be considered recognized by the SELLER.

7.4. At the request of the BUYER, the SELLER is obliged to replace the poor-quality Goods with a Good Quality Product within 60 (sixty) calendar days, and deliver the missing quantity of the Goods during the next delivery cycle on the DAP-buyer's warehouse terms, according to INCOTERMS-2010.

## 8. ШТРАФНЫЕ САНКЦИИ

8.1. В случае нарушения сроков поставки Товара в соответствии с п.4.2. при условии своевременного выполнения ПОКУПАТЕЛЕМ п.п.3.1., 5.3.1. настоящего Контракта, ПРОДАВЕЦ уплачивает пеню в размере 0,1% (ноль целых одна десятая процента) от стоимости просроченного при отгрузке Товара за каждый рабочий день, однако сумма пени не должна превышать 10% (десять процентов) от стоимости просроченного в отгрузке Товара.

8.2. В случае просрочки в осуществлении оплаты в соответствии с п.3.1 Контракта, ПОКУПАТЕЛЬ выплачивает штраф в размере 0,1% (ноль целых одна десятая процента) просроченного платежа за каждый рабочий день, однако, сумма штрафа не должна превышать 10% (десять процентов) от суммы просроченного платежа.

## 8. PENALTIES

8.1. In case of violation of the terms of delivery of the Goods in accordance with paragraph 4.2. subject to the timely implementation of the BUYER pp.3.1., 5.3.1. of the present Contract, the SELLER pays a penalty in the amount of 0.1% (zero point one percent) of the value of the Goods delayed in shipment for each working day, however, the amount of the penalty shall not exceed 10% (ten percent) of the value of the Goods delayed in shipment.

8.2. In case of delay in making payment in accordance with clause 3.1 of the Contract, the BUYER pays a penalty of 0.1% (zero point one-tenth percent) of the overdue payment for each working day, however, the amount of the fine should not exceed 10% (ten percent) from the amount of overdue payment.

## 9. ФОРС-МАЖОР

9.1. Стороны освобождаются от ответственности за частичное или полное неисполнение обязательств по настоящему Контракту, если оно явилась следствием обстоятельств непреодолимой силы, а именно: пожара, наводнения, землетрясения, войны, блокады, решений принятельства и причин, если эти обстоятельства повлияли непосредственно на исполнение настоящего Контракта.

9.2. Сторона, для которой создалась невозможность исполнения обязательств по настоящему Контракту, обязана в течение 3 (трёх) календарных дней известить другую сторону о наступлении и прекращении вышеуказанных обстоятельств.

9.3. Надлежащим доказательством наличия указанных выше обстоятельств и их продолжительности будут служить справки, выдаваемые уполномоченными органами страны ПОКУПАТЕЛЯ, соответственно страны ПРОДАВЦА. Соответствующая справка должна быть предоставлена в течение 40 дней после наступления форс-мажора.

9.4. Стороны обязуются исполнить свои обязательства по данному Контракту, сразу же после истечения форс-мажорных обстоятельств.

## 9. FORCE MAJEURE

9.1. The Parties are exempt from liability for partial or complete failure to fulfill obligations under this Contract if it resulted from force majeure circumstances, namely: fire, flood, earthquake, war, blockade, government decisions and others, if these circumstances directly affected the execution of this Contract.

9.2. The party for whom the impossibility of fulfilling obligations under this Contract has been created is obliged to notify the other party within 3 (three) calendar days of the occurrence and termination of the above circumstances.

9.3. Appropriate evidence of the presence of the above circumstances and their duration will be certificates issued by the competent authorities of the country of the BUYER, respectively, the country of the SELLER. The corresponding certificate must be submitted within 40 days after the occurrence of force majeure.

9.4. The Parties undertake to fulfill their obligations under this Contract immediately after the expiration of force majeure circumstances.

"Seller" _____

"Buyer" _____

4

9.5. Если форс-мажорные обстоятельства действуют свыше 3 (трех) месяцев, любая Сторона имеет право снять с себя обязательства по выполнению данного Контракта без возмещения ущерба.

9.6. В случае наступления форс-мажорных обстоятельств ПОКУПАТЕЛЬ имеет право отозвать оплаченные средства за недопоставленный Товар, а ПРОДАВЕЦ обязан немедленно возвратить вышеуказанные средства на счет ПОКУПАТЕЛЯ.

9.5. If force majeure circumstances are valid for more than 3 (three) months, any Party has the right to relinquish its obligations to fulfill this contract without compensation for damage.

9.6. In case of force majeure, the BUYER has the right to withdraw the paid funds for the undelivered Goods, and the SELLER shall immediately return the above funds to the BUYER's account.

## 10. ПОРЯДОК РАССМОТРЕНИЯ СПОРОВ.

10.1. Все споры и разногласия, которые могут возникнуть из настоящего Контракта или в связи с ним, Стороны будут стремиться к разрешению их путем соглашения.

10.2. В случае невозможности решения в ходе переговоров все споры, разногласия или требования, возникающие из настоящего Контракта или в связи с ним, в том числе касающиеся его исполнения, нарушения, прекращения или недействительности подлежат передаче на рассмотрение международного арбитражного суда при Торгово-промышленных палатах Сторон. Арбитраж производится в стране ответчика. Если страной ответчика является США, то споры подлежат рассмотрению в Международном Коммерческом Арбитражном суде при Торгово-Промышленной Плате США или рассмотрение экономическим судом г. Денвер, Колорадо. Если страной ответчика является Узбекистан, то споры подлежат рассмотрению экономическим судом г. Ташкента.

Язык рассмотрения в обоих случаях – английский.

Арбитражное решение является окончательным и имеет обязательную силу для обеих Сторон.

## 10. ARBITRATION

10.1. All disputes and controversies that may arise from this Contract or in connection with it, the Parties will seek to resolve them by agreement.

10.2. If it is impossible to resolve in the course of negotiations, all disputes, disagreements or claims arising from or in connection with this Contract, including those relating to its execution, violation, termination or invalidity shall be referred to the international arbitration court of the Chambers of Commerce and Industry of the Parties Arbitration is made in the country of the defendant. If the country of the respondent is the USA, the disputes are to be considered in the International Commercial Arbitration Court at the Republic of USA Chamber or consideration by the Economic Court of Denver, Colorado. If the respondent's country is Uzbekistan, the disputes are subject to review by the Economic Court of Tashkent.

The language of consideration in both cases is English.

The award is final and binding on both Parties.

## 11. СРОК ДЕЙСТВИЯ И ПРОЧИЕ УСЛОВИЯ

11.1. Вся предварительная переписка и документация Сторон по Контракту утрачивают юридическую силу с момента его заключения.

11.2. Компания ICG USA LLC является официальным и эксклюзивным дистрибьютором и представителем продукции, вступает в силу с даты его подписания Сторонами и действует до 31 го декабря 2033г.

11.3. Настоящий Контракт расторгается в следующих случаях:
-по истечении срока действия Контракта при наличии письменного уведомления одной из Сторон;
-по взаимному соглашению Сторон;

11.4. Контракт составлен в 2 (двух) экземплярах по 1 (одному) экземпляру для каждой Стороны, на русском языке, парафирован на каждой странице, оба экземпляра имеют одинаковую юридическую силу.

11.5. Прекращение действия настоящего Контракта по любым основаниям не освобождает Стороны от каких-либо имеющихся обязательств друг перед другом на день расторжения Контракта.

11.6. Все Приложения Дополнительные соглашения Коммерческий инвойс к настоящему Контракту являются его неотъемлемой частью.

11.7. В случае изменения адреса, абонентских номеров средств связи, банковских реквизитов Стороны обязаны уведомить об этом друг друга в течение 10 (десяти) рабочих дней с даты возникновения таких изменений.

11.8. Стороны условились о том, что любые документы, в том числе, настоящий Контракт, а также изменения и дополнения к нему, заявки, приложения к Договору, подписанные уполномоченными лицами и заверенные печатью организации, передаваемые противоположной Стороне посредством факсимильной или электронной связи признаются Сторонами полноценными юридическими документами и являются надлежащим доказательством в случае судебного разбирательства. При этом Договор будет считаться заключенным с момента его получения по факсу или электронной почте. Документы, которые были переданы Сторонами друг другу посредством электронной или факсимильной связи, должны быть обязательно

## 11. TERM AND OTHER CONDITIONS

11.1. All preliminary correspondence and documentation of the Parties under the Contract shall become null and void from the moment of its conclusion.

11.2. The company ICG USA LLC will be the official and exclusive distributor of products starting from date of the Contract enters into force from the date of its signing by the Parties and is valid until 31th of December 2033.

11.3. This Contract is terminated in the following cases:
-at the expiration of the Contract if there is a written notification of one of the Parties;
- by mutual agreement of the Parties;

11.4. The contract is made in 2 (two) copies in 1 (one) copy for each Party, in Russian, initialed on each page, both copies have the same legal force.

11.5. Termination of this Contract for any reason does not release the Parties from any existing obligations to each other on the day of termination of the Contract.

11.6. All Appendices Additional Agreements Commercial Invoice to this Contract are its integral part.

11.7. In the event of a change in the address, subscriber numbers of communications, bank details, the Parties are obliged to notify each other about this within 10 (ten) working days from the date such changes occur.

11.8. The parties agreed that any documents, including: this Contract, as well as changes and additions to it, applications, annexes to the Contract, signed by authorized persons and sealed by the organization, transmitted to the opposite Party by facsimile or electronic communication are recognized by the Parties as full legal documents and are appropriate evidence in the event of a trial. In this case, the Contract will be considered concluded from the moment it is resolved by fax or e-mail.

Documents that have been transmitted by the Parties to each other via electronic or facsimile communication should be necessarily duplicated last, by sending each other their originals by registered letter with notification to the postal addresses of the Parties specified in this Agreement, within 5 (five) working days their

"Seller" _____

"Buyer" _____

продублированы последними, путем направления друг другу их оригиналов заказным письмом с уведомлением по почтовым адресам Сторон, указанным в настоящем Договоре, в течение 5 (пяти) рабочих дней с момента их составления и подписания, если иные сроки по их отправке не указаны в настоящем Договоре. Документы, направляемые Сторонами по факсу, или электронной почте, должны быть направлены с электронных адресов и телефонных номеров, указанных в реквизитах Сторон в разделе 13 настоящего Договора. Передаваемые документы должны позволять идентифицировать наименование передающей стороны, дату и время передачи, номер телефона (факса), электронной почты.

compilation and signing, if other terms of their shipment are not specified in this Agreement. Documents sent by the Parties by fax or e-mail should be sent from the e-mail addresses and telephone numbers specified in the details of the Parties in section 13 of this Agreement. Sent documents should allow identifying the name of the transferor, date and time of transfer, phone (fax) number, e-mail.

## 12. ADDRESS OF THE PARTIES:

Продавец:

**ООО "Metal Processing Technology"**
Адрес: Республика Узбекистан,
г. Ташкент, ул. Астрабад 22, 100149
Банк: ОГБРУ ЧАБ «Трастбанк»
г. Ташкент, ул. Навои, 7, 100011.
в/с долл. США: 2020 8840 8007 0186 5003
Код банка: 00491
SWIFT: TRSAUZ22XXX
ИНН: 304496020
e-mail: info@icg.uz
тел.: +99899 8117222

ICG USA LLC
Адрес: 3124 S Parker Road Ste A2-402
Аurora, CO 80014
Банк: US BANK
в/с долл. США:
Код банка:
swift: USBKUS44IMT
Routing: 102000021
Acc: 103684508262
Тел: +1 877-ICGUSA7 (USA toll free)
Тел: +1 (720) 943-5063(Local)
+1 (303) 276-0438 (Fax)
Прямой: +1 (720) 261-3773
e-mail: info@infinitysourcegroup.com

CEO Artour Aroutiounov

## 12. ADDRESS OF THE PARTIES:

Seller:

**LLC "Metal Processing Technology"**
Address: Republic of Uzbekistan, Tashkent
City, Astrabad 22
Bank: PJSB "TRUSTBANK"
Tashkent, Navoi str., 7, 100011
Account: 2020 8840 8007 0186 5003
Bank code: 00491
SWIFT: TRSAUZ22XXX
Tax ID: 304496020
e-mail: info@icg.uz
phone: +99899 8117222

ICG USA LLC
Address: 3124 S Parker Road Ste A2-402
Aurora, CO 80014
Bank: US BANK
ac dollars, USA:
Bank Code:
Swift: USBKUS44IMT
Routing: 102000021
Acc: 103684508262
Ph: +1 877-ICGUSA7 (USA toll free)
Ph: +1 (720) 943-5063(Local)
+1 (303) 276-0438 (Fax)
Direct +1 (720) 261-3773
e-mail: info@infinitysourcegroup.com

CEO Artour Aroutiounov

«Продавец / "Seller"

«Покупатель / "Buyer"



"Seller"



"Buyer"

# MAERSK

## ARRIVAL NOTICE

B/L No: **MAEU - 237801817**

TPDoc, sea waybill, shipped on board

| | |
|---|---|
| **Notify Party (Complete name and address)**<br>Same as Consignee | **Vessel**<br>MAERSK ATLANTA    **Voyage No**<br>418W    **Print Date**<br>2024-06-20 01:41 |

| | |
|---|---|
| **Your ref.**<br>237801817 | **Product Type:**<br>Maersk Spot |

**Place of Receipt**

**Other Numbering Identification**
IT/V0783900314
Customs Clearance Loc :LOS ANGELES C
Customs Firms Code: Y386

**Port of Loading**
Poti

**Terminal Location:**
MARPORT TERMINAL - AMBARLI
ALGECIRAS - ML TERMINAL

**Port of Discharge**
Houston

Bay Port Container Terminal
HOUSTON - BNSF PEARLAND RAMP
ATSF-HOBART TERMINAL
For IT Date use arrival date below.

**Place of delivery**
Los Angeles

**Consignee (Complete name and address)**
ICG USA LLC
3124 S Parker Rd, Ste A2-402
AURORA
80014
United States

**Shipper/Exporter (Complete name and address)**
LLC METAL PROCESSING TECHNOLOGY
22, STREET ASTRABAD
TASHKENT
100021
UZBEKISTAN

| Kind of Packages; Description of goods; Marks and Numbers; Container No./Seal No. | Gross Weight | Measurement |
|---|---|---|
| 31<br>COILS<br><br>Refined copper pipes | 13928.000 KGS | |
| 600<br>UNPACKED<br><br>Refined copper pipes | 8222.000 KGS | |
| Customs Ref. No:24ES001131B1178063 - ALGECIRAS - ML TERMINAL<br><br>CY/CY | | |

| Container No. | Seal No. | Seal Value | Size/Type/Height | Tare Weight | Pkgs. | Weight | Measurement | Rail Bond /Pick-up No. |
|---|---|---|---|---|---|---|---|---|
| MRKU6251455 | | G6648779 | 40 DRY 9'6 | 3810.000 KGS | 31 | 13928.000 KGS | | |
| MRKU6251455 | | G6648779 | 40 DRY 9'6 | 3810.000 KGS | 600 | 8222.000 KGS | | |

**Agent Name**
Maersk Agency U.S.A., Inc - Houston CRC

**Date**
2024-06-27

The above mentioned cargo is
due to arrive aboard subject
vessel On/or About

B/L No:  **MAEU - 237801817**

The freight charges listed on this notice are for customs entry and cargo valuation purposes only, and the totals listed do not supersede those on the invoice. The sole financial document for payment is the invoice.
For cargo moving from Canadian ports to the United States, additional in-bond details, border crossing location, and Rail Bill numbers will be provided 2 days prior to vessel ETA.

Contact our Customer Experience specialists for any queries:
Maersk USA customers, please contact us via Live Chat on www.maersk.com, via email to us.import@maersk.com, or call 800-321-8807.
Maersk Canadian customers, please contact us via Live Chat on www.maersk.com, via email to ca.import@maersk.com, or call 877-338-0165.
Twill customers - please contact us via Live Chat www.twill.net, via email to twillsupport@maersk.com, or call 833-965-1648.

Quick Links:
•Register online at www.maersk.com/portaluser/register
•For shipment details and status of your account, please visit www.Maersk.com
•To stay informed about transport plan changes on your shipment, subscribe to notifications on our website: www.maersk.com/notifications/
Request Arrival Notice online:
• United States: https://www.maersk.com/forms/arrival-notice-us/
• Canada: https://www.maersk.com/forms/arrival-notice-ca/
• Request Diversion online:
• United States change of final inland destination: https://www.maersk.com/forms/diversion-req-form-us-imp/
• United States change of final discharge port: https://www.maersk.com/forms/diversion-req-form-us-exp/
• Canada change of final inland destination: https://www.maersk.com/forms/diversion-req-form-ca-imp/
• Canada change of final discharge port: https://www.maersk.com/forms/diversion-req-form-ca-exp/

•Street Turn/Container Re-use: login/register with E2Open (Avantida Container Management) https://platform.avantida.com/#/signin
•Empty notification site for Store Door Deliveries at www.namemptymaersk.com
•Empty Container Return Locations site at www.returnlocation.com/

Rail and Truck CY B/L's:
To ensure timely inland movement of cargo when clearing customs at the port, Maersk must receive customs clearance by noon TWO full business days prior to free-time expiration.

Store Door B/L's:
To ensure store door delivery of cargo within free-time, Maersk must receive a complete Delivery Order, freight payment, OBL's surrendered, and customs release by noon TWO full business days prior to free-time expiration.

Submitting Delivery Order Instructions:
Log into your Maersk.com account. From the Hub scroll down to see the "Delivery Order" widget, enter your Bill of Lading number, and click "Request Delivery Order" to submit your delivery instructions. All warehouses must be a commercial facility, located in a non-residential area and contain a loading/unloading dock

Demurrage and Detention:
Please note that demurrage and detention will be assessed on containers after expiration of free time. Third party storage charges may also be assessed per individual terminal tariffs.
USA Demurrage and Detention tariff, www.maersk.com/local-information/united-states-of-america/import
Canada Demurrage and Detention tariff, www.maersk.com/local-information/canada/import

For instant demurrage payments, contact our Maersk Release Service team at 1-800-321-8807, option 5, then option 1.

Invoice and Payment:
For instant payment and freight release, log into your account www.maersk.com and navigate to the MyFinance portal.
USA payment options, www.maersk.com/local-information/united-states-of-america/important-information
Canada payment options, www.maersk.com/local-information/canada/important-information
For electronic payments, please forward your remittance information and confirmation of bank payment via email to NAMFRCSVCACH@Maersk.com

USA Customer Check Payments
Overnight Mail Address:                          Post Office Address:
Maersk                                                    Maersk
Atlanta Lockbox (College Park/Southside)    P.O. Box 744448
Bank of America Lockbox Services             Atlanta, GA 30384-4448
Lockbox 744448
6000 Feldwood Road
College Park, GA 30349

USA original bill surrender (check payments are not accepted at this location)
Norton Lilly International
Documentation Department
One St. Louis Centre
Suite 2003
Mobile, AL 36602

Below freight details will not be part of Original Bill of Lading unless requested by customer

*Note: Below payer is applied for imports demurrage charge (if any), if you want to change, please write or contact customer service before container pick-up.

2/4

B/L No:  **MAEU - 237801817**

| Charges Name | Prepaid/Collect | Invoice Party | Customer Code | Collection Business Unit |
|---|---|---|---|---|
| Basic Ocean Freight | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Container Protect Unlimited | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Terminal Handling Service - Destinatio | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Detention Fee - Export | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Environmental Fuel Fee | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Government and Port Tax Exports | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Low Sulphur Surcharge | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |
| Terminal Handling Service - Origin | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |

Effective Feb 1, 2023, the Port of Houston will charge a $45 per unit per day dwell fee for any import container still on terminal on the eighth day after the expiration of free time. This fee is in addition to demurrage charges and must be paid directly to the terminal. Link to the announcement: https://www.porthouston.com/wp-content/uploads/2023/01/Dwell-Fees_Final.pdf

| Equipment No. | Demurrage Payer Code | Demurrage Payer Name |
|---|---|---|
| MRKU6251455 | 33104635305 | ICG USA LLC |
| MRKU6251455 | 33104635305 | ICG USA LLC |

Terminal Location:

| Charges Name | Prepaid/Collect | Invoice Party | Customer Code | Collection Business Unit |
|---|---|---|---|---|
| Spot Booking Amendment Fee | Prepaid | AMERICAN GLOBAL FREIGH | 33104586231 | Maersk Agency U.S.A., Inc - Charlotte |

# EXHIBIT #3
## Contract with MAERSK

 **MAERSK**

## ARRIVAL NOTICE

| | |
|---|---|
| B/L No. | MAEU - 237801817 |
| | 1PDoc. sea way bill shipped on board |

| Vessel | Voyage No. | Print Date |
|---|---|---|
| MAERSK ATLANTA | 416W | 2024-06-20 01:41 |

| Your ref. | Product Type |
|---|---|
| 237801817 | Maersk Spot |

**Place of Receipt**

Other Numbering Identification
IT/V07583000314
Customs Clearance Loc : LOS ANGELES C.
Customs Firms Code: Y355

**Port of Loading**
Poti

**Port of Discharge**
Houston

Terminal Location:
MARPORT TERMINAL - AMBARLI
ALGECIRAS - ML TERMINAL
Bay Port Container Terminal
HOUSTON - BNSF PEARLAND RAMP
ATSF-HOBART TERMINAL
For IT Date use arrival date below.

**Place of delivery**
Los Angeles

**Consignee (Complete name and address)**
ICG USA LLC
3124 S Parker Rd, Ste A2-402
AURORA
80014 -.
United States

**Shipper/Exporter (Complete name and address)**
LLC METAL PROCESSING TECHNOLOGY
22. STREET ASTRABAD
TASHKENT
100021
UZBEKISTAN

**Kind of Packages; Description of goods, Marks and Numbers; Container No./Seal No.**

| | Gross Weight | Measurement |
|---|---|---|
| 31 COILS | 13928.000 KGS | |
| Refined copper pipes | | |
| 600 UNPACKED | 8222.000 KGS | |
| Refined copper pipes | | |

Customs Ref. No:24ES001131B1178063 - ALGECIRAS - ML TERMINAL

CY/CY

| Container No. | Seal No. | Seal Value | Size/Type/Height | Tare Weight | Pkgs. | Weight | Measurement | Ref Bond /Pick-up No. |
|---|---|---|---|---|---|---|---|---|
| MRKU6251455 | | G6648779 | 40 DRY 9'6 | 3810.000 KGS | 31 | 13928.000 KGS | | |
| MRKU6251455 | | G6648779 | 40 DRY 9'6 | 3810.000 KGS | 600 | 8222.000 KGS | | |

**Agent Name**
Maersk Agency U.S.A., Inc - Houston CRO

The above mentioned cargo is due to arrive aboard subject vessel On/or About

| Date |
|---|
| 2024-06-27 |

**Bill of Lading number**   **From**   **To**
237801817       POTI   LOS ANGELES

□ **MRKU6251455** | 40' Dry High                    ⏱ Last updated: 8 months ago

📅 **Estimated arrival**        ◎ **Latest event**
**date**                      Empty container return · Los Angeles, United States ·
14 Aug 2024 17:32             14 Aug 2024

Note: All times are given in local time, unless otherwise stated

**POTI**
POTI PORT TERMINAL
Gate out Empty
13 May 2024 11:15

**Poti**
GIANTI LOGISTICS TERMINAL
Gate in
13 May 2024 18:02

Gate out
18 May 2024 18:51

**POTI**
POTI PORT TERMINAL
Gate in
18 May 2024 19:51

Load

18 May 2024 20:13



Feeder departure (BERNARD A / 420W)

19 May 2024 02:15

## AMBARLI PORT ISTANBUL

Marport Terminal - Ambarli



Feeder arrival (BERNARD A / 420W)

22 May 2024 08:00



Discharge

22 May 2024 10:05

Load

30 May 2024 08:27

Vessel departure (LARS MAERSK / 422W)

30 May 2024 21:47

## ALGECIRAS

Algeciras - ML Terminal

Vessel arrival (LARS MAERSK / 422W)

06 Jun 2024 09:40

Discharge

06 Jun 2024 12:38

Load

09 Jun 2024 17:52

Vessel departure (MAERSK ATLANTA / 418W)



**HOUSTON** 09 Jun 2024 23:00

BAY PORT CONTAINER TERMINAL

Vessel arrival (MAERSK ATLANTA / 418W)

27 Jun 2024 06:10

Discharge

27 Jun 2024 22:51

Gate out

01 Jul 2024 18:29

**HOUSTON**

HOUSTON - BNSF PEARLAND RAMP

Gate in

01 Jul 2024 19:21

On rail

06 Aug 2024 13:47

**Fort Worth**

DALLAS FT. WORTH BNSF ALLIANCE RAMP

Off rail

08 Aug 2024 03:08

On rail

08 Aug 2024 09:53

**LOS ANGELES**

Atsf-Hobart Terminal

Off rail

12 Aug 2024 07:32

BAY PORT CONTAINER TERMINAL



Gate out for delivery
13 Aug 2024 00:21

**Los Angeles**
LSA APM Terminal Pier 400( W185 )
Empty container return
14 Aug 2024 17:32



202359710505

B2238-8592 11/07/2023 3:24 PM Received by California Secretary of State

**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**REGISTRATION**
**OUT-OF-STATE LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File No.: 202359710505

Date Filed: 11/7/2023

| | |
|---|---|
| Limited Liability Company Name<br>Limited Liability Company Name | ICG USA LLC |
| Jurisdiction<br>Limited Liability Company is Formed in | COLORADO |
| Authority Statement<br>This LLC currently has powers and privileges to conduct business in the state, foreign country or other jurisdiction entered above. | |
| Street Address of Principal Office of LLC<br>Principal Address | 2878 BEECH ST<br>SAN DIEGO, CA 92102 |
| Mailing Address of LLC<br>Mailing Address<br><br>Attention | 3124 S PARKER RD<br>STE A2<br>AURORA, CO 80014 |
| Street Address of California Office of LLC<br>Street Address of California Office | 2878 BEECH ST<br>SAN DIEGO, CA 92102 |
| Agent for Service of Process<br>Agent Name<br>Agent Address | Emiliya Arutyunova<br>2878 BEECH ST<br>SAN DIEGO, CA 92102 |

Consent to Service of Process

The Secretary of State is appointed as the agent of the foreign (out-of-state) limited liability company for service of process if the agent has resigned and has not been replaced or if the agent cannot be found or served with the exercise of reasonable diligence.

Consent to service of process extends to service of process directed to the foreign (out-of-state) limited liability company's agent in this state for a search warrant issued pursuant to California Penal Code section 1524.2, or for any other validly issued and properly served search warrant, for records or documents that are in the possession of the foreign (out-of-state) limited liability company and are located inside or outside of this state. This shall apply to a foreign (out-of-state) limited liability company that is a party or a nonparty to the matter for which the search warrant is sought. For purposes of this consent "properly served" means delivered by hand, or in a manner reasonably allowing for proof of delivery if delivered by United States mail, overnight delivery service, facsimile, or any other means specified by the foreign (out-of-state) limited liability company, including email or submission via an Internet Web portal, the foreign (out-of-state) limited liability company has designated for the purpose of service of process.

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized to sign on behalf of the out-of-state LLC.

*Emiliya Arutyunova*                                    11/07/2023
Signature                                                      Date

Page 1 of 2

# EXHIBIT #4

**California Secretary of State**
**Statement of Information as to Defendant #1**
**[showing address in San Diego, CA]**

202359710505

B2238-8592  11/07/2023  3:24 PM Received by California Secretary of State



## STATE OF CALIFORNIA
*Office of the Secretary of State*
## REGISTRATION
## OUT-OF-STATE LIMITED LIABILITY COMPANY
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

**For Office Use Only**

## -FILED-

File No.: 202359710505

Date Filed: 11/7/2023

| Limited Liability Company Name | |
|---|---|
| Limited Liability Company Name | ICG USA LLC |

| Jurisdiction | |
|---|---|
| Limited Liability Company is Formed in | COLORADO |

**Authority Statement**
This LLC currently has powers and privileges to conduct business in the state, foreign country or other jurisdiction entered above.

| Street Address of Principal Office of LLC | |
|---|---|
| Principal Address | 2878 BEECH ST<br>SAN DIEGO, CA 92102 |

| Mailing Address of LLC | |
|---|---|
| Mailing Address | 3124 S PARKER RD<br>STE A2<br>AURORA, CO 80014 |
| Attention | |

| Street Address of California Office of LLC | |
|---|---|
| Street Address of California Office | 2878 BEECH ST<br>SAN DIEGO, CA 92102 |

| Agent for Service of Process | |
|---|---|
| Agent Name | Emiliya Arutyunova |
| Agent Address | 2878 BEECH ST<br>SAN DIEGO, CA 92102 |

**Consent to Service of Process**

The Secretary of State is appointed as the agent of the foreign (out-of-state) limited liability company for service of process if the agent has resigned and has not been replaced or if the agent cannot be found or served with the exercise of reasonable diligence.

Consent to service of process extends to service of process directed to the foreign (out-of-state) limited liability company's agent in this state for a search warrant issued pursuant to California Penal Code section 1524.2, or for any other validly issued and properly served search warrant, for records or documents that are in the possession of the foreign (out-of-state) limited liability company and are located inside or outside of this state. This shall apply to a foreign (out-of-state) limited liability company that is a party or a nonparty to the matter for which the search warrant is sought. For purposes of this consent "properly served" means delivered by hand, or in a manner reasonably allowing for proof of delivery if delivered by United States mail, overnight delivery service, facsimile, or any other means specified by the foreign (out-of-state) limited liability company, including email or submission via an Internet Web portal, the foreign (out-of-state) limited liability company has designated for the purpose of service of process.

**Electronic Signature**

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized to sign on behalf of the out-of-state LLC.

*Emiliya Arutyunova*

Signature

*11/07/2023*

Date

*Emiliya's Business*

## CERTIFICATE OF SERVICE / PROOF OF SERVICE

STATE OF CALIFORNIA                                 )
                                                    ) ss.
COUNTY OF SAN DIEGO                                 )


 I am over the age of 18 years and
not a party to the within entitled action. The fee for service of process was $0.00


My business or mailing address is:
      Ruochen Liu
      100 N. Barranca Street, #7060
      West Covina, CA 91971
         Email: RuochenLiu.esq@gmail.com


***On **June 26, 2026 I served** the document attached hereto or provided herewith, **namely**:
 Amended complaint and exhibits


   x   (**by Mail**) By placing a true copy thereof enclosed in a sealed envelope, with postage thereon fully prepaid to be placed in the U.S. Mail, addressed as set forth below. I am readily familiar with the attorney for the party serving this document's practice for collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on the same day as the day of collection in the ordinary course of business. I am aware that on motion of party
served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.
**ADDRESSES:**
       Alex Moghaddam at Email:  alex@moghaddamlaw.com
      No other defendants have filed a responsive pleading yet.


I certify or declare, under penalty of perjury under the laws of the United States

Of America  that the foregoing is true and correct.

Executed on **June 26, 2026 in West Covina, California**


By x  *Ruochen Liu*
      Ruochen Liu, Attorney for Plaintiff